KEMNITZER, BARRON & KRIEG, LLP
BRYAN KEMNITZER        Bar No. 066401
NANCY BARRON           Bar No. 099278
445 Bush St., 6th Floor
San Francisco, CA  94108
Telephone:  (415) 632-1900
Facsimile:  (415) 632-1901
bryan@kbklegal.com
nancy@kbklegal.com

CHAVEZ & GERTLER LLP
MARK A. CHAVEZ         Bar No. 090858
NANCE F. BECKER        Bar No. 099292
DAN L. GILDOR          Bar No. 223027
42 Miller Ave.
Mill Valley, CA  94941
Telephone:  (415) 381-5599
Facsimile:  (415) 381-5572
nance@chavezgertler.com
christian@chavezgertler.com

Attorneys for Plaintiffs and the proposed class

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MOHAMMAD SALIMI; AUGUST GALARAGA, ALVIN LEUNG, and VELIA SERRANO | Case No. 3:12-cv-1754 JSW |
| | **CLASS ACTION** |
| Plaintiffs, | |
| vs. | **NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT; MEMORANDUM OF POINTS & AUTHORITIES** |
| BMW FINANCIAL SERVICES NA, LLC; ASSET ACQUISITION GROUP, LLC; and DOES 1-50, inclusive, | |
| Defendants | **Date:  January 24, 2014**<br>**Time:  9:00 a.m.**<br>**Dept:  Courtroom 11, 19th Floor**<br>**Hon. Jeffery S. White** |

_____/

**TABLE OF CONTENTS**

**NOTICE OF MOTION AND MOTION** 1

**MEMORANDUM OF POINTS AND AUTHORITIES** 1

I.    **INTRODUCTION** 1

II.   **SUMMARY OF PERTINENT ALLEGATIONS** 3

    A.    PURCHASE AND REPOSSESSION OF THE SALIMI VEHICLE 3

    B.    PURCHASE AND REPOSSESSION OF THE GALARAGA VEHICLE 4

    C.    PURCHASE AND REPOSSESSION OF THE LEUNG VEHICLE 5

    D.    PURCHASE AND REPOSSESSION OF THE SERRANO VEHICLE 5

    E.    THE FORM NOTICES OF INTENT TO SELL VEHICLES ("NOI") 6

III.  **PERTINENT PROCEDURAL HISTORY** 7

IV.  **SUMMARY OF SETTLEMENT TERMS** 9

    A.    THE SETTLEMENT CLASS IS CLEARLY DEFINED 10

    B.    CLASS RELIEF 10

    C.    COSTS, FEES AND ADMINISTRATION 11

    D.    RELEASE 11

    E.    CLASS NOTICE 12

V.   **ESTABLISHED LAW SUPPORTS PRELIMINARY APPROVAL OF THIS SETTLEMENT** 12

    A.    LEGAL STANDARDS 12

    B.    THE COMMON LEGAL BASIS FOR THIS CLASS ACTION 14

    C.    CONDITIONAL CERTIFICATION OF THE PROPOSED CLASS IS APPROPRIATE 16

        1.    Introduction 16

        2.    Numerosity 17

3.     Typicality                                                                  17

4.     Adequacy                                                                 18

5.     Commonality                                                           19

6.     Superiority                                                               20

D.     THE TERMS OF THE PROPOSED SETTLEMENT ARE FAIR AND        20
       REASONABLE

E.     THE PROPOSED CLASS NOTICE IS CLEAR AND ADEQUATE        21

VI.    PROPOSED SCHEDULE FOR REMAINING PROCEDURES              22

VII.   CONCLUSION                                                              23

## TABLE OF AUTHORITIES

**FEDERAL STATUTES**

Federal Rules of Civil Procedure, rule 23                              13,22

Federal Rules of Civil Procedure, rule 23(a)                         17

Federal Rules of Civil Procedure, rule 23(a)(1)                     17

Federal Rules of Civil Procedure, rule 23(a)(2)                     19

Federal Rules of Civil Procedure, rule 23(a)(3)                     18

Federal Rules of Civil Procedure, rule 23(a)(4)                     18

Federal Rules of Civil Procedure, rule 23(b)(3)                     1,3,20,23

Federal Rules of Civil Procedure, rule 23(c)(2)(B)               21

Federal Rules of Civil Procedure, rule 23(e)                         1,12

Federal Rules of Civil Procedure, rule 23(e)(3)                     9

Federal Rules of Civil Procedure, rule 26(a)                         7

**FEDERAL CASES**

Churchill Village, L.L.C. v. General Electric, 361 F.3d 566 (9th Cir. 2004)        21

*Gay v. Waiters' & Dairy Lunchmen's Union (N.D. Cal. 1980) 489 F.Supp. 282, aff'd (9th Cir. 1982) 694 F.2d 531* ............ 17

*Hanlon v Chrysler Corp.,* 150 F.3d 1011 (9th Cir. 1998) ............ 12,13,14,17 18,20,21

*Hansberry v Lee,* 311 U.S. 32 (1940) ............ 12

*In re Pac.Enters. Sec. Litig.,* 47 F.3d 373 (9th Cir. 1995) ............ 19

*Mendoza v. Tucson Sch. Dist. No. 1,* 623 F.2d 1338 (9th Cir.1980) ............ 21

*Nat'l Rural Telecoms Coop. v DIRECTV, Inc,* 221 F.R.D. 523 (C.D. Cal.2004) ............ 14

*Officers for Justice v Civil Service Commission of San Francisco,* 688 F.2d 615 (9th Cir. 1982) ............ 14,16,21

*Phillips Petroleum Co. v Shutts,* 472 U.S. 797 (1985) ............ 12

*Rodriguez v West. Publishing Corp.,* 563 F.3d 948 (9th Cir. 2009) ............ 14

*Van Bronkhorst v. Safeco Corp.,* 529 F.2d 943 (9th Cir. 1976)* ............ 13

*Wehner v. Syntex Corp.,* 117 F.R.D. 641 (N.D. Cal. 1987) ............ 18

**CALIFORNIA STATUTES**

Business & Professions Code §17200, *et seq.* ............ 3

Civil Code §2981, *et seq.* ............ 3,14

Civil Code §2983.2 ............ 16

Civil Code §2983.2(a) ............ 2,3,6,18 19

Civil Code §2983.2(a)(1) ............ 6

Civil Code §2983.2(a)(1) through (9) ............ 15

Civil Code §2983.2(a)(2) ............ 6

Civil Code §2983.2(a)(6) ............ 6

Civil Code §2983.3(b) ............ 6

Civil Code §2983.3(c) ............ 6

Notice of Motion, Motion, and Memorandum of Points & Authorities in Support of Preliminary Approval of Class Action Settlement

Civil Code §2983.3(d)(1)      6

Civil Code §2983.3(d)(5)      6

Civil Code §2983.8      16

Government Code §26751      6

Vehicle Code §28      6

**CALIFORNIA CASES**

*Bank of America v. Lallana* (1998) 19 Cal.4th 203, 215      16

*Bratta v Caruso* (1958) 166 Cal.App.2d 661, 664      15

*Carter v. Seaboard Finance Company (1949) 33 Cal.2d 564, 573*      15

*Cerra v. Blackstone (1985) 172 Cal.App.3d 604, 607-609*      15

*Hernandez v. Atlantic Finance Co (1980) 105 Cal.App.3d 65, 69-70*      15

*Juarez v. Arcadia Financial, Ltd. (2007) 152 Cal.App.4th 889*      16

*McGhee v. Bank of America (1976) 60 Cal.App.3d 442, 450-51*      18

**OTHER AUTHORITIES**

4 *Newberg on Class Actions* (4th ed. 2002) §11.22      13,17

4 *Newberg on Class Actions* (4th ed. 2002) §11.25      13,14

4 *Newberg on Class Actions* (4th ed. 2002) §11.41      13,17

4 *Newberg on Class Actions* (4th ed. 2002) §11.50      14

*Final Report of the Assembly Interim Committee on Finance and Insurance, at p. 7, 1 Appendix to Journal of the Assembly (1961 Reg.Sess.)*      15

*Manual for Complex Litigation, Third* (Fed. Judicial Center 1995) ("*Manual*") §30.41      13,14,17

*NACA Class Guidelines, Guideline 11, 255 F.R.D. 215*      22

iv

Notice of Motion, Motion, and Memorandum of Points & Authorities in Support of Preliminary Approval of Class Action Settlement

## NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE that on January 24, 2014 at 9:00 a.m. in Courtroom 11, 19th Floor, located at 450 Golden Gate Ave., San Francisco, California, Plaintiffs MOHAMMAD SALIMI, AUGUST GALARAGA, ALVIN LEUNG, and VELIA SERRANO, on behalf of themselves and the settlement class they represent, will and hereby do move, pursuant to Federal Rules of Civil Procedure, rules 23(b)(3) and 23(e), for an order of Preliminary Approval of Class Action Settlement. This motion will be based on this Notice and Motion, the following Memorandum of Points and Authorities, the Declaration of Nancy Barron and Exhibits thereto including the Settlement Agreement and Class Notice, the Declaration of Bryan Kemnitzer and Exhibit A thereto, and the Proposed Order filed herewith.

Plaintiffs seek certification of the Settlement Class, Preliminary Approval of the Settlement and Class Notice, an order establishing the schedule for procedures up to and including the Final Approval hearing, and implementation of the terms of the Settlement Agreement.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I
### INTRODUCTION

This class action, brought by MOHAMMAD SALIMI, AUGUSTO GALARAGA, ALVIN LEUNG, and VELIA SERRANO (hereafter "Plaintiffs") , on behalf of themselves and other similarly situated consumers, challenge the adequacy of statutorily mandated notices that BMW FS sent to California borrowers in connection with the repossession of their vehicles. Plaintiffs contend that Defendants (collectively "BMW FS")[1] sent uniform Notices of Intent to

---

[1] The prefatory paragraph of the Settlement Agreement includes and specifies within the definition of "BMW FS" several affiliated entities and designated subdivisions, within the meaning of this collective term. The First Amended Complaint (FAC) also includes these additional entities: Alphera Financial Services, Mini Financial Services, Rolls-Royce Motor Cars Financial Services and Asset Acquisition Group LLC. *See,* FAC paragraphs 3 through 7.

Dispose of Motor Vehicles (commonly referred to as "NOI") that failed to comply with the Rees-Levering Sales Finance Act, Civil Code §2983.2(a). The legal effect of a defective NOI is that the lender is barred from collecting any deficiency owed after a post-repossession sale. BMW FS denies the allegations.

Defined in ¶1.12 of the Settlement Agreement,[2] the "Settlement Class" consists of all persons: (1) who purchased a motor vehicle in California and entered into a conditional sales contract with any person or entity that was assigned to BMW FS; (2) whose motor vehicle was repossessed or voluntarily surrendered in California, and was not reinstated or redeemed; and (3) who were issued an NOI by BMW FS between September 6, 2008 to January 15, 2013. Excluded from the class are those persons who have filed bankruptcy proceedings, accounts of individuals who are deceased, those persons with a Conditional Sale Contract entered into outside of California, those persons whose vehicles were repossessed outside of California, those persons who signed releases with BMW FS from any liability for Deficiency Balance payments on their accounts prior to January 15, 2013, and those persons against whom BMW FS obtained judgments prior to January 15, 2013.

In this case, there are 5,178 class members who meet this definition; the total outstanding deficiency for the settlement class is approximately $50,924,483.33. Of the total class members, 636 individuals have paid BMW FS or its assignees directly a total of $2,088,202.43 toward their deficiencies, of which 56 individuals have paid entities to which BMW FS sold the accounts a total of $154,221.79. *See* Exhibit A to Kemnitzer Declaration, Decl. of Chris Chadwick, ¶¶4-5.

The parties have agreed to settle, with specific and substantial benefits to the identified class, a clear and concise description of which appears in the proposed Class Notice, as well. (Settlement Agreement, Exhibit C).

---

[2]All paragraph references (¶) are to the Settlement Agreement, Declaration of Nancy Barron, Exhibit 1, unless otherwise noted.

As more fully discussed below, the proposed settlement satisfies all of the criteria for preliminary settlement approval.  Moreover, the proposed Settlement Class is appropriate for certification under Federal Rules of Civil Procedure, rule 23(b)(3).  Accordingly, Plaintiffs move the Court to conditionally certify the proposed Settlement Class, grant preliminary approval of the Settlement, direct distribution of notice to the Class, and schedule a final approval hearing.

## II
## SUMMARY OF PERTINENT ALLEGATIONS

The facts that give rise to this action are undisputed.  Defendants are engaged in the business of providing financing to vehicle purchasers, and in debt collection on such accounts.  During the class period, BMW FS repossessed the financed vehicles of Plaintiffs and class members due to their alleged failure to make payments due on their loans, and then sent each class member a standard form NOI similar to the ones sent to Plaintiffs, which required the borrowers to phone BMW FS to ascertain all conditions precedent to reinstatement and which were deficient in other similar respects.  Plaintiffs allege this requirement violated the California Rees Levering Act, Civil Code §2983.2(a), triggering the anti-deficiency rule.  Nonetheless, BMW FS sold the vehicles, and then BMW FS demanded, collected, or attempted to collect, the difference between the sales price and the balance of the loan (the "Deficiency Balance").

The First Amended Complaint states causes of action violation of the Unfair Competition Law, Business & Professions Code §17200, *et seq.* (1st Cause of Action) and violation of the Rees-Levering Act, Civil Code §2981, *et seq.* (2nd Cause of Action). Defendants denied the allegations and mounted an energetic defense to the claims.

## A.    PURCHASE AND REPOSSESSION OF THE SALIMI VEHICLE

Plaintiff Mohammed Salimi purchased a used 2006 BMW in August 2008 from South Bay BMW-Mini, in Torrance, California. The conditional sale contract is a preprinted form agreement, regulated by the Rees-Levering Act.  BMW FS accepted assignment of the contract

3

from the dealer. Salimi was unable to stay current on his car payments because he had lost his employment. In March 2009, BMW FS repossessed Salimi's vehicle. BMW FS then mailed a written notice to Salimi that stated that his vehicle had been repossessed and would be sold unless he reinstated his contract ("NOI"). However, although BMW FS's notice acknowledged that he had a right to reinstate the contract, BMW FS refused to grant Salimi his statutory right as set forth in the notice, unless he completed a "Post Repossession Worksheet." BMW FS's standard form ("Statutory Notice") did not disclose that the completion of such a form was a condition precedent to reinstatement. Further, the "Post Repossession Worksheet" required the disclosure of private information to which BMW FS had no right. Although Salimi completed the worksheet, BMW FS nevertheless denied him the right to reinstate. BMW FS sold Salimi's vehicle, and assessed a deficiency balance of more than $10,000.00 against him and damaged his credit. The contract was assigned to other parties, including Asset Acquisition Group.

**B.    PURCHASE AND REPOSSESSION OF THE GALARAGA VEHICLE**

Plaintiff Augusto Galaraga leased a 2006 BMW from Weatherford BMW on April 21, 2006, for three years, and upon termination, purchased the vehicle from Hansel BMW, an authorized dealership in Santa Rosa, California. Plaintiff fell behind in his payments and BMW FS then repossessed the car on December 8, 2011 and sent him an NOI like that it sent to co-plaintiff Salimi. Galarga contacted BMW FS to find out how to reinstate the contract, but was told he had to fill out the Post Repossession Worksheet like that required of Salimi as a required condition precedent to reinstatement. This included tax forms for several years, and Galarga declined. Thereafter BMW FS sold the vehicle and sent Galarga a letter in an attempt to collect an alleged $9,022.61 deficiency balance.

///

///

4

## C.   PURCHASE AND REPOSSESSION OF THE LEUNG VEHICLE

Plaintiff Leung purchased a new 2008 Nissan Altima in on June 5, 2008 from Stevens Creek Nissan in Santa Clara, California.  The dealer arranged the financing for the purchase through BMW FS, which accepted assignment of the conditional sale contract.  The conditional sale contract is regulated by the Rees-Levering Automobile Sales Finance Act. Leung was unable to stay current on his car payments and in April 2012, BMW FS repossessed his vehicle. BMW FS then mailed a written notice to Leung that stated that his vehicle had been repossessed and would be sold unless he reinstated his contract.  Plaintiff Leung contacted BMW FS to find out how to reinstate the contract, but was told he had to fill out the Post Repossession Worksheet that was a required condition precedent to reinstatement, including residential, employment, and insurance information. Ultimately, Leung did not reinstate the contract, his vehicle was sold at auction, and BMW FS assessed a deficiency balance against him.

## D.   PURCHASE AND REPOSSESSION OF THE SERRANO VEHICLE

Plaintiff Velia Serrano purchased a used 2003 BMW SAV on November 2, 2005 from Crevier BMW in Santa Ana, California.  The dealer arranged the financing for the purchase through BMW FS, which accepted assignment of the conditional sale contract.  The conditional sale contract is regulated by the Rees-Levering Automobile Sales Finance Act. Serrano was unable to stay current on her car payments; and in June 2009, BMW FS repossessed her vehicle. BMW FS then sent an NOI to Serrano that stated that her vehicle had been repossessed and would be sold unless he reinstated his contract. She attempted to reinstate, but BMW FS refused to grant her the right to do so, and after she was sent the NOI, she contacted BMW FS but was told she had to provide tax returns and other personal information. Ultimately, Serrano did not reinstate the contract; her vehicle was sold at auction.  BMW FS assessed a deficiency balance against her, and then sued her to collect it.

Each of the plaintiffs has lost money or property caused by the unlawful acts of BMW FS as set forth here and in the complaint on file in this matter.

**E.    THE FORM NOTICES OF INTENT TO SELL VEHICLES ("NOI")**

Plaintiffs allege (Complaint ¶¶44-49) the standard forms of NOI that BMW FS and its agents issued to each of the named Plaintiffs following the repossession of their vehicles allegedly failed to comply with the Rees-Levering Act, California Civil Code §2983.2(a) in one or more of several respects:

- The NOI denies the consumer the right to regain possession of the vehicle simply by curing the default. Civil Code §§2983.3(d)(1) and 2983.3(d)(5). The Rees-Levering Act states that "if the seller or holder denies the right to reinstatement…," they may only do so for the reasons set forth in Civil Code §§2983.3(b) and 2983.3(c). Defendants have denied reinstatement unless the consumer provides personal information it demands in its "Post-Repossession Worksheet," but which are not a permitted grounds for the denial of the right set forth in Civil Code §2983.3(b) and Civil Code §2983.3(c).

- NOI fails to provide the full statutory redemption and reinstatement periods in violation of Civil Codes §§2983.2(a)(1), 2983.2(a)(2), and 2983.2(a)(6).

- Government Code §26751 and Vehicle Code §28 require the consumer to pay a state required fee of $15 to the law enforcement agency where the reported repossession was filed before the vehicle can be released. While Defendants' NOI sets forth that this fee is required, it fails to designate the name and address of the law enforcement agency. Thus the consumer would have no idea how and where to make the payment.

Given insufficient information to know just what they were supposed to do, and required to provide additional personal information not authorized by law, Plaintiffs did not exercise their rights to reinstate or redeem their vehicles. BMW FS sold the vehicles and assessed deficiencies

6

against them.  Discovery has revealed that substantively similar NOI forms were sent to the proposed settlement class.

### III
### PERTINENT PROCEDURAL HISTORY

Plaintiffs' counsel previously filed a case against BMW Financial Services, one of the corporate entities that is included within the definition of BMW FS as used here, *Friedrichs v. BMW Financial*, on August 25, 2008 in Alameda County Superior Court.  In that case, BMW FS removed the case to Federal District Court for the Northern District of California, Case No. 3:08-CV-04486 PJH and the parties entered into a settlement agreement in May 2009.  The Honorable Phyllis Hamilton granted Final Approval in that case on January 20, 2010.  The class consisted of consumers who were issued an NOI by BMW FS between August 25, 2004 and September 5, 2008.

BMW FS continued to violate California's Rees-Levering Automobile Sales Finance Act and therefore the current lawsuit was filed on February 27, 2012 in Alameda County Superior Court.  BMW FS removed the case to Federal District Court on or about April 10, 2012.  Based upon the previous settlement class, the current class commences on September 6, 2008 and continues to June 15, 2013.

Pursuant to the Federal Rules of Civil Procedure, rule 26(a), Plaintiffs provided initial disclosures on October 12, 2012.  Defendants provided their initial disclosures on November 1, 2012.

In order to gain additional information regarding the class, Plaintiffs' counsel then served Notice of Taking Depositions *duces tecum* of BMW FS's person most knowledgeable. On December 11, 2012, Plaintiffs' counsel took the deposition of David Belu, BMW's Process Improvement and Quality Manager.

The parties first mediated this case before the Hon. Ronald M. Sabraw of JAMS on

7

January 15, 2013.  After the mediation, the parties received Judge Sabraw's January 16, 2013 detailed email setting forth the terms of the tentative class settlement.  On behalf of Plaintiffs and the Class, counsel negotiated the resolution based upon representations by BMW FS regarding the class statistical information.

Pursuant to the terms of settlement, BMW FS was to reacquire all sold accounts and cease all collection efforts.  Nonetheless Class Counsel soon heard from class member Cody King, and learned that apparently downstream debt collectors who had bought the subject accounts from BMW FS were continuing to contact class members demanding payment or separate settlements after the settlement in this case.  In addition, class members were being sued by downstream debt collectors.  This resulted in Plaintiffs' counsel filing an answer and class action cross-complaint in the case of *Persolve v. Serrano,* Orange County Superior Court, Case No. 30-2013-00629313-CL-CL-CJC.  In addition, Plaintiffs' counsel obtained information that other entities purchased BMW FS class member deficiency accounts. *See* Declaration of Bryan Kemnitzer, filed herewith.

After filing the class action cross-complaint in the *Serrano* case on March 13, 2013, the class statistical information from BMW FS changed substantially.  The discrepancies in the class statistical information provided by BMW FS  are outlined in the chart below:

|  | Statistical information given at January 15, 2013 mediation | Statistical information given after filing of Serrano cross-complaint |  |
|---|---|---|---|
| Class Members: | 5,250 | 5,178 |  |
| Outstanding Deficiencies: | approximately $35,000,000.00 | approximately $52,000,000.00 | 48.6% increase |
| Amount Collected from Class Members on Deficiency Balances: | approximately $600,000.00 | approximately $2,000,000.00 | 233% increase |

As a result of the discrepancies regarding the class statistical information and the significant difference between the information represented at the mediation on January 15, 2013 and the new information, Plaintiffs believed it was appropriate to renegotiate the terms of the settlement.

The parties participated in a second mediation with Judge Sabraw on June 18, 2013, and thereafter continued to negotiate the final terms of settlement.  Based upon the corporate declaration of Chris Chadwick, dated June 27, 2013 (*See* Exhibit A to Kemnitzer Declaration, filed herewith), the current class statistical information is as follows:

(a)     There are 5,178 individuals who meet the criteria definition of the proposed class,

(b)     of those individuals, 636 have pail all or a portion of the deficiency balance to BMW FS,

(c)     BMW FS collected approximately $2,088,202.43 in deficiency balances of $3,698,334.61 from those individuals,

(d)     the total amount owed to BMW FS  by these proposed class members, i.e. the outstanding deficiency is $50,924,483.33.

In addition, BMW FS has determined that 56 class members paid $154,221.79 on amounts that had been sold and reacquired from third parties.  As contemplated by the Settlement Agreement, and pursuant to the stipulation of the parties, Plaintiffs have filed an amended complaint naming Velia Serrano as a class representative and naming additional related entities as defendants.

## IV
## SUMMARY OF SETTLEMENT TERMS

Pursuant to Federal Rules of Civil Procedure, rule 23(e)(3), Plaintiffs submit the following statement identifying the terms of settlement. The executed settlement agreement itself is attached as Exhibit 1 to the Declaration of Nancy Barron filed herewith.

9

## A.    THE SETTLEMENT CLASS IS CLEARLY DEFINED

Defined in ¶1.12, the "Plaintiff Settlement Class" means "all Buyers: (1) who purchased a motor vehicle in California and entered into a conditional sales contract with any person or entity that was assigned to BMW FS; (2) whose motor vehicle was repossessed or voluntarily surrendered in California, and was not reinstated or redeemed; and (3) who were issued an NOI by BMW FS between September 6, 2008 to January 15, 2013. Excluded from the class are those persons who have filed bankruptcy proceedings, accounts of individuals who are deceased, those persons with a Conditional Sale Contract entered into outside of California, those persons whose vehicles were repossessed outside of California, those persons who signed releases with BMW FS from any liability for Deficiency Balance payments on their accounts prior to January 15, 2013, and those persons against whom BMW FS obtained judgments prior to January 15, 2013."

## B.    CLASS RELIEF

Each settlement Class Member will receive actual, concrete and immediate benefits of the settlement. According to BMW FS's records, and subject to verification and compliance procedures, there are approximately 5,178 settlement Class Members, whose outstanding deficiency balances total $50,924,483.33 (¶3.04; *see also,* Declaration of Chris Chadwick, ¶¶4-5, Exhibit A to Kemnitzer Declaration). BMW FS and its agents shall stop all collection activity on the class members' accounts. (¶¶3.04, 4.02, 6.05) It shall take specified steps to notify the three major credit reporting agencies (Experian, Trans Union and Equifax) "asking them to update the trade line on the credit reports pertaining to members of the Plaintiff Settlement Class to reflect that their BMW FS accounts have a zero balance and have been settled," with certain specified and limited follow up obligations. (¶4.01)

In addition, the Settlement Agreement requires that Defendants make a lump sum cash payment of $2,088,202.40, to serve as refunds to the approximately 636 class members who paid

10

Notice of Motion and Motion for Preliminary Approval of Class Action Settlement Agreement and Conditional Certification of a Settlement Class

all or some of their deficiency balance. (¶3.02)

And finally, the settlement provides for injunctive relief preventing further collection activity on these accounts, unless it is entitled to bring certain actions for fraud in the inception of the loan agreements. (*See,* ¶3.04, 4.02 and Settlement Agreement, Exhibit A)

## C.    COSTS, FEES AND ADMINISTRATION

BMW FS will also pay all costs of administration, which are capped at $30,000, so that this does not come out of class relief. (¶5.01)

BMW FS has agreed to pay each class representative a service award, commensurate with his or her participation and service to the class, and in exchange for broader releases than those of the unnamed class members, upon approval of the court,  in the amounts, as follows: Salimi ($3,500), Galarga ($3,500), Leung ($1,000), and Serrano ($3,500). (¶3.06, ¶6.04)

BMW FS has agreed to pay attorneys' fees to Class Counsel not to exceed $360,000, upon approval of this court after motion and briefing, which BMW FS will not oppose. The fees will be paid separate and apart from class recovery, and in no way will deplete the distribution or any other benefit to the class. (¶3.05)

The distribution checks will have a stale date of 180 days. Thereafter, BMW FS will be entitled to the first $105,000 of any funds remaining in the distribution account; all further remainder will be distributed to the National Consumer Law Center, upon approval by the court after demonstration that it is an appropriate *cy pres* recipient under these circumstances. (¶5.05)

## D.    RELEASE

Subject to the Court's retaining jurisdiction to enforce the terms of the Settlement Agreement, upon final approval, the parties execute mutual releases as a part of the final resolution of this matter (¶¶6.01-6.04). The class representatives' release is broad in scope, whereas the unnamed class members release "exclude any and all claims that are unrelated to

11

and not based upon the factual allegations of the complaint on behalf of the class." This includes certain agents and/or assignees of BMW FS with regard to these accounts, which BMW FS agrees to repurchase and provide relief to Settlement Class Members.  (¶¶6.05-6.06)

E.    **CLASS NOTICE**

The Proposed Class notice (Settlement Agreement, Exhibit C) is clear and concise, and provides the opportunity for Class Members to opt out or to exclude themselves for 60 days after the notice is mailed and before the final fairness hearing (*See* ¶¶11, 13 of the Proposed Preliminary Approval Order, Exhibit B to the Settlement Agreement). The full fee petition will be filed before the date to opt out or object. The parties have agreed that the Class Notice will be mailed by the Class Administrator according to the schedule established by this Court at the time of Preliminary Approval. (¶¶ 2.04-2.05.)

All of the settlement terms are subject to the approval of this Court.  In the event the Settlement Agreement is not approved, it shall be null and void, and the parties will proceed to trial and judgment.  The settlement provides substantial and significant benefits to all of the settlement Class Members, is fair and reasonable, and should be given conditional approval, so that the matter can proceed to Class Notice and ultimately to distribution.

**V**

**ESTABLISHED LAW SUPPORTS PRELIMINARY APPROVAL<br>OF THIS SETTLEMENT**

A.    **LEGAL STANDARDS**

Federal Rules of Civil Procedure, rule 23(e) regulates the approval procedures for class action settlement to protect the due process rights of absent class members. For a class judgment to bind an absent class member, due process requires that all class members receive adequate notice and representation by the class representative. *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812 (1985); *Hansberry v. Lee*, 311 U.S. 32, 42-43 (1940); *Hanlon v. Chrysler Corp.*, 150

12

F.3d 1011, 1020 (9th Cir. 1998). The law favors settlement, particularly in class actions where substantial resources can be conserved by avoiding the time, cost, and rigors of formal litigation. *See,* 4 *Newberg on Class Actions* (4th ed. 2002) §11.41; *Van Bronkhorst v. Safeco Corp.,* 529 F.2d 943, 950 (9th Cir. 1976).  Judicial proceedings under Federal Rules of Civil Procedure, rule 23 have led to a defined procedure and specific criteria for settlement approval in class action settlements, described in the *Manual for Complex Litigation, Third* (Fed. Judicial Center 1995) ("*Manual*") §30.41.  The *Manual* describes three distinct steps:

    (1)    Preliminary approval of the proposed settlement at an informal hearing;

    (2)    Dissemination of mailed and/or published notice of the settlement to all affected Class members; and

    (3)    A "formal fairness hearing," or final settlement approval hearing, at which Class members may be heard regarding the settlement, and at which evidence and argument concerning the fairness, adequacy, and reasonableness of the settlement may be presented.

*Manual,* §30.41.  This procedure, commonly used by federal courts and endorsed by class action commentator, Herbert Newberg, safeguards class members' procedural due process rights and enables the Court to fulfill its role as the guardian of class interests.  *Newberg* §11.22, *et seq.*

The preliminary evaluation of the fairness of class action settlements is governed by the factors laid out in *Hanlon v Chrysler, supra,* at p 1026 (the "Hanlon factors"), namely,

The strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining a class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presences of a governmental participant; and the reaction of the class members to the proposed settlement.

The court looks at the overall settlement, not isolated provisions, to determine only whether the proposed settlement is within the range of possible approval, and thus whether notice to the class of the settlement terms and conditions, and the scheduling of a formal fairness hearing, are worthwhile.  4 *Newberg* §11.25.  To grant preliminary approval of this class action settlement,

the Court need find only that the settlement falls within the range of possible final approval,

viewing the likelihood of success on the merits and the range of possible recovery and outcomes.

*Rodriguez v West. Publishing Corp.*, 563 F.3d 948, 964-965 (9th Cir. 2009); *see also,* 4 *Newberg*

§11.25.  The *Manual for Complex Litigation* summarizes the preliminary approval criteria as

follows:

> If the preliminary evaluation of the proposed settlement does not disclose grounds
> to doubt its fairness or other obvious deficiencies, such as unduly preferential
> treatment of class representatives or of segments of the class, or excessive
> compensation for attorneys, and appears to fall within the range of possible
> approval, the court should direct that notice . . . be given to the class members of a
> formal fairness hearing, at which arguments and evidence may be presented in
> support of and in opposition to the settlement.

*Manual*, §30.41; *see also* 4 *Newberg*, §11.25.  Generally, "unless the settlement is clearly

inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with

uncertain results." *Nat'l Rural Telecoms Coop. v DIRECTV, Inc*, 221 F.R.D. 523, 526 (C.D.

Cal.2004)(quoting 4 *Newberg*. §11.50 at 155 (4th Ed. 220).

Finally, the court may compare the settlement to the maximum theory of damages, but a

settlement that offers a lesser amount of the potential recovery does not mean the settlement is

not fair, particularly where monetary relief is just one form of remedy obtained by the

compromise. *Hanlon v. Chrysler, supra,* 150 F.3d at 1027, and *Officers for Justice v.  Civil*

*Service Commission of San Francisco,* 688 F.2d 615, 628 (9th Cir. 1982).

The proposed Settlement falls well within the range of reasonableness described by the

commentators.  In fact, the class members receive approximately what they would have received

from this litigation had they prevailed at trial.

**B.      THE COMMON LEGAL BASIS FOR THIS CLASS ACTION**

This lawsuit arises out of the mandatory notice and anti-deficiency provisions of the

Rees-Levering Act, Civil Code §2981, *et seq.*, which provide statutory protection for consumers

buying vehicles on credit.  Removed to this court under the Class Action Fairness Act, the merits

of the principal claim rely on this California law. That statute has, for nearly fifty years, represented California's strong interest in consumer protection. Effective 1962, the Rees-Levering Act replaced the 1945 Automobile Sales Act, "and was designed to provide a more comprehensive protection for the unsophisticated motor vehicle consumer." *Hernandez v. Atlantic Finance Co* (1980) 105 Cal.App.3d 65, 69-70. Previously, courts struggled to hold the formal requisites of the predecessor statute to be mandatory (e.g., *Carter v. Seaboard Finance Company* (1949) 33 Cal.2d 564, 573; *Bratta v Caruso* (1958) 166 Cal.App.2d 661, 664), but the Rees-Levering Act was enacted to eliminate any doubt about the legislature's broad consumer protection intent. *Cerra v. Blackstone* (1985) 172 Cal.App.3d 604, 607-609. The statute has been amended numerous times, but always increasing the protections to California consumers.

The public policy underlying the Rees-Levering Act recognizes the importance of vehicles to individual consumers. "The sale of automobiles is particularly important because of the very size, for the great majority of families, of the economic decision involved in the purchase of an automobile. Such a purchase is second in importance to a family only to the purchase of a home." *Final Report of the Assembly Interim Committee on Finance and Insurance*, at p. 7, 1 Appendix to Journal of the Assembly (1961 Reg.Sess.)

Thus to promote these important public policies, courts strictly enforce the mandatory notice formalities and requirements prescribed by the Rees-Levering Act. *Hernandez v. Atlantic Finance Co.* (1980) 105 Cal.App.3d 65, 69-70. "[T]he rule and requirement are simple. If the secured creditor wishes a deficiency judgment he must obey the law. If he does not obey the law, he may not have his deficiency judgment." *Bank of America v. Lallana* (1998) 19 Cal.4th 203, 215 (internal citation omitted).

In order to protect consumers' valuable property interests in financed vehicles, the Rees-Levering Act, Civil Code §2983.2(a)(1) through (9), details the information creditors must

15

provide to buyers in the NOI.  The disclosures are intended to afford buyers a full opportunity to make an informed decision as to whether to exercise their statutory right to reinstate the contract by bringing the loan current, or to redeem the contract by paying off the full balance due.  Either way, the consumer is entitled to precise information as to the amount to be paid, the exact place and manner in which it must be paid, and the date by which such payment must be made in order to obtain return of the vehicle.  *Juarez v. Arcadia Financial, Ltd.* (2007) 152 Cal.App.4[th] 889.

If any one of the mandated disclosures is missing, or does not strictly comply with the law, the lender is absolutely barred from collecting from the borrower any deficiency remaining after disposition of the vehicle.  Civil Code §§2983.2, 2983.8; *Bank of America v. Lallana* (1998) 19 Cal.4th 203, 215.  Substantial compliance is not sufficient.  *Id; Juarez v. Arcadia Financial, supra* p. 909.

In the instant case, Plaintiffs allege that BMW FS's standard form NOI was defective; and, in addition,  BMW FS required additional personal and credit information from the borrower as a condition to reinstate that was not set forth in the NOI. For these reasons BMW FS is denied any right to a deficiency from any Class Member.

On the other hand, BMW FS strongly denies the allegations and contends its form and conduct comply with the law. Given these postures and positions, in the approval process, the Court's consideration of the likelihood of success on the merits is "nothing more than an amalgam of delicate balancing, gross approximations and rough justice." *Officers for Justice v. Civil Service Commission of San Francisco, supra,* at 625.

**C.   CONDITIONAL CERTIFICATION OF THE CLASS IS APPROPRIATE**

**1.   <u>Introduction</u>**

Plaintiffs request that the Court conditionally certify the proposed Settlement Class, defined in accordance with the Settlement Agreement. (¶1.12)

16

Conditional class certification of the Settlement Class is appropriate at the preliminary approval stage where, as here, the proposed Settlement Class as it is defined in the parties' Settlement Agreement has not previously been certified by the Court and the requirements for certification are met.  4 *Newberg* §11.22.  The purpose of conditional class certification is to facilitate distribution to all Settlement Class members of notice of the terms of the proposed Settlement and the date and time of the final approval hearing.  *See Manual* §30.41.

The Federal Rules of Civil Procedure have established several requirements for obtaining class certification:  numerosity, typicality of the class representatives' claims, adequacy of representation, predominance of common issues, and superiority.  Federal Rules of Civil Procedure, rule 23(a); *Hanlon v. Chrysler, supra,* at 1019.  This proposed Class meets all of the requirements of certification for settlement purposes.  The primary elements required for class certification are the subject of stipulation set forth in the Settlement Agreement itself, were verified through diligent informal discovery and investigation, as well as the corporate Declaration of Chris Chadwick (Exhibit A to Kemnitzer Declaration, filed herewith), and are subject to verification and compliance procedures.

## 2.   Numerosity

With approximately 5,178 Plaintiff Settlement Class Members of the class entitled to an elimination of alleged aggregate debt of approximately $50,924,483.33, and an additional $2,088,202.00 in cash refunded to that portion of the Class Members who paid some amount toward their deficiencies, the class is sufficiently numerous that joinder of all members would be impracticable. *Gay v. Waiters' & Dairy Lunchmen's Union* (N.D. Cal. 1980) 489 F.Supp. 282, *aff'd* (9th Cir. 1982) 694 F.2d 531; Federal Rules of Civil Procedure, rule 23(a)(1).

## 3.   Typicality

Similarly, the typicality requirement is met if the claims of the named representatives are

17

typical of those of the class, though "they need not be substantially identical." *Hanlon, supra,*

150 F.3d at 1020.  The claims of the named representatives in this case are typical of the claims

of the whole class, because they arise from the same factual basis and are based on the same

legal theory as those applicable to the Class Members.  *Wehner v. Syntex Corp.*, 117 F.R.D. 641,

644 (N.D. Cal. 1987).  Factual differences may exist between the class representatives and the

class members so long as the claims arise from the same events or course of conduct and are

based on the same legal theories.  *Hanlon v. Chrysler, supra,* at 1020; *Wehner, supra,* 117 F.R.D.

at 644.  The representative plaintiffs and the proposed Class Members claim that BMW FS

engaged in unlawful practices by sending standard printed form NOI that violated the Rees-

Leering Automobile Sales Finance Act, Civil Code §2983.2(a) and that they were subjected to

the uniform unlawful practice of requiring addition information via the "Post-repossession

Worksheet" described in §II above.  All Class Members' claims thus arise from the same set of

facts and same legal theories.  The typicality requirement, therefore, is also satisfied. Federal

Rules of Civil Procedure, rule 23(a)(3).

**4.   Adequacy**

The adequacy requirement is met if the named representatives and their counsel have no

interests adverse to those of the proposed class members and are committed to vigorously

prosecuting the case on behalf of the class. *Id.,* Federal Rules of Civil Procedure, rule 23(a)(4);

*Hanlon v. Chrysler, supra,* at 1020; *McGhee v. Bank of America* (1976) 60 Cal.App.3d 442, 450-

51.  Those standards are met here.  Plaintiffs' interests in prosecuting the case and obtaining the

most beneficial recovery possible fully comport with the interests of the class.  Finally, the Class

Notice notifies the Settlement Class that any Class Member who wishes to "opt out" of the

Settlement may do so.  There is, therefore, no conflict of interest between the named

representatives and Class Members.  In addition, throughout this litigation, Plaintiffs and their

18

Notice of Motion and Motion for Preliminary Approval of Class Action Settlement Agreement and Conditional Certification of a Settlement Class

counsel have demonstrated their commitment to vigorously prosecuting the case on behalf of the class. Plaintiffs and the Class are represented by competent class counsel. Declarations of Bryan Kemnitzer and Nancy Barron filed herewith. "Parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in the litigation." *In re Pacific. Enterprises Securities. Litigation*, 47 F.3d 373, 378 (9th Cir. 1995). The adequacy requirement is met.

### 5.   <u>Commonality</u>

The commonality requirement is met if common questions of law or fact predominate in the litigation. *Hanlon v. Chrysler, supra*, at 1019. The test is whether the proposed class is sufficiently cohesive to warrant adjudication by representation. *Id.,* at 1022.

Here, the proposed Class Members' claims flow from common issues: whether or not BMW FS's statutory NOI sent pursuant to Civil Code §2983.2(a) failed to provide the disclosures required by the Rees-Levering Act, Civil Code §2983.2(a), and whether as a result, BMW FS is barred from collecting deficiency balances from any of the named Class Representatives and each of the other settlement Class Members. This common legal theory is more fully explained above at §V(B).

BMW FS does not dispute that it sent standard form NOI to thousands of consumers, including Plaintiffs and the proposed class. Under these circumstances, the commonality requirement is satisfied. *Id.* at 1019-20. Federal Rules of Civil Procedure, rule 23(a)(2). Indeed, BMW FS stipulates to the number of identifiable similarly situated individuals in the executed Settlement Agreement itself. Thus, the proposed Settlement Class is sufficiently cohesive, because all Class Members share a "common nucleus of facts and potential legal remedies." Common questions about the legality of defendant's repossession practices predominate over individual questions, and class certification is authorized under Federal Rules of Civil Procedure,

rule 23(b)(3).

### 6. **Superiority**

Class resolution is superior to other available methods for the fair and efficient adjudication of the present controversy. The superiority requirement involves a "comparative evaluation of alternative mechanisms of dispute resolution." *Hanlon, supra,* 150 F.3d at p. 1023. Here, as in *Hanlon,* the alternative methods of resolution are individual claims for a relatively small amount of damages; these claims "would prove uneconomic for a potential plaintiff," because "litigation costs would dwarf potential recovery." *Id.* Moreover, the anti-deficiency rule that underlies the merits of this action is a statutory claim of which most affected California borrowers are not aware. For these reasons, in this case, as in *Hanlon,* a class action settlement is the preferred method of resolution.

## D. THE TERMS OF THE PROPOSED SETTLEMENT ARE FAIR AND REASONABLE

The proposed settlement will give substantial benefits to the Plaintiff Settlement Class. It offers Class Members essentially all of the relief to which they would be entitled should they prevail in a trial of this matter. It compensates the named representatives, recognizes the contribution of class counsel, and at the same time provides a fair scope of relief to the defendants. There is no reason why the compromise should not be approved.

The parties negotiated the proposed Settlement Agreement in good faith and at arm's length. The parties engaged in formal and informal discovery for the purposes of settlement. As a result, Plaintiffs' counsel had sufficient documents and information to assess the strengths and weaknesses of the claims and the benefits of the proposed Settlement under the circumstances of this case. The parties considered the possible range of outcomes, were this case to go to trial, and possibly appeals. Declaration of Bryan Kemnitzer, filed herewith.

The record before the court thus satisfies the requirement for preliminary certification of

the class. *Officers for Justice v. Civil Service Commission of San Francisco, supra*, 625. While all sides litigated the strengths and merits of their respective parties, there was not 100% certainty of victory for any party.  Despite the strength of the evidence against them, the BMW FS defendants vociferously deny their liability and contend that, even if they were liable under California law, federal preemption absolves them of responsibility to the class under the facts alleged.  Were they to prevail on that theory, the class would get nothing.  On the far side of the spectrum, were the plaintiffs to prevail, BMW FS would have to pay back 100% of the money every Class Member paid toward the deficiency, with prejudgment interest.

## E.    THE PROPOSED CLASS NOTICE IS CLEAR AND ADEQUATE

The parties propose a Class Notice in the form attached to the Settlement Agreement, Exhibit C.  It follows Federal Rules of Civil Procedure, rule 23(c)(2)(B), which  requires "best notice practicable under the circumstances."  The notice should "concisely and clearly state in plain, easily understood language" all of the following:  the nature of the action, class definition, a general statement of the class claims and issues, that a class member may enter an appearance through counsel if desired, the right and manner of exclusion or objection, and the binding effect of class judgment (release). The notice should provide "absent class members ... with the opportunity to opt-out and individually pursue any state law remedies that might provide a better opportunity for recovery." *Churchill Village, L.L.C. v. General Electric*, 361 F.3d 566, 575 (9th Cir. 2004), citing *Hanlon v. Chrysler, supra,* at 1025. Notice is satisfactory if it "generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard." *Mendoza v. Tucson School Dist. No. 1,* 623 F.2d 1338, 1352 (9th Cir.1980).

The notice prepared by counsel in this case is drafted in clear, concise, everyday language, with a minimum of legalese.  It provides a clear statement explaining how to tell

whether a consumer is a class member, the total amount and nature of relief, how further information can be obtained, attorney compensation, nature of claims and defenses, proposed distribution and opt out procedures.  The Class Notice is drafted in a manner intended to conform to practice recommended by the NACA Class Guidelines, Guideline 11. *See,* 255 F.R.D. 215; Barron Declaration, filed herewith.

The parties propose that the notice be distributed by mail, as the best notice practicable. The identity of Class Members is to be derived directly from BMW FS's borrower database and located through a NCOA identification process. (¶¶2.03-2.05)

## VI
## PROPOSED SCHEDULE FOR REMAINING PROCEDURES

A Final Fairness Hearing is necessary so that the Court can determine whether to enter a Final Order approving the terms of the Settlement Agreement as fair, reasonable and adequate. The Class Notice contemplates and affords an opportunity for Class Members to opt-out or object, and at the same time provide for a fairness hearing to enable this Court to approve non-class benefits such as incentive award, legal fees, and *cy pres* provisions.

Based upon the Settlement Agreement, the parties suggest the following approximate timetable:

| | | |
|---|---|---|
| 1. | Preliminary Approval Order Issued | January 24, 2014 |
| 2. | Class Notice to be mailed (20 days after preliminary approval) | February 13, 2014 |
| 3. | Deadline for Exclusion from the class, Objections to the Settlement (60 days after notice mailed) | April 14, 2014 |
| 4. | Final Approval Hearing | |
| 5. | Class Distribution | |

At the Final Approval hearing, Class Counsel will request implementation of the settlement terms and provisions, a finding that the notice given to the class members satisfies the requirements of due process and Federal Rules of Civil Procedure, rule 23, an award of attorneys' fees and costs, incentive award, designation of *cy pres* recipient to be awarded at the

22

end of the distribution process, and an order that this Court retain jurisdiction to enforce the provisions of the Settlement Agreement should the need for further court involvement arise.

## VII
## CONCLUSION

WHEREFORE, the parties request that the Court conditionally certify the proposed Settlement Class pursuant to Federal Rules of Civil Procedure, rule 23(b)(3) grant preliminary approval of the proposed Class Settlement Agreement, approve and order distribution of the proposed Class Notice, and schedule a final approval hearing.


Dated:  October 30, 2013                    KEMNITZER, BARRON & KRIEG, LLP
                                            CHAVEZ & GERTLER LLP


                                    By:     *Nancy Barron*
                                            NANCY BARRON
                                            Attorneys for Plaintiffs and the Settlement Class

23

PROOF OF SERVICE

**Re:**  *Salimi v. BMW Financial Services, et al.*
**USDC-ND Cal. Case No. 3:12-cv-1754 JSW**
**Alameda County Superior Court Case No. RG12618717**

I, Kirill Devyatov, certify that I am not a party to the proceeding herein, that I am and was at the time of service over the age of 18 years old, and a resident of the State of California. My business address is 445 Bush Street, San Francisco, California 94108.

On October 31, 2013, I served the following:

**NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT; MEMORANDUM OF POINTS & AUTHORITIES**

**DECLARATION OF NANCY BARRON IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

**DECLARATION OF BRYAN KEMNITZER IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

**[PROPOSED] ORDER CERTIFYING CLASS FOR SETTLEMENT PURPOSES, GRANTING PRELIMINARY APPROVAL OF CLASS SETTLEMENT**

(VIA ELECTRONIC CASE FILING)  I filed electronically the documents listed above, using the above-captioned Court's electronic case filing service.  Counsel of record are registered to file electronically with this Court, and receive copies of the documents via e-mail from the Court to confirm filing.

I declare under penalty of perjury that the foregoing is true and correct.

Dated:  October 31, 2013

Kirill Devyatov