1  JEFFER MANGELS BUTLER & MITCHELL LLP
   MICHAEL J. HASSEN (Bar No. 124823), mjh@jmbm.com
2  Two Embarcadero Center, Fifth Floor
   San Francisco, California 94111-3824
3  Telephone:  (415) 398-8080
   Facsimile:   (415) 398-5584
4
   Attorneys for Defendants BMW FINANCIAL SERVICES
5  NA, LLC, and ASSET ACQUISITION GROUP, LLC

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| MOHAMMAD SALIMI, *et al.*,<br><br>    Plaintiffs,<br><br>    v.<br><br>BMW FINANCIAL SERVICES NA, LLC,<br>ASSET ACQUISITION GROUP, LLC, *et al.*,<br><br>    Defendants. | CASE NO.   3:12-cv-1754 JSW<br><br>**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>Hearing Date:  January 24, 2014<br>Time:          9:00 a.m.<br>Courtroom:   11, 19th Floor<br>Judge:         Hon. Jeffrey S. White |

Defendants BMW Financial Services NA, LLC ("BMW FS") and Asset Acquisition Group, LLC (collectively "Defendants") respectfully submit the following memorandum of law in support of the proposed Class Action Settlement Agreement ("Settlement") pursuant to Fed. R. Civ. P. 23(e).  The Settlement provides the Class with substantial and valuable cash benefits.  Experienced counsel on both sides, each with a comprehensive understanding of the strengths and weaknesses of each side's respective claims and defenses, negotiated this settlement over an extended period of time during 2013, including formal mediations conducted before the Hon Judge Ronald Sabraw (Ret.) of JAMS.  The Settlement is a fair and reasonable compromise of the claims.

Additionally, as this is the second class action lawsuit by plaintiffs' counsel against BMW FS alleging violations of Rees-Levering, as part of the settlement the parties have agreed that BMW FS may submit to the Court its current Notice of Intent ("NOI"), revised to address the concerns raised by plaintiffs' counsel in this lawsuit, and obtain confirmation from this Court that the revised NOI complies with California law.

Defendants therefore respectfully urges the Court to grant preliminary approval of the Settlement and, as part of that determination, confirm that in light of the changes BMW FS has made to its NOI as a result of this action, the current NOI complies with California law.

## I.   BACKGROUND

This case presents unique issues.  Even though it denies liability, BMW FS has decided to settle this case.

This case involves alleged violations of California's Rees-Levering Automobile Sales Finance Act ("Rees-Levering"), Civil Code section 2983.2.  That statute governs the process by which a lender can obtain a deficiency judgment against a borrower who has defaulted on a car loan. Under Rees-Levering, if a lender makes a car loan to a borrower and the borrower defaults, then the lender may repossess the vehicle, sell it at auction, and seek to recover any deficiency from the borrower.  (The deficiency is the difference between the amount that the car sold for at auction, and the amount that the borrower owes the lender on the loan.)  In broad terms, Rees-Levering prevents a lender from recovering a deficiency if the Notice of Intent (NOI) that the lender is required to send to the borrower fails to include certain information.

Here, Plaintiffs filed a putative class action against BMW FS alleging violations of Rees-Levering. Plaintiff claims the NOI that BMW FS sent to defaulting borrowers did not include the information the statute requires, and that BMW FS also requested information from defaulting borrowers that the statute does not allow.[1]

Specifically, plaintiffs argued that the NOI they received from BMW FS violated Rees-Levering in two ways. First, by requesting as part of the reinstatement process that the consumer provide updated contact information on a "Post Repossession Worksheet."[2] Plaintiffs argue Rees-Levering does not list the specific contact information sought as information that may be requested from the borrower in order to reinstate and recover their vehicle or, alternatively, that BMW FS failed to include the information sought in its NOI. BMW FS argues that inherent in every debtor-creditor relationship is the right of the creditor to know the current whereabouts of its debtors and how to contact them. This is particularly true where the security for the debt is transitory and easily hidden, as here (a motor vehicle). Substantial resources are often spent in locating and repossessing a vehicle once a borrower defaults on his or her payments, and borrowers often go to great lengths to hide the vehicle. Obtaining current contact information is not merely prudent but essential, and an inherent right of every creditor.

Nonetheless, in light of the cost of confirming the information provided by consumers as part of this process, and in light of the uncertain state of the law as to whether Rees-Levering prohibits a creditor from seeking updated contact information as part of the reinstatement process, BMW FS is willing to discontinue this practice but only as it concerns requests made as part of the

---

[1] It is important to recognize that it is undisputed Plaintiffs and each member of the settlement class, borrowed money from BMW FS and never paid it back. If a lender violates Rees-Levering, then it cannot obtain a deficiency judgment against the borrower. It does not mean there is no debt, and it does not mean the borrower is not liable for other tortious acts, such as fraud. This distinction is critical. BMW FS has evidence that many members of the class obtained the vehicle financing at issue only through acts of fraud – that is, the borrowers submitted knowingly false information to BMW FS as part of the credit application process. This lawsuit does not address the rights of BMW FS to pursue those fraud claims and, in fact, those claims are expressly reserved under the Settlement.

[2] An earlier version of the post-repossession worksheet also requested updated financial information, but that practice had been discontinued prior to the filing of the instant action.

1   reinstatement process.  Plaintiffs' counsel have acknowledged that BMW FS may request updated
2   contact information as part of the debtor-creditor relationship so long as it is not made a condition to
3   reinstatement of a vehicle, and so it is that practice which BMW FS agrees to discontinue.
4       Second, separate and apart from the post-repossession worksheet (which is not at issue in the
5   order sought by the Court), Plaintiffs alleged that the NOI violates Rees-Levering in the following
6   ways:

- By requiring proof of insurance as a condition to reinstatement;
- By advising consumers that BMW FS will dispose of their vehicles "on or after 20 days from the date this Notice was mailed" rather than "after the expiration of 20 days from the date of the Notice";
- By properly advising consumers that they owe a $15 law enforcement agency fee but failing to designate the name and address of the law enforcement agency at which the fee must be paid.

Based on negotiations with Plaintiffs' Counsel, the parties have agreed that BMW FS may use the NOI attached hereto as Exhibit A, but BMW FS requests additionally an order from this Court confirming that this revised NOI complies with Rees-Levering so that BMW FS does not find itself fighting yet a third Rees-Levering class action.  The attorneys representing plaintiffs in this action are, in the opinion of defense counsel, the most experienced Rees-Levering attorneys in the State of California, but that will not prevent other, less experienced counsel from coming up with ever more creative arguments that they believe purportedly justify the filing of a Rees-Levering class action.  BMW FS is agreeing to settle this case in part to avoid the substantial fees and costs that will be incurred in defending a Rees-Levering class action, and would not be settling this case if it were a mere stepping stone to a new class action lawsuit.  It would be less expensive to litigate this matter to conclusion and obtain a judicial declaration as to the propriety of BMW FS's debt collection efforts than to settle this case and defend against a new lawsuit alleging the identical defects in its NOI.

As to the specific points raised by Plaintiff's Counsel in this Action, BMW FS has responded as follows:

1         A creditor is entitled to require "proof of *required* insurance." A Retail Installment Sales Contract ("RISC") for the purchase of a vehicle creates a security interest in the vehicle in favor of the lender. As part of the purchase contract, the consumer agrees to maintain automobile insurance. Not only is this required by California law, but it provides protection for the lender by ensuring that in the event of an accident there is a source of funds available to repair the vehicle in which the lender has a security interest.

        Rees-Levering does not supplant all terms of the purchase contract with a limited number of grounds for repossession of the vehicle. Rather, the statute simply describes what *must* be disclosed, without in any way limiting *what else may be* disclosed. The provision in the NOI requiring "proof of required insurance" does not violate Rees-Levering for two reasons. First, *California law requires that the owner of a vehicle carry insurance on the vehicle*. Requiring a consumer provide proof that they are in compliance with California law cannot be a violation of California law. Second, the RISC requires the purchaser to carry insurance on the vehicle. Requiring a consumer provide proof that they are in compliance with an essential term of the contract cannot be a violation of California law. It is beyond peradventure that the NOI may require, as a condition to regaining possession of the vehicle, compliance with California law and the terms of the sales contract.

        Next, the disposition date set forth in the NOI has been revised to address plaintiffs' concern. Rees-Levering provides in relevant part that the NOI shall advise consumers of "the seller's or holder's intent to dispose of the motor vehicle upon the expiration of 15 days from the date of giving or mailing the notice, or if by mail and either the place of deposit in the mail or the place of address is outside of this state, the period shall be 20 days instead of 15 days," Cal. Civil Code, 2983.2(a)(6). The NOI BMW FS previously sent advised consumers that BMW FS would dispose of their vehicles "*on* or after 20 days from the date this Notice was mailed" (italics added), rather than "upon the expiration of 20 days." To address Plaintiffs' argument, BWM FS revised its NOI so it now states the consumer must reinstate "within 20 days from the date of mailing of this Notice," and specifies the vehicle will be sold "sometime after" a date certain, calculated by BMW FS to be 21 days after the date of mailing of the NOI. The revised NOI thus complies with the law.

1	Finally, the NOI properly advises consumers that they owe a $15 law enforcement
2	agency fee.  That is all Rees-Levering requires.  Nothing in the statute requires that the creditor
3	designate the name and address of the law enforcement agency at which the fee must be paid.
4	Moreover, *Juarez v. Arcadia Fin., Ltd.*, 152 Cal.App.4th 889 (Cal.App. 2007), requires only that the
5	consumer be able to determine from the NOI alone (without calling the lender) the ***amounts*** that
6	must be paid to reinstate the vehicle.  Nothing more is required.  The NOI need not, for example,
7	explain the various forms of payment that may be acceptable for the various fees (*e.g.*, credit card,
8	debit card, cashier's check, money order, personal check, cash, wire transfer, *etc.*); California law
9	does not preclude a creditor from requiring that consumers use their brain to figure that out.
10	Similarly here, the NOI sent by BMW FS provides the statutorily required notice of the ***amount*** of
11	the law enforcement agency fee that must be paid as a condition of reinstatement, and the amount is
12	accurately disclosed.  The consumer makes the determination as to ***how*** that fee is paid (*e.g.*, cash,
13	credit, *etc.*) and ***where*** that fee is paid (*i.e.*, which location is most convenient for him or her).
14	Setting aside *Juarez*, it is easy to understand why a creditor need not specify ***where***
15	the law enforcement fee need be paid.  This is because the law enforcement fee may be paid at
16	many different places, including any sheriff's office and at many of the storage facilities where the
17	consumer's vehicle is being held.  There is no way the creditor can know which location is most
18	convenient to the consumer.  If BMW FS looks up the main sheriff's office for the county in which
19	the vehicle was repossessed, then a future consumer could argue that BMW FS "required" them (or
20	"misled" them) into traveling to a location more distant and less convenient than a closer sheriff's
21	office, or failed to disclose that the fee could have been paid at the storage facility.  Thus, any
22	attempt to specify a particular location for payment of the law enforcement fee would likely result
23	in a subsequent class action lawsuit based on that law enforcement fee disclosure.  Moreover, if
24	litigation over a failure to disclose the location where the law enforcement fee were ever to proceed
25	to trial, the Court would never be able to craft a location disclosure that would satisfy everyone.
26	In sum, all that is required is that the consumer be advised of the fee if the lender
27	intends to require that the consumer pay it in order to reinstate the vehicle.  Because the existence
28	and amount of the fee is accurately disclosed, the attached NOI complies with California law.

Accordingly, as part of the approval of the class action settlement in this case, BMW FS respectfully requests that the Court enter also the proposed order, submitted herewith, adjudging that the revised NOI presently being used by BMW FS, as amended to address the concerns of plaintiffs' counsel, complies with Rees-Levering.

## II. THE SETTLEMENT

After intensive investigation and substantial negotiation efforts, and in light of the economic costs involved and the risks and delay of prolonged litigation, the parties concluded it is in the best interests of the proposed class and the defendants to enter into the Settlement. The Settlement is the best means of assuring a benefit to the class and expeditiously disposing of the asserted claims. The Settlement offers tangible and meaningful benefits to a California class, and class membership is readily ascertainable though a search of BMW FS's databases. The Settlement provides that an individual, United States first-class mail settlement notice will be provided to each class member at defendant's expense. The proposed notice contains an understandable explanation of the litigation and the benefits available to each member of the settlement class. Each settlement class member will receive back all sums paid to BMW FS, or its assignee, following the issuance of the NOI.

The Settlement also provides significant prospective relief: BMW FS ceased using a post-repossession worksheet, and revised its NOI (submitted herewith for judicial approval). BMW FS has been using, and shall continue to use, the new NOI in connection with its collection efforts.

Finally, the Settlement provides that attorney fees paid to Plaintiff's counsel by BMW FS shall be in addition to the sums paid to class members under the Settlement.

## III. ARGUMENT

### A. LEGAL STANDARD

The Federal Rules of Civil Procedure provide that "[t]he court may approve a settlement, voluntary dismissal, or compromise that would bind class members only after a hearing and on finding that the settlement . . . is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(1)(C). In making this determination, courts in the Ninth Circuit consider a variety of factors, including the following: (1) the strength of plaintiffs' case on the merits; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the

1   trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the
2   proceedings; (5) the experience and views of counsel; (6) the presence of a governmental
3   participant; and (6) the reaction of the class members to the proposed settlement. *See Churchill*
4   *Village, L.L.C. v. General Electric,* 361 F.3d 566, 575 (9th Cir. 2004).

5   Although class settlements must be scrutinized for fairness, "the court must also be mindful
6   of the Ninth Circuit's policy favoring settlement, particularly in class action law suits." *In re*
7   *Omnivision Technologies, Inc.,* 559 F.Supp.2d 1036 (N.D. Cal. 2008). *See also Officers for Justice*
8   *v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982) ("Finally, it must not be overlooked that
9   voluntary conciliation and settlement are the preferred means of dispute resolution. This is
10  especially true in complex class action litigation...."); *Van Bronkhorst v. Safeco Corp.*, 529 F.2d
11  943, 950 (9th Cir. 1976) ("[I]t hardly seems necessary to point out that there is an overriding public
12  interest in settling and quieting litigation. This is particularly true in class action suits...."). An
13  evaluation of the Settlement must also be tempered by the recognition that any compromise
14  involves concessions from all parties. Indeed, "the very essence of a settlement is compromise, 'a
15  yielding of absolutes and an abandoning of highest hopes.'" *Officers for Justice v. Civil Serv.*
16  *Comm'n*, 688 F.2d 615, 624 (9th Cir. 1982) (citation omitted).

17  At this preliminary approval stage the court need only determine whether the proposed
18  settlement is "within the range of possible approval." *In re Tableware Antitrust Litigation,* 484
19  F.Supp.2d 1078, 1079-80 (N.D. Cal. 2007). "[I]f the proposed settlement appears to be the product
20  of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly
21  grant preferential treatment to class representatives or segments of the class, and falls within the
22  range of possible approval, then the court should direct that the notice be given to the class
23  members of a formal fairness hearing." *Id.* (citing *Schwartz v. Dallas Cowboys Football Club, Ltd.*,
24  157 F.Supp.2d 561, 570 n.12 (E.D. Pa. 2001)).

25  **B.    THE SETTLEMENT FALLS WITHIN THE RANGE OF APPROVAL**
26  **1.    The Settlement Offers Class Members Real and Immediate Monetary**
27  **Benefits**
28  The Settlement is clearly within the range of possible final approval because all

settlement class members who paid money after receiving one of the NOIs at issue in this litigation will receive a real and immediate monetary benefit consisting of the return of the full amount of the sums so paid. This reimbursement shall be made irrespective of defenses that BMW FS otherwise may have as to efforts by class members to prevail on a Rees-Levering claim individually. Thus, for many class members, the monetary benefit will be equal to the maximum amount of damages recoverable at trial, if any. Further, class members are not required to submit a claim or take any other action to receive this monetary benefit.

### 2. The Settlement Offers Class Members Real and Immediate Non-Monetary Benefits

The Settlement also falls within the range of possible final approval because all settlement class members, even those who did not pay BMW FS any money after receiving one of the NOIs at issue in this litigation, will receive a real and immediate non-monetary benefit: specifically, the Settlement provides that "BMW FS shall transmit requests to the three major credit reporting agencies…asking them to update the trade line on the credit reports pertaining to members of the Plaintiff Settlement Class to reflect that their BMW Financial accounts have a zero balance and have been settled.".. Again, this benefit shall be made irrespective of defenses that BMW FS otherwise may have as to efforts by class members to prevail on a Rees-Levering claim individually, and class members are not required to submit a claim or take any other action to receive this non-monetary benefit.

### 3. Plaintiff Faces Significant Hurdles on the Merits

In assessing the consideration offered in the settlement, the Court may also look at the difficulties plaintiff would have in proceeding with litigation. *See In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000). Balancing the strength of plaintiff's claims against the amount offered in settlement demonstrates that the proposed Settlement is fair, reasonable and adequate. The class is receiving cash benefits that likely equal any actual damages, and the defendant has agreed to modify its NOI and stop using the post-repossession worksheet. Thus, the Settlement offers aggregate benefits that approximate what class members would likely achieve if plaintiff prevailed at trial.

As noted above, this case involves alleged violations of California's Rees-Levering statute, which governs the process by which a lender can obtain a deficiency judgment against a borrower who has defaulted on a car loan. Viewed broadly, Rees-Levering prevents a lender from recovering a deficiency if the NOI that it is required to send to the borrower fails to include certain information. The class action complaint alleges that BMW FS violated Rees-Levering by failing to include certain the information in the NOIs sent to defaulting borrowers and by requiring completion of a post-repossession worksheet ("PRW"). BMW FS disputes that allegation and, if required to proceed to litigate this case, firmly believes that it was entitled to request the information sought by the PRW. Accordingly, if this case did not settle, Plaintiffs' chances of success on the merits are not a given.

### C. THE SETTLEMENT IS THE RESULT OF ARMS LENGTH NEGOTIATIONS BETWEEN EXPERIENCED COUNSEL

A settlement initially should be presumed fair and reasonable where it is the result of arm's length negotiations between experienced counsel. Here, the parties engaged in extensive negotiations over a period of months including a formal mediation before the Hon. Ronald Sabraw (Ret.) of JAMS and extensive involvement of Judge Sabraw to address numerous disputes that arose among the parties. Finally, the parties' counsel are capable and experienced in consumer class actions. In sum, there are no deficiencies in the procedural background or substance of the Settlement, and the Settlement should be presumed fair at this preliminary stage.

### D. SUBMISSION OF THE SETTLEMENT TO THE CLASS IS APPROPRIATE

Rule 23 requires that notice to the class be "the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). As noted above, BMW FS can identify all class members though a search of its records. All class members will be provided notice directly by first class U.S. mail. BMW FS will also provide notice of the Settlement to the Office of the Comptroller of the Currency, as required by the Class Action Fairness Act, 28 USC § 1715.

## IV. CONCLUSION

For all of the above reasons, BMW FS respectfully requests that Plaintiff's unopposed motion for preliminary approval of settlement be approved.

DATED: December 23, 2013              JEFFER MANGELS BUTLER & MITCHELL LLP


By: _____/s/ Michael J. Hassen_____
MICHAEL J. HASSEN
Attorneys for Defendants BMW FINANCIAL SERVICES NA, LLC, and ASSET ACQUISITION GROUP, LLC