KEMN ITZER, BARRON & KRIEG, LLP
BRYAN KEMNITZER (SBN# 066401)
NANCY BARRON (SBN# 099278)
445 Bush St., 6th Floor
San Francisco, CA 94108
Telephone: (415) 632-1900
bryan@kbklegal.com
nancy@kbklegal.com

CHAVEZ & GERTLER LLP
MARK A. CHAVEZ (SBN# 90858)
NANCE F. BECKER (SBN# 99292)
42 Miller Ave.
Mill Valley, CA 94941
Telephone: (415) 381-5599
nance@chavezgertler.com
mark@chavezgertler.com

Attorneys for Plaintiffs
and the Settlement Class

# UNITED STATES DISTRICT COURT

# FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MOHAMMAD SALIMI, AUGUST GALARAGA, ALVIN LEUNG and VELIA SERRANO,<br><br>Plaintiffs,<br><br>vs.<br><br>BMW FINANCIAL SERVICES NA, LLC; ASSET ACQUISITION GROUP, LLC; and DOES 1-50, inclusive,<br><br>Defendants. | Case No. 3:12-cv-1754 JSW<br><br>**PLAINTIFFS' NOTICE OF MOTION, MOTION, AND MEMORANDUM IN SUPPORT OF MOTION FOR ATTORNEYS' FEES, COSTS, AND SERVICE AWARDS**<br><br>Hrg. Date: February 6, 2015<br>Time: 9:00 a.m.<br>Courtroom: 5 |


# TABLE OF CONTENTS

**PAGE**

NOTICE AND MOTION .................................................................................................................. 1

MEMORANDUM OF POINTS AND AUTHORITIES .................................................................. 1

I.   INTRODUCTION ................................................................................................................. 1

II.  BACKGROUND OF THE CASE ......................................................................................... 2

    A.  Summary of Plaintiffs' Claims .................................................................................. 2

    B.  Procedural History .................................................................................................... 3

    C.  Settlement Terms ...................................................................................................... 5

III. ARGUMENT ......................................................................................................................... 6

    A.  Plaintiffs Are Entitled To An Award Of Attorneys' Fees Pursuant To Federal Rule of Civil Procedure 23(h) And The Rees-Levering Act ...................... 6

    B.  The Requested Award Is Reasonable And Appropriate ........................................... 7

        1.  The time expended by Plaintiffs was reasonable and necessary to achieve the final outcome, and is well within the range of fee awards for litigation of this type ................................................................................. 9

        2.  The process for arriving at the negotiated fee award was fair and equitable ........................................................................................................ 9

        3.  The hourly rates for Plaintiffs' counsel are well within the range of rates charged by lawyers with similar skills, qualifications, and experience in the San Francisco Bay Area ...................................................... 10

        4.  The case includes many of the factors normally warranting a multiplier award ........................................................................................................... 11

    C.  Plaintiffs Are Entitled To Reimbursement Of Their Costs ................................... 12

    D.  The Court Should Award The Class Representatives The Requested Service Fees ........................................................................................................... 12

IV.  CONCLUSION ................................................................................................................... 13

**TABLE OF AUTHORITIES**

**PAGE**

<u>**CASES**</u>

*Avery v. First Resolution Mgmt. Corp.*
  568 F.3d 1018, 1023 (9th Cir. 2009) ........................................................................................ 7

*Bank of America v. Lallana*
  19 Cal.4th 203 (1998) ............................................................................................................. 12

*Cellphone Termination Fee Cases*
  186 Cal.App.4th 1380 (2010) ................................................................................................. 12

*Cerra v. Blackstone*
  172 Cal.App.3d 604 (1985) .................................................................................................... 11

*Chavez v. City of Los Angeles*
  47 Cal.4th 970 (2010) ............................................................................................................... 7

*Damian v. Tamandong*
  65 Cal.App.4th 1115 (1998) ..................................................................................................... 6

*Downey Cares v. Downey Community Dev. Com.*
  196 Cal.App.3d 983 (1987) ...................................................................................................... 7

*Folsom v. Butte County Assn. of Governments*
  32 Cal.3d 668 (1982) .......................................................................................................... 7, 11

*Graham v DaimlerChrysler*
  34 Cal.4th 553 (2003) ............................................................................................................. 10

*In re Consumer Privacy Cases*
  175 Cal.App.4th 545 (2009) ..................................................................................................... 9

*In re First Capital Holdings Corp. Fin. Prods. Sec. Litig.*
  1992 U.S.Dist. LEXIS 14337 (C.D. Cal. June 10, 1992) ...................................................... 10

*In re Mego Fin. Corp. Sec. Litig.*
  213 F.3d 454 (9th Cir. 2000) ................................................................................................. 12

*Ketchum v. Moses*
  22 Cal.4th 1122 (2001) ...................................................................................................... 8, 10

*Lealao v. Beneficial California, Inc.*
  82 Cal.App.4th 19 (2000) ................................................................................................ 7, 9, 11

*MRO Communic's, Inc. v. AT&T Co.*
  197 F.3d 1276 (9th Cir. 1999) ....................................................................................................... 7

*Press v. Lucky Stores*
  34 Cal.3d 311 (1983) .................................................................................................................... 8

*Staton v. Boeing Co.*
  327 F.3d 938, 972 (9th Cir. 2003) ............................................................................................ 9, 12

*United Steelworkers v. Phelps Dodge*
  896 F.2d 403 (9th Cir. 1990) ...................................................................................................... 10

*Van Vranken v. Atlantic Richfield Co.*
  901 F.Supp.294 (N.D. Cal. 1994) ............................................................................................... 12

*Vizcaino v. Microsoft Corp.*
  290 F.3d 1043 (9th Cir. 2002) .................................................................................................... 11

*Vo v. Las Virgenes Municipal Water Dist.*
  79 Cal.App.4th 440 (2000) ........................................................................................................... 8

*Wershba v. Apple Computer*
  91 Cal.App.4th 224 (2001) ......................................................................................................... 11

*Zucker v. Occidental Petroleum Corp.*
  192 F.3d 1323 (9th Cir. 1999) ...................................................................................................... 9

**STATUTES**

Cal. Bus. & Prof. Code §17200. ...................................................................................................... 3
Cal. Comm. Code §3604................................................................................................................ 12
Cal. Civil Code §1021.5................................................................................................................. 11
Cal. Civil Code §2981...................................................................................................................... 1
Cal. Civil Code §2983.2(a) .............................................................................................................. 3
Cal. Civil Code §2983.2(a)(2) ......................................................................................................... 3
Cal. Civil Code §2983.3(b).............................................................................................................. 3
Cal. Civil Code §2983.3(c) .............................................................................................................. 3
Cal. Civil Code §2983.3(e) .............................................................................................................. 3
Cal. Civil Code §2983.4................................................................................................................... 6

**RULES**

Federal Rule of Civil Procedure 23(h)....................................................................................... 6, 12
Federal Rule of Civil Procedure 54(d)(1) ..................................................................................... 12

# NOTICE AND MOTION

TO DEFENDANTS BMW FINANCIAL SERVICES N.A. LLC, ET AL. AND THEIR ATTORNEYS OF RECORD:

 PLEASE TAKE NOTCE that on February 6, 2015 beginning at 9:00 a.m., or as soon thereafter as the matter can be heard in Courtroom 5 of the United States District Court for the Northern District of California, located at 1301 Clay Street, 2nd Floor, Oakland, CA 94612, Plaintiffs Mohammad Salimi, August Galaraga, Alvin Leung and Velia Serrano will and they hereby do move this Court for Final Approval of the Settlement Agreement in this action, including an award of costs and attorneys' fees to Class Counsel and services awards to the class representatives. The motion, which is unopposed, will be based on the accompanying Memorandum, Declarations and Exhibits, the files and records in this action, and such further evidence and argument as may be presented at the hearing.

Dated: December 1, 2014

            KEMNITZER, BARRON & KRIEG, LLP

            CHAVEZ & GERTLER LLP

            By: _____

            Mark A. Chavez
            Attorneys for Plaintiffs

## MEMORANDUM OF POINTS AND AUTHORITIES

**I. INTRODUCTION**

 This is an action for restitution, declaratory and injunctive relief on behalf of all California consumers injured by Defendants' violations of California's Rees-Levering Automobile Sales Finance Act ("Rees-Levering Act"), California Civil Code §§2981 *et seq*. The parties have entered into a Settlement Agreement ("S.A.," Exh. A to the Declaration of Mark A. Chavez) which was preliminarily approved by this Court by order dated September 29, 2014 (ECF Doc. 80). The settlement provides complete relief to the class members, including monetary restitution, repair of their credit reports, and an injunction against future harm. Defendants BMW

1  Financial Services, NA, LLC and its affiliates Alphera Financial Services, Mini Financial
2  Services, and Rolls-Royce Motor Cars Financial Services (together, "BMW FS") also agreed that,
3  subject to the approval of the Court, they would pay Plaintiffs $360,000 for their costs and
4  attorneys' fees and pay the class representatives service awards of $3,500 (Mr. Salimi, Mr.
5  Galaraga and Ms. Serrano) and $1,000 (Mr. Leung).  The negotiated payment is about 16% *less*
6  than Class Counsel's lodestar, which as of mid-November included $404,542 in attorneys' fees
7  and $23,563.23 in costs, for a total of $428,105.23, and is also well below the Ninth Circuit's
8  25% benchmark for percentage-based fee awards.  Because the requested award is reasonable and
9  appropriate, the Court should grant Plaintiffs' motion in full.

## II. BACKGROUND OF THE CASE

### A. Summary Of Plaintiffs' Claims

BMW FS is an automobile lender that accepts assignments of conditional sales contracts from automobile dealers throughout California.  It thereby becomes the holder of the contracts and collects monthly installment payments from automobile borrowers.  During the class period, October 1, 2008 through January 15, 2013, BMW FS repossessed the financed vehicles of Plaintiffs and class members due to their alleged failure to make payments due on their loans; sent each of them a standard form Notice of Intent to dispose of the vehicle ("Statutory Notice" or "NOI") similar to the one sent to each of the Plaintiffs; sold the vehicles; and then demanded, collected or attempted to collect the difference between the sale price and the balance of the loan (the "Deficiency Balance") from the borrowers.  BMW FS also required class members who wanted to have their loans reinstated to complete and sign a "Post Repossession Worksheet" that required them to provide a variety of personal information including the names and address of personal references, contact information for their employer, and financial information.

Conditional sales contracts are strictly regulated by the Rees-Levering Act, which governs the rights and remedies available to holders of the contracts like BMW FS and its assignees.  In the event of a default by a borrower, the holder has the right to repossess and dispose of the motor vehicle, which serves as the collateral for the loan without judicial process.  The holder is not, however, entitled to collect the Deficiency Balance from the borrower following disposition of

the vehicle without satisfying the specific notice requirements of the statute. As a matter of law, the borrower is liable for the Deficiency Balance "*only if*" the lender issues a Statutory Notice prior to disposition of the vehicle that complies with each and every requirement of Civil Code §2983.2(a)(1)-(9). (*See* Cal. Civil Code §2983.2(a).) Strict compliance with the Statutory Notice requirements is, in other words, a condition precedent to the right to demand or collect any Deficiency Balance.

Plaintiffs allege that the standard form Statutory Notice BMW FS sent to the members of the class was defective because it omitted certain of the disclosures required by Civil Code §2983.2(a)(2). Plaintiffs also allege that BMW FS's conduct was unlawful because the "Post Repossession Worksheet" wrongfully required consumers to provide private information, and that BMW FS denied reinstatement for failure to provide such information, in violation of Civil Code §2983.3(e), which provides that "if either the seller or holder denies the right to reinstatement …," they may do so *only* for the reasons set forth in §2983.3(b) and 2983.3(c).

Plaintiffs allege these actions and omissions violate both the Rees-Levering Act (first cause of action) and the California Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §17200 *et seq*. (second cause of action), and entitle them and all others similarly situated to restitution, damages, and declaratory and injunctive relief.

BMW FS strongly disputes liability. Nevertheless, as discussed further below it has agreed to provide virtually all of the relief Plaintiffs set out to obtain, and does not oppose this motion.

**B.     Procedural History**

Plaintiffs Salimi and Galaraga filed suit against BMW FS in Alameda Superior Court on February 27. 2012, and Defendants removed the action to this Court on April 9, 2012. The Complaint alleges three causes of action: (1) unlawful, unfair, and fraudulent business practices in violation of the UCL; (2) violations of the Rees Levering Act; and (3) declaratory relief.

The parties exchanged initial disclosures pursuant to Rule 26 and Plaintiffs deposed BMW FS's PMK on December 11, 2012. Plaintiffs also added Mr. Leung as an additional class

3
PLAINTIFFS' NOTICE AND MEMORANDUM IN SUPPORT OF MOTON FOR ATTORNEYS' FEES, COSTS, AND SERVICE AWARDS

1  representative.  The parties then agreed to proceed to mediation under the auspices of the Hon.
2  Judge Ronald Sabraw (ret.) at JAMS.  (Chavez Decl. ¶¶ 17, 18.)

3  In their Joint CMC Statement filed February 7, 2013 (ECF Doc. 38), the parties reported
4  that the mediation on January 15, 2013 had been successful, and that they had reached an
5  agreement in principle and were working on finalizing the terms of a written settlement
6  agreement that the Plaintiffs had prepared.  However, a number of unusual and unanticipated
7  events occurred that significantly delayed the resolution of the proceedings and thereby also
8  increased the legal costs of the litigation.

9  First, as reported in a subsequent CMC statement filed April 3, 2013 (ECF Doc. 42),
10 subsequent to the mediation Defendants advised Plaintiffs that the amount of Deficiency Balances
11 at stake was significantly higher than originally estimated (over $50 million as opposed to the
12 initial estimate of about $35 million).  Plaintiffs also discovered that at least one of the third
13 parties to whom BMW FS had assigned the alleged deficiency debts was continuing to take action
14 to collect on the accounts of the class members, including Ms. Velia Serrano.  This prompted
15 Plaintiffs to demand a more detailed explanation, and resulted in a second mediation (also before
16 Judge Sabraw) on June 18, 2013.  (Chavez Decl. ¶ 20.)

17 The second mediation resulted in modifications to the Settlement Agreement and the
18 addition of Ms. Serrano as a class representative.  Both sides then filed briefs in support of
19 preliminary approval.  (*See* ECF Doc. 60, 62.)  The Court granted preliminary approval on
20 February 6, 2014 (ECF Doc. 64).   However, the Court requested additional briefing regarding
21 BMW FS's request that in addition to approving the settlement, the Court review BMW FS's
22 revised form of Statutory Notice (*i.e.,* the Notice that BMW FS prepared after this action was
23 filed, and after the Class Period ended) and rule that it is compliant with the Rees-Levering Act.
24 After those briefs were submitted, the Court on March 3, 2014 issued a second order (ECF Doc.
25 67) directing further meet and confer (1) as to whether the parties had or had not agreed to that
26 procedure as part of the settlement and (2) if not, whether the Court had authority and jurisdiction
27 to rule on BMW FS's request.  (Chavez Decl. ¶¶ 21.)

28

1   In response, the parties filed a joint statement (ECF Doc. 68) stating that BMW FS was no longer willing to proceed with the settlement, and that the parties were seeking the assistance of Judge Sabraw a third time.  Another mediation was scheduled for June 17, 2014.  On July 2, 2014, the parties reported that the mediation was successful and that they had agreed (1) that BMW FS would seek judicial approval of its Statutory Notice in connection with final approval and (2) Plaintiffs would not oppose that request, but would take no position one way or the other about the merits.  (Joint CMC Statement, ECF Doc. 74, attaching confirming letter from the mediator.)  (Chavez Decl. ¶ 22.)

Based on the foregoing, on September 29, 2014 the Court issued an order certifying the class for settlement purposes and granting preliminary approval (ECF Doc. 80).  The Order required that Class Notice be mailed by October 20; objections and opt-outs are due December 22; and a final approval hearing is set for February 6, 2015.  (Chavez Decl. ¶ 23.)

**C.     Settlement Terms**

The settlement benefits all of the 5,178 identified Settlement Class members, 636 of whom made one or more payments toward their Deficiency Balance.  Defendants have agreed to refund 100% of the $2,088,202 in Deficiency Balances that were collected; to forebear from attempting to collect any portion of the $50,924,483.33 in alleged Deficiency Balances that remain outstanding; and to request each of the major credit reporting agencies to delete the trade lines (including the notation that the vehicle had been repossessed) from relating to class members' transactions.   Defendants have further agreed to repurchase any class member accounts sold or assigned to third parties, and to refrain from the challenged practices in the future.  Finally, Defendants will bear the costs of settlement administration (S.A., ¶ 5.01) and, in addition, to pay the attorneys' fees, costs and service awards requested in this motion (S.A. ¶¶ 3.05, 3.06).

/////

////

////

////

## III. ARGUMENT

### A. Plaintiffs Are Entitled To An Award Of Attorneys' Fees Pursuant To Federal Rule of Civil Procedure 23(h) And The Rees-Levering Act

Federal Rule of Civil Procedure 23(h) provides that, "[i]n a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." Fees in this case are authorized under both prongs of that Rule.

First, in the Settlement Agreement, the parties agreed that Class Counsel would make an application to the Court for an award of attorneys' fees, costs and expenses, and that BMW FS would not "oppose in any manner" an application for fees, costs and expenses in an amount not to exceed $360,000. Paragraph 3.05 of the Settlement Agreement provides:

> The parties understand and agree that Plaintiffs' Counsel shall make an application to the Court for an award of attorneys' fees, costs and expenses. BMW FS agrees not to oppose in any manner such an application for fees, costs and expenses in an amount not to exceed $360,000. * * * The award shall be paid separate from and in addition to the payments to the Plaintiff Settlement Class and shall not reduce the amounts of those payments.

Defendants' agreement to compensate Plaintiffs' attorneys is an important part of the consideration for the settlement which was recommended by the Mediator, and the Court should approve that aspect of the settlement.

Second, even in the absence of the Agreement, Plaintiffs would be entitled to an award of fees and costs under the Rees-Levering Act. California Civil Code §2983.4 expressly states that, "[r]easonable attorney's fees and costs *shall be awarded* to the prevailing party in any action on a contract or purchase order subject to the provisions of this chapter…." (emphasis added). As discussed in *Damian v. Tamandong,* 65 Cal.App.4th 1115 (1998), the primary reason for the enactment of the statute was to "enable consumers with good claims or defenses to find attorneys willing to represent them in court," and thus to defend themselves against the "scorched earth tactics" of the automotive finance industry that had previously resulted in the victimization of consumers. (*Damian,* 65 Cal.App.4th at 1118, 1128.)

Here, Plaintiffs have successfully secured both monetary relief to prevent future violations of California law, and injunctive relief to prevent similar violations from recurring in the future,

thereby enforcing the legislative policy in favor of protecting consumers against unscrupulous lending practices.  The settlement benefits a large class of persons who, because of the small sums at issue in comparison to the complexity of the law, would not otherwise be able to secure judicial relief.  Plaintiffs have also secured valuable relief in the form of the correction of class members' credit reports, which – without the deletion of the "repossession" notation that Defendants have agreed to have removed – prevent most consumers from obtaining financing for a new vehicle.  (Chavez Decl. ¶ 25.)  Plaintiffs are clearly the prevailing party in this case, and the fact that the case was resolved by settlement is irrelevant to that determination.  (*See Folsom v. Butte County Assn. of Governments,* 32 Cal.3d 668, 685 (1982) [critical factor in determining whether a party is successful is "the impact of the action, not the manner of its resolution"].)

### B. The Requested Award Is Reasonable And Appropriate

Plaintiffs' claims arise entirely under, and in the absence of removal would have been determined by, state law. Accordingly, the Court should apply California law in determining Plaintiffs' attorneys' fees.  (*Avery v. First Resolution Mgmt. Corp.*, 568 F.3d 1018, 1023 (9th Cir. 2009); *MRO Communic's, Inc. v. AT&T Co.,* 197 F.3d 1276, 1281 (9th Cir. 1999), *cert. denied*, 529 U.S. 1124 (2000).)

Under California law, "[i]n so-called 'fee shifting' cases, in which the responsibility to pay attorney fees is statutorily or otherwise transferred from the prevailing plaintiff or class to the defendant, the primary method for establishing the amount of 'reasonable' attorney fees is the lodestar method."  (*Lealao v. Beneficial California, Inc.*, 82 Cal.App.4th 19, 26 (2000); *see also Downey Cares v. Downey Community Dev. Com.* 196 Cal.App.3d 983, 995-96 (1987); *Chavez v. City of Los Angeles*, 47 Cal.4th 970, 985 (2010) ["Under Code of Civil Procedure section 1021.5 [a fee-shifting statute], if a court determines that attorney fees should be awarded, computation of those fees is based on the lodestar adjustment method as set forth in *Serrano v. Priest* (1977) 20 Cal.3d 25."] ["*Serrano III*"].)

Under this method, the court begins with a "touchstone" or "lodestar" figure, based on "a careful compilation of the time spent and reasonable hourly compensation of each attorney … involved in the presentation of the case." (*Serrano III*, 20 Cal.3d at 48; *Ketchum v. Moses* (2001)

22 Cal.4th 1122, 1131-32; *Press v. Lucky Stores* (1983) 34 Cal.3d 311, 322.)  The lodestar is, simply, the number of hours reasonably expended in the litigation multiplied by a reasonable hourly rate.  (*See*, *e.g*., *Serrano v. Unruh* (1982) 32 Cal.3d 621, 626-39 ["*Serrano IV*"]; *Press, supra,* 34 Cal.3d at 321-25.)  The reasonableness of the hours claimed is assessed by "the entire course of the litigation, including pretrial matters, settlement negotiations, discovery, [and] litigation tactics."  (*Vo v. Las Virgenes Municipal Water Dist.* (2000) 79 Cal.App.4th 440, 447.)

In appropriate cases, the Court may then adjust the award up or down depending on various factors, including the complexity of the issues and the amount at stake; the results achieved; the promptness of the settlement; the skill of counsel; and the contingent nature of any fee award.  (*Ketchum, supra,* 24 Cal.4th at 1132-22; *see also Serrano III,* 20 Cal.3d at 49 [listing seven factors, including the complexity of the questions and the skill displayed in presenting them and the contingent nature of the award]; *Lealao, supra,* 82 Cal.App.4th at 42, 45 [courts may consider experience of counsel, amount at stake and results obtained as lodestar enhancement factors]. )

Plaintiffs' request for attorneys' fees is based on the following lodestar for their time recorded through November 20, 2014:

|  | Hours | Fees | Costs |
|---|---|---|---|
| Kemnitzer, Barron & Krieg | 441.5 | $ 259,225 | $ 23,158.46 |
| Chavez & Gertler | 195.6 | $ 147,042 | $ 404.77 |
| TOTAL | 637.1 | $ 406,267 | $ 23,562.90 |

This time does not include the significant additional work that will be necessary to oversee the distribution of the funds, respond to class member inquiries, and in connection with the final briefing and hearing on final approval.  The proposed fee award was negotiated prior to the third round of mediation, and also did not include any allowance for the time spent subsequent to the second round of mediation. (Chavez Decl. ¶ 19; Kemnitzer Decl. ¶ 4.)

1. **The time expended by Plaintiffs was reasonable and necessary to achieve the final outcome, and is well within the range of fee awards for litigation of this type**

The time expended by Class Counsel was reasonable and necessary to achieve the very successful final outcome in this case. The fee award resulted from an arms-length negotiation before a well-respected mediator, and the parties waited until after reaching resolution of the substantive claims to address Plaintiffs' attorneys' fee claim. (Chavez Decl., ¶ 19; Kemnitzer Decl. ¶ 4.)

The fees requested are more than reasonable given the nature of the litigation, and are far below average for a class action of this magnitude. Though the award will not come from the settlement fund, and, as such, the fee award may not be justified solely as a percentage of the recovery, it is still appropriate to "cross-check" the lodestar by comparison to the value of the settlement to ensure that the fee awarded is reasonable and within the range of fees freely negotiated in the legal marketplace in comparable litigation. (*See In re Consumer Privacy Cases*, 175 Cal.App.4th 545, 557-58 (2009); *Lealao*, *supra,* 82 Cal.App.4th at 49.) The "benchmark" award in common fund cases in the Ninth Circuit is 25 percent. (*In re Consumer Privacy Cases* at 557 n.13.)

In this case, when the benefit is properly calculated on the basis of the waived deficiency balances plus the funds restored to the class (about $53 million), the requested fee award is less than 1% of the benefit. Even based on the amount of restitution ($2.1 million) alone, it is 17.2% of the benefit, well below the typical range that has been approved by the courts.

2. **The process for arriving at the negotiated fee award was fair and equitable**

In discharging its duty to determine the fairness of attorneys' fees in a class action settlement, the Court's primary concern is to ensure that the negotiation process leading to the fee has "adequately protected the class from the possibility that class counsel were accepting an excessive fee at the expense of the class." (*Staton v. Boeing Co.*, 327 F.3d 938, 972 (9th Cir. 2003); *see Zucker v. Occidental Petroleum Corp.*, 192 F.3d 1323, 1329 (9th Cir. 1999), *cert denied,* 529 U.S. 1066 (2000).) Where, as here, "the fee was negotiated at arms' length with sophisticated defendants by the attorneys who were intimately familiar with the case, the risks,

1  the amount and value of their time, and the nature of the result obtained for the class … the Court

2  [should be] reluctant to interpose its judgment as to the amount of attorneys' fees in the place of

3  the amount negotiated…." (*In re First Capital Holdings Corp. Fin. Prods. Sec. Litig.*, 1992

4  U.S.Dist. LEXIS 14337 at *13 (C.D. Cal. June 10, 1992).)

5       As described in Mr. Chavez's declaration, the negotiation process in this case was entirely

6  arms-length and was conducted under the auspices of an experienced mediator and former judge.

7  The parties reached agreement on the substantive terms of the settlement prior to turning to the

8  negotiation of fees. (Chavez Decl. ¶ 19; Kemnitzer Decl. ¶ 4.) There are no indicia of collusion.

### 3. The hourly rates for Plaintiffs' counsel are well within the range of rates charged by lawyers with similar skills, qualifications, and experience in the San Francisco Bay Area

11       The appropriate hourly rate for purposes of awarding attorneys' fees is the prevailing

12  billing rate of attorneys with comparable qualifications, skill and experience within the

13  community where the litigation takes place. (*See Ketchum, supra,* 22 Cal.4th at 1133 [citing

14  *Serrano IV*, 32 Cal.3d at 625].) The prevailing market rate is determined by the declarations of

15  the claimant's attorneys, other attorneys, and orders from other courts confirming counsel's rates.

16  (*United Steelworkers v. Phelps Dodge* (9th Cir. 1990) 896 F.2d 403, 407.) The lodestar rate may

17  be "based on the present hourly rate rather than the lesser rate applicable when the services were

18  rendered," which is "tantamount to an interest rate." (*Graham v DaimlerChrysler* (2003) 34

19  Cal.4th 553, 584.)

20       The qualifications and experience of Plaintiffs' counsel who performed work in this

21  matter are described in the Chavez and Kemnitzer Declarations. As attested therein, the hourly

22  rates on which the lodestar is based are well within the range of rates charged by lawyers with

23  similar skills, qualifications, and experience in the San Francisco Bay Area, and have previously

24  been approved and awarded by both federal and state courts. (Chavez Decl. ¶¶ 31-33; Kemnitzer

25  Decl. ¶¶ 24-36.)

26  ///

27  ///

28

### 4. The case includes many of the factors normally warranting a multiplier award

The lodestar multiplier method has always also permitted an enhancement of the lodestar by a multiplier to reflect the result achieved. (*Lealao, supra,* 82 Cal.App.4th at 45 ["California courts often use 'the amount at stake, and the result obtained by counsel' as relevant factors justifying enhancement of a lodestar fee through use of a multiplier."]; *see Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1051 n.6 and Appendix (9th Cir. 2002) [multipliers in common fund cases range from 0.6 to 19.6, with most in the 1.0-4.0 range]; *Wershba v. Apple Computer*, 91 Cal.App.4th 224, 255 (2001) ["Multipliers can range from 2 to 4 or even higher."].) Given the extent of Defendants' over-reaching, the expertise of Plaintiffs' counsel, and the contingent nature of any recovery, in the absence of the Settlement Agreement a multiplier would be entirely appropriate in this case.

Plaintiffs' counsel assumed all of the risk of the litigation, which was undertaken solely on a contingent basis with no guarantee of recovery. (Chavez Decl. ¶ 27.) Although the parties settled early in the proceedings, the complexity of the issues is demonstrated by the fact that not one but two subsequent mediations were required before a complete resolution could be achieved. The case settled relatively quickly and efficiently due to Class Counsel's high degree of expertise in both the substantive issues and the litigation of consumer class actions generally. (Chavez Decl. ¶¶ 2-16; Kemnitzer Decl. ¶¶ 9-23.)

In addition to achieving excellent results for the members of the class, Plaintiffs' successful litigation of this case also conferred valuable benefits on the public at large. As reflected in California's "private attorney general statute," Code of Civil Procedure §1021.5, this State has a strong public policy in favor of "encourag[ing] public interest litigation that might otherwise be too costly to pursue," and of ensuring that "worthy claimants [are not] silenced or stifled because of a lack of legal resources." (*Folsom v. Butte County Ass'n of Gov'ts,* 32 Cal.3d 668, 683-84 (1982).) The Rees-Levering Act is a consumer protection statute which was enacted "to provide more comprehensive protection for the unsophisticated motor vehicle [buyer]" than is provided for commercial transactions. (*Cerra v. Blackstone,* 172 Cal.App.3d 604, 608 (1985).) While the

1  California Uniform Commercial Code requires all sales of repossessed collateral to be conducted in a
2  fair and commercially reasonable manner (*see* Cal. Comm. Code §3604), the Rees-Levering Act
3  requires that in consumer transactions involving motor vehicles, the creditor must *also* give the debtor
4  detailed notice of his or her rights to reinstate their loan and redeem their vehicle.  (*See Bank of*
5  *America v. Lallana*, 19 Cal.4th 203 (1998).)  The public benefit of the enforcement of these rights
6  through this settlement is another factor that supports an award of attorneys' fees, as well as the
7  requested service awards, here.

8        **C.**      **Plaintiffs Are Entitled To Reimbursement Of Their Costs**

9        Plaintiffs are also entitled to recover the costs and expenses incurred in the action in the
10 amount of $23,562.90.  (F.R.C.P. 54(d)(1) ["costs other than attorneys' fees shall be allowed as
11 of course to the prevailing party unless the court otherwise directs; F.R.C.P. 23(h) [in a certified
12 class action, "the court may award … nontaxable costs that are authorized by law or by the
13 parties' agreement"]); *Beasley v. Wells Fargo Bank*, 235 Cal.App.3d 1407, 1421-22 [discussing
14 cost awards under California law.)  These costs are itemized by category in the accompanying
15 exhibits and declarations of counsel, and are clearly reasonable.  (Chavez Decl. ¶ 34, Exh. C;
16 Kemnitzer Decl. ¶¶ 7-8, Exh. B.)

17       **D.**      **The Court Should Award The Class Representatives The Requested Service Fees**
18

19       Subject to the Court's approval, the settlement provides for payment of service awards of
20 $3,500 to Mr. Salimi, Mr. Galarga, and Ms. Serrano, and of $1,000 to Mr. Leung, to be paid in
21 addition to the compensation to the class and Plaintiffs' counsel.  It has long been established that
22 courts have discretion to approve such service or "incentive" awards to representative plaintiffs in
23 class actions as compensation for their having expended time and effort for the benefit of others
24 and for having undertaken the risks inherent in serving as a named plaintiff.  (*See, e.g.*, *Staton,*
25 *supra,* 327 F.3d at 977; *In re Mego Fin. Corp. Sec. Litig.,* 213 F.3d 454, 463 (9th Cir. 2000); *Van*
26 *Vranken v. Atlantic Richfield Co.,* 901 F.Supp.294, 299 (N.D. Cal. 1994); *Cellphone Termination*
27 *Fee Cases* (2010) 186 Cal.App.4th 1380, 1393-1395.)  The contributions of each of the class
28 representatives to the resolution of this action will be described in each of their Declarations,

which will be submitted with the Motion for Final Approval to be considered concurrently herewith.

## IV. CONCLUSION

For all of the reasons discussed above, Plaintiffs respectfully submit that this unopposed motion should be granted, and ask the Court to enter an order awarding Plaintiffs service fees, and awarding Class Counsel their attorneys' fees and costs incurred in the successful litigation of this matter.

Dated: December 1, 2014                KEMNITZER , BARRON & KRIEG LLP

                                       CHAVEZ & GERTLER LLP


                                       By: _____
                                           Mark A. Chavez
                                           Attorneys for Plaintiff and the Settlement Class