1 | KEMNITZER, BARRON & KRIEG, LLP
BRYAN KEMNITZER        Bar No. 066401
2 | NANCY BARRON          Bar No. 099278
ELLIOT CONN            Bar No. 279920
3 | 445 Bush St., 6th Floor
San Francisco, CA  94108
4 | Telephone:  (415) 632-1900
Facsimile:  (415) 632-1901
5 | bryan@kbklegal.com
nancy@kbklegal.com
6 | elliot@kbklegal.com

7 | CHAVEZ & GERTLER LLP
MARK A. CHAVEZ         Bar No. 090858
8 | NANCE F. BECKER       Bar No. 099292
42 Miller Ave.
9 | Mill Valley, CA  94941
Telephone:  (415) 381-5599
10 | Facsimile:  (415) 381-5572
mark@chavezgertler.com
11 | nance@chavezgertler.com

12 | Attorneys for Plaintiffs and the proposed class

13

14

15

16 | UNITED STATES DISTRICT COURT

17 | FOR THE NORTHERN DISTRICT OF CALIFORNIA

18 | OAKLAND DIVISION

19

20 | MOHAMMAD SALIMI; AUGUST
GALARAGA, ALVIN LEUNG, and VELIA
21 | SERRANO
                      Plaintiffs,
22 |
23 |        vs.
24 | BMW FINANCIAL SERVICES NA, LLC;
ASSET ACQUISITION GROUP, LLC; and
25 | DOES 1-50, inclusive,
26 |
                      Defendants
27 |
28 |

**Case No. 4:12-cv-01754 -JSW**

**NOTICE OF MOTION, MOTION, AND MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

**Date:  February 6, 2015**
**Time:  9:00 a.m.**
**Dept:   Courtroom 5, 2nd Floor**
**Hon. Jeffrey S. White**

# TABLE OF CONTENTS

**PAGE**

NOTICE OF MOTION AND MOTION ..................................................................................................1

MEMORANDUM OF POINTS AND AUTHORITIES ......................................................................1

I.     INTRODUCTION ....................................................................................................................1

II.    STATEMENT OF THE CASE ...............................................................................................4

    A.     Substantive Claims: BMW FS' Violations of the Rees-Levering Act.............................4

    B.     Pertinent Facts Relating to the Class Representatives .......................................................5

III.   PERTINENT PROCEDURAL HISTORY ............................................................................6

IV.    SUMMARY OF SETTLEMENT TERMS ...........................................................................6

    A.     Injunction Against Collection of Deficiency Balances......................................................7

    B.     Cash Payments ..................................................................................................................7

    C.     Credit Reporting ...............................................................................................................7

    D.     Service Awards .................................................................................................................7

    E.     *Cy Pres* ...........................................................................................................................7

    F.     Attorneys' Fees and Costs ................................................................................................7

    G.     No 1099s Shall Issue.........................................................................................................7

    H.     Releases .............................................................................................................................8

    I.     Notice.................................................................................................................................8

    J.     Court Retains Jurisdiction ................................................................................................8

V.     THE SETTLEMENT SHOULD RECEIVE FINAL APPROVAL .....................................8

    A.     Standard of Review For Final Approval Motions..............................................................8

    B.     The Settlement Class Satisfies All Certification Requirements of Federal Rule 23 ........10

        1.     Introduction...........................................................................................................10

        2.     Numerosity............................................................................................................10

        3.     Commonality.........................................................................................................10

        4.     Typicality ..............................................................................................................12

        5.     Ascertainability.....................................................................................................12

6.   Adequacy of Representation ................................................................................13

7.   Superiority ..........................................................................................................13

C.   The Parties Litigated the Case To A Full Understanding of the Facts and Potential

Outcomes, and Mediated the Settlement At Arm's Length ................................................14

D.   All Requirements of Preliminary Approval Have Been Completed ................................15

1.   Class Notice ........................................................................................................15

2.   Fee Motion Filed Prior to Objection and Opt-Out Deadline ...............................15

3.   Favorable Response ............................................................................................16

VI.   REQUEST FOR APPROVAL OF *CY PRES* NOMINEE ................................................16

VII.   CONCLUSION ...............................................................................................................17

## TABLE OF AUTHORITIES

PAGE

## CASES

*Amchem Prods. Inc. v Windsor,* 521 U.S. 591 (1997) ...................................................... 10,11,13

*Amgen Inc. v Connecticut Retirement Plans & Trust Funds,* 133 S.Ct. 1184 (2013) ................. 11

*Avilez v Pinkerton Gov't Servs.,* 286 F.R.D. 450 (C.D.Cal.2012) ................................................ 12

*Bank of America v. Lallana* (1998) 19 Cal.4th 203 .......................................................... 5,11

*Carter v Anderson Merchandisers, LP,* 2010 WL 1946784 (C.D. Cal. 2010) ............................ 14

*Churchill Village, L.L.C. v General Electric,* 361 F.3d 566 (9th Cir. 2004) ........................... 9,15

*Comcast Corp. v Behrend,* 133 S.Ct. 1426 (2013) ................................................................. 11

*D Dennis v. Kellogg Co.,* 697 F.3d 858 (9th Cir.2012) ............................................................ 16

*Fireside Bank v Superior Court* (2007) 40 Cal.4th 1069 ........................................................ 11

*Hanlon v Chrysler Corp.,* 150 F.3d 1011 (9th Cir. 1998) ............................................ 8,11,12,13

*In re Mercury Interactive Corp. Sec. Litig.,* 618 F.3d 988 (9th Cir. 2010) ................................ 15

*In re Whirlpool Corp. Front-Loading Washer Products Liability,* 722 F.3d 838 (2013) ............ 11

*Juarez v Arcadia Financial, Ltd.* (2007) 152 Cal.App.4th 889 ................................................ 11

*Keegan v. American Honda Motor Co., Inc.* 284 F.R.D. 504 (C.D.Cal. 2012) ........................... 10

ii

Notice of Motion, Motion, and Memorandum of Points & Authorities in Support of Motion for Final Approval of Class Action Settlement

*Lane v. Facebook, Inc.* 696 F.3d 811 (9th Cir.2012) .................................................... 17

*Leyva v Medline Industries, Inc.,* 716 F.3d 510 (9th Cir. 2013) ................................... 10

*Mann v Acclaim Financial Services,* 232 F.R.D. 278 (S.D. Ohio 2003) ......................... 12

*Mazza v. Am. Honda Motor Co., Inc.,* 666 F.3d 581 (9th Cir. 2012) ............................ 11

*Munoz v PHH Corp.* 2013 WL 2146925 (E.D. Cal. 2013) ............................................. 11

*Naschin v AOL, LLC,* 663 F.3d 1034 (9th Cir. 2011) ................................................ 16,17

*Officers for Justice v Civil Service Commission,* 688 F.2d 615 (9th Cir. 1982) ............................. 9

*Parsons v. Ryan*, 754 F.3d 657 (9th Cir. 2014) ......................................................... 11

*Postow v Oriental Bldg, Ass'n,,* 390 F.Supp. 1130 (D.D.C. 1975) .............................. 12

*Ramirez v Balboa Thrift and Loan* (2013) 215 Cal.App.4th 765 ................................. 11

*Rodriguez v. Hayes,* 591 F.3d 1105 (9th Cir. 2010) ................................................... 11

*Rodriguez v West Publishing Corp.,* 563 F.3d 948 (9th Cir. 2009) ....................... 6,14,15

*Six Mexican Workers v Ariz. Citrus Growers,* 904 F.2d 1301 (9th Cir. 1990) ............................ 16

*Staton v. Boeing Co*., 327 F.3d 938 (9th Cir. 2003) .................................................... 8

*Torres v Air to Ground Services, Inc.* 300 F.R.D. 386 (C.D. Cal. 2014) ....................... 13

*Van Brockhorst v Safeco Corp.,* 529 F.2d 943 (9th Cir. 1976) .................................... 9

*Wal–Mart Stores, Inc. v. Dukes,* — U.S. —, 131 S.Ct. 2541, 180 L.Ed.2d 374 (2011) .......... 11,12

## STATUTES

Cal. Civil Code §1542 ................................................................................................. 3

Cal. Civil Code §2981, *et seq.* ..................................................................................... 1

Civil Code §2983.2(a)(1)-(9) ....................................................................................... 4

Cal. Civil Code §2983.2(a) ........................................................................................... 1

Cal. Civil Code §2983.2(a)(1) ...................................................................................... 5

Cal. Civil Code §2983.2(a)(2) ...................................................................................... 5

Cal. Civil Code §2983.2(a)(4) ...................................................................................... 5

Cal. Civil Code §2983.2(a)(6) ...................................................................................... 5

Cal. Civil Code §2983.2(a)(9) ...................................................................................... 5

Cal. Civil Code §2984.4(a) ......................................................................................... 11

iii

Notice of Motion, Motion, and Memorandum of Points & Authorities in Support of Motion for Final Approval of Class Action Settlement

Cal. Civil Code §2983.8................................................................................................. 5

Cal. Gov. Code §26751.................................................................................................. 5

## **<u>RULES</u>**

Federal Rule of Civil Procedure 23 ........................................................................... 10

Federal Rule of Civil Procedure 23(a) ................................................................... 10,13

Federal Rule of Civil Procedure 23(a)(1) ................................................................. 10

Federal Rule of Civil Procedure 23(a)(2) ............................................................... 10,12

Federal Rule of Civil Procedure 23(b)(3) ............................................................ 10,11,15

Federal Rule of Civil Procedure 23(e) ..................................................................... 15

Federal Rule of Civil Procedure 23(c)(2)(B) ........................................................... 15

Federal Rule of Civil Procedure 23(e)(2) ................................................................. 8

iv

Notice of Motion, Motion, and Memorandum of Points & Authorities in Support of Motion for Final Approval of Class Action Settlement

**NOTICE OF MOTION AND MOTION**

PLEASE TAKE NOTICE that on February 6, 2015 at 9:00 a.m. in Courtroom 5, 2nd Floor, in the United States District Court for the Northern District of California, located at 1301 Clay Street, Oakland, CA, 94612, Plaintiffs Mohammad Salimi, August Galaraga, Alvin Leung, and Velia Serrano, on behalf of themselves and the Settlement Class they represent, will and hereby do move for an Order and Judgment granting final approval of the class action settlement herein, including certification of the Settlement Class, an award of attorneys' fees, costs and expenses for Class Counsel in the amount of $360,000.00, incentive awards of $3,500 to Class Representatives Mohammad Salimi, August Galaraga, and Velia Serrano, and $1,000 to Class Representative Alvin Leung, and entry of a permanent injunction against BMW FINANCIAL SERVICES NA, LLC's (hereafter "BMW FS") collection of the subject accounts, along with an order establishing the schedule and procedures for the distribution and implementation of the terms of the Settlement.  The motion will be based on this Notice and Motion, the following Memorandum of Points and Authorities, the Declaration of Bryan Kemnitzer and all exhibits thereto, the Settlement Agreement between the parties, and the Motion for Attorneys' Fees and Incentive Awards, and all supporting declarations and exhibits to that Motion, previously filed on December 1, 2014 (Docket No. 81).

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I**

**INTRODUCTION**

Plaintiffs Mohammad Salimi, August Galaraga, Alvin Leung, and Velia Serrano brought this class action pursuant to California's Rees-Levering Automobile Sales Finance Act (Civil Code §2981 *et. seq.*) to challenge the unlawful business practices of BMW FS following the repossession of motor vehicles from Plaintiffs and other California consumers.  The complaint alleges that BMW FS failed to provide borrowers with statutorily mandated disclosures of their rights (Notices of Intent, or "NOI") after repossession of their vehicles.  *See* Civil Code §2983.2(a).  The legal consequence of violating the Rees-Levering Act is that BMW FS is barred from collecting any deficiency balance after post-repossession sale of the vehicles. *Id.*  BMW FS

1

1  initially denied the charges and mounted a vigorous defense.

2      The parties have entered into a Settlement Agreement,[1] which provides substantial and

3  significant relief to the Plaintiff Settlement Class, achieving close to what the plaintiffs and class

4  members could have expected had Plaintiffs prevailed at trial.  The settlement terms provide for a

5  component of monetary restitution, cessation of collection activity on the affected accounts,

6  specific efforts to obtain credit repair, and injunctive relief against future harm.  The Settlement

7  Class consists of all Buyers:

8      (1)    who purchased a motor vehicle in California and entered into a conditional

9              sales contract with any person or entity that was assigned to BMW FS;

10     (2)    whose motor vehicle was repossessed or voluntarily surrendered in

11             California, and was not reinstated or redeemed; and

12     (3)    who were issued an NOI by BMW FS from between September 6, 2008 to

13             January 15, 2013.

14 Excluded from the class are those persons who have filed bankruptcy proceedings,

15 accounts of individuals who are deceased, those persons with a Conditional Sale Contract

16 entered into outside of California, those persons whose vehicles were repossessed outside

17 of California, those persons who signed releases with BMW FS from any liability for

18 Deficiency Balance payments on their accounts prior to January 15, 2013, and those

19 persons against whom BMW FS obtained judgments prior to January 15, 2013 (¶1.12).

20     In summary, the proposed settlement provides the following terms and conditions:

21     1.    BMW FS will provide relief to the approximately 5,178 class members (¶3.04).

22     2.    BMW FS will repurchase each Settlement Class Member's account from any third

23            party to which it sold such account (¶6.05).

24     3.    BMW FS will permanently terminate collection of the Deficiency Balances of the

25            Plaintiff Settlement Class by adjusting their account balances to reflect they do not

26            owe any amount to BMW FS.  BMW FS represents that this amounts, in the

27

28

---

[1] All ¶ references correspond to the Settlement Agreement, Decl. of Bryan Kemnitzer, Exh. 2,  filed herewith.

aggregate, to a waiver of $50,924,483.33 in claimed debt (¶3.04).

4.  BMW FS will create a restitution fund of $2,088,202.43 to provide refunds to each of the approximately 636 class members who paid all or some portion of the claimed deficiencies (¶¶3.01-3.02).

5.  BMW FS will instruct the three major credit reporting companies to delete the relevant trade lines from class members' credit reports (¶4.01).

6.  As part of the Final Order and Judgment, the parties contemplate that the Court will enter into an injunction against any further collection attempts (¶4.02).

7.  BMW FS will not issue any 1099 forms to any Settlement Class Member in connection with this acknowledgment that they do not owe any Deficiency Balances (¶¶3.04, 7.03).

8.  BMW FS will pay a service award to each of the class representatives for their services to the class.  Subject to the approval by this court, the class representatives will receive the following amounts: Salimi ($3,500), Galaraga ($3,500), Leung ($1,000), and Serrano ($3,500) (¶3.06).

9.  BMW FS will pay Plaintiffs' attorneys' fees, costs, and expenses in the amount of $360,000, upon approval by this court (¶3.05).

In exchange for the significant benefits summarized above, the Class Representatives and defendants agree to broad mutual releases, including dismissal of the related case, *Persolve, LLC dba Account Resolution Associates v Velia Serrano,* Case No. 30-2013-00629313-CU-CL-CXC, pending in Orange County Superior Court, and a waiver of California Civil Code §1542 except as to "claims that are unrelated to and not based upon the factual allegations" in this case (¶¶6.01-6.04).  On the other hand, the unnamed Plaintiff Settlement Class members release only those claims specifically identified as being released (¶6.01).  Since only Plaintiff Settlement Class members are parties to the release, the release does not have any effect one way or another on NOI issued after the class period (September 6, 2008 to January 15, 2013); copies of the Class Representatives' NOI are attached to the First Amended Complaint (*See,* Kemnitzer Decl., ¶9 and Docket Nos. 26-31, 38-42, 49-53 and 59-64).  Should BMW FS seek prospective approval of any

3

Notice of Motion, Motion, and Memorandum of Points & Authorities in Support of Motion for Final Approval of Class Action Settlement

NOI used subsequent to the class period, Plaintiffs take no position on the merits of such a request.  The parties have agreed that whether or not the Court makes a ruling with regard to BMW FS' request, the settlement shall remain in full force and effect (Docket 75).  Thus any such request or ruling thereon has no effect on this Motion for Final Approval of this Settlement.

## II

## STATEMENT OF THE CASE

### A.   Substantive Claims: BMW FS' Violations of the Rees-Levering Act

The substantive law underlying the litigation is more fully set forth in the First Amended Complaint (Docket No. 59) and Plaintiffs' briefing filed in support of Preliminary Approval in this Action (Docket No. 60).  In summary, the undisputed operative facts that give rise to this litigation are as follows.

BMW FS is a group of affiliated lenders (¶1.05) that accepts assignments of retail installment sales contracts from automotive dealers throughout California.  BMW FS repossessed the financed vehicles of thousands of California consumers, and during the class period (September 6, 2008 to January 15, 2013) sent those borrowers statutory post-repossession notices ("NOI"), and then assessed a deficiency against the borrowers when they failed to reinstate or redeem the contracts.

The conditional sales contracts executed by Plaintiffs and the Settlement Class are strictly regulated by the Rees-Levering Act, Civil Code §2981, *et seq.*  In the event of a default by a borrower, the lender may repossess the collateral without judicial process.  However, the lender may not automatically collect the deficiency balance remaining after sale of the vehicle, unless the lender has issued an NOI after the repossession and prior to the disposal of the vehicle.  That NOI must comply with each and every requirement of Civil Code §2983.2(a)(1)-(9).  Strict compliance with the statutory notice requirements is thus a condition precedent to the right to recover any subsequent deficiency.

The crux of this litigation is that the standard form NOI issued by BMW FS in California during the class period did not comply with the applicable law in numerous ways.  For example, the NOI fails to set forth the entire amount due for reinstatement or redemption (Civ. Code

4

§2983.2(a)(1) and (a)(2)); the NOI fails to state the name/address of the law enforcement agency to whom fees must be paid before the vehicle will be returned to the borrower (Gov. Code §26751, Civ. Code §§2983.2(a)(1) and (2)); the NOI fails to set forth additional expenses due for redemption and reinstatement (Civ. Code §§2983.2(a)(1) and (2)); the NOI fails to set forth where the motor vehicle will be returned (Civ. Code §2983.2(a)(4); the NOI fails to inform the consumer regarding extension of the vehicle sale date (Civ. Code §2983.2(a)(6)); and the NOI fails to set forth the actual interest rate (Civ. Code §2983.2(a)(9)).  Moreover BMW FS also required class members who tried to reinstate their loans to complete a "Post Repossession Worksheet" that required disclosure of a variety of personal information including the name and address of personal references, contact information for their employer, and financial information.  Such a requirement is not among the exclusive statutory reasons for denying the right to reinstate.

The effect of this noncompliance is that BMW FS and its assignees may not seek a deficiency. Civil Code §2983.2(a) and 2983.8; *Bank of America v Lallana* (1998) 19 Cal.4th 203, 210.

**B.     Pertinent Facts Relating to the Class Representatives**

Each of the four Class Representatives – Mohammad Salimi, August Galaraga, Alvin Leung, and Velia Serrano – found themselves trapped in the above-described unlawful scheme. The particular circumstances of each repossession, notice, deficiency and collection efforts each of them faced are detailed in the Complaint (Docket No. 59), in the Motion for Preliminary Approval (Docket No. 60), and in their testimony filed herewith as Exhibits 4, 5, 6, and 7 to the Kemnitzer Declaration.

The class representatives' experience with BMW FS was typical of all the class members. However, unlike the vast silent majority of consumers who either make payments toward the unlawful deficiency assessment in futile efforts to protect their credit, face a default judgment, or suffer negative credit reporting without fighting back, these four individuals made extraordinary efforts to find counsel to challenge this large financial institution collectively referred to as BMW FS.  They were each willing, not only to challenge the unlawful practice on behalf of themselves, but to commit the additional time and energy necessary to stop it for everyone else.  In doing so,

they also accepted the relative delay that attends the resolution of class actions.  They must await class notice, the approval process and class distributions to have the burden of the negative trade line concerning their accounts lifted at last from their credit reports. *Rodriguez v West Publishing Corp.,* 563 F.3d 948, 958-59 (9th Cir. 2009).  As discussed below, this commitment warrants a service award.

This settlement has accomplished all of the Class Representatives' goals, to the concurrent benefit of thousands of other California consumers like them.

### III

### PERTINENT PROCEDURAL HISTORY

After reaching an agreement in principle in September, 2013 and then participating in multiple mediations to resolve new issues,[2] the parties finalized the settlement terms and this Court granted preliminary approval and conditionally certified the Settlement Class on September 29, 2014 (Docket No. 80).  In compliance with the preliminary approval schedule, Plaintiffs filed a Motion for Attorneys' Fees and Incentive Awards on December 1, 2014, which Plaintiffs incorporate in full along with all supporting documents thereto (Docket No. 81), and further request that their fee motion be heard concurrent with the Motion for Final Approval in this matter.  The Motion for Attorney's Fees, filed December 1, 2014, sets forth the events following Plaintiffs' filing of the Motion for Preliminary Approval (Docket No. 81, §II(B)).

The Class Administrator has satisfied all requirements of the Preliminary Approval order. Bui Decl., ¶¶2-12.

### IV

### SUMMARY OF SETTLEMENT TERMS

The Court conditionally approved the substance of the Settlement Agreement in issuing its Preliminary Approval order.  While that determination was conditional, no significant facts or law have changed in the interim.  In summary, the Settlement Agreement provides:

//

---

[2] See clarification provided in Exhibit A to Joint Case Management Conference Statement, filed July 7, 2014 (Docket No. 75).

**A.**   **Injunction Against Collection of Deficiency Balances**

BMW FS will eliminate and cease collection of the entire amount of the 5,178 Settlement Class members' Deficiency Balances, which is approximately $50,924,483.33 (¶3.04).  As part of the Final Order and Judgment, the parties request the Court to enter an injunction restraining BWM FS from any further collection on the accounts. (SA, Exhibit A)).  Moreover, BMW FS shall reacquire all affected accounts previously sold to third parties, to prevent collection by third parties, which it could not do itself (¶6.05).

**B.**   **Cash Payments**

BMW FS will set up a settlement fund and make a lump sum cash payment of $2,088,202.43 (¶3.02).  BMW FS has represented and provided sufficient information for Class Counsel to confirm that this amount is sufficient to refund 100% of the payments toward claimed deficiency balances made by the Settlement Class members.

**C.**   **Credit Reporting**

BMW FS will instruct each of the credit reporting bureaus to delete any reference to the trade-line on class members' credit reports (¶4.01).

**D.**   **Service Awards**

Subject to the court's approval, BMW FS will pay a $3,500 service award to Class Representatives Salimi, Galaraga, and Serrano, each, plus $1,000 to Class Representative Leung (¶3.06). Leung's award is lower, due to his later entry in the case. Kemnitzer Decl. ¶9.

**E.**   *Cy Pres*

Any residue remaining after partial reimbursement of $105,000, for costs and class counsel fees, will go to the National Consumer Law Center (¶5.05). Kemnitzer Decl. ¶16.

**F.**   **Attorneys' Fees and Costs**

Subject to the approval of the court, BMW FS will pay Class Counsel fees and costs in the amount of $360,000, paid over and apart from the other benefits provided to Settlement Class members (¶3.05). Kemnitzer Decl. ¶15. (*See also*, Docket No. 81)

**G.**   **No 1099s Shall Issue**

Since BMW FS has agreed  that Settlement Class members are entitled to a waiver of the

7

1  deficiency debt and to the entry of an injunction against collection of such debt, BMW FS agrees

2  not to issue IRS Form 1099s to any Settlement Class Member in connection with this

3  acknowledgment that they do not owe any Deficiency Balances (¶¶3.04, 7.03).

4  **H.    Releases**

5      The Class Representatives and defendants agree to broad mutual releases, including

6  dismissal of the related case, *Persolve, LLC dba Account Resolution Associates v Velia Serrano,*

7  Case No. 30-2013-00629313-CU-CL-CXC, pending in Orange County Superior Court, and a

8  waiver of Civil Code §1542 except as to "claims that are unrelated to and not based upon the

9  factual allegations" in this case (¶¶6.01-6.04).

10      On the other hand, the other Plaintiff Settlement Class members release only those claims

11  specifically identified as being released (¶6.01).

12  **I.    Notice**

13      The Class Notice adequately advised the Settlement Class members of all of the pertinent

14  terms of the settlement, described above. (¶¶2.01, 5.01)

15  **J.    Court Retains Jurisdiction**

16      The Court retains jurisdiction to ensure implementation of and compliance with the

17  settlement terms (¶7.13).

18  **V**

19  **THE SETTLEMENT SHOULD RECEIVE FINAL APPROVAL**

20  **A.    Standard of Review For Final Approval Motions**

21      Settlement of a class action requires court approval, bestowed "only after a hearing and on

22  finding that the [proposal] is fair, reasonable, and adequate.  *See* Fed. R. Civ. P. 23(e)(2).  "It is

23  the settlement taken as a whole, rather than the individual component parts, that must be

24  examined for overall fairness." *Staton v. Boeing Co.* 327 F.3d 938, 952 (9th Cir. 2003), quoting

25  *Hanlon v Chrysler Corp.,* 150 F.3d 1011, 1026 (9th Cir. 1998).  In evaluating a settlement, courts

26  in the Ninth Circuit consider a variety of factors, including the strength of the merits, the risk,

27  expense, complexity and likely duration of further litigation, the risk of maintaining class action

28  status throughout trial, the experience and views of counsel, and the reaction of the class members

8

1   to the proposed settlement. *Churchill Village, L.L.C. v General Electric,* 361 F.3d 566, 575 (9th

2   Cir. 2004).

3         In considering whether to grant approval, "[i]t must not be overlooked that voluntary

4   conciliation and settlement are the preferred means of dispute resolution.  This is especially true

5   in complex class litigation…" *Officers for Justice v Civil Service Commission,* 688 F.2d 615, 625

6   (9th Cir. 1982).  *See also, Van Brockhorst v Safeco Corp.,* 529 F.2d 943, 950 (9th Cir. 1976) ("[I]t

7   hardly seems necessary to point out that there is an overriding public interest in settling and

8   quieting litigation.  This is particularly true in class action suits….")

9         Applying those factors here, this settlement should be granted final approval.  While

10   Plaintiffs have always felt their case was strong on the merits, success was not a sure thing.

11   BMW FS mounted a vigorous defense, challenging the substance of the claims and suitability of

12   resolution as a class.  The delay of protracted litigation was of particular concern, as the delay in

13   credit repair caused collateral harm and the delay in retrieving accounts sold to downstream debt

14   collectors increased the likelihood of default judgments against borrowers who were unaware of

15   their rights and defenses.

16         Weighed against the downsides of uncertainty and delay, this proposed settlement

17   provides substantial and concrete benefits to members of the Settlement Class.  The compromise

18   in fact provides everything sought in the complaint (Docket No. 59).  The deficiency balances of

19   the Settlement Plaintiff Class members are wiped out forever.  Those class members who had

20   made any payments on the alleged deficiency balances will receive 100% of their money back.

21   BMW FS offers credit repair on all affected accounts, leaving them in a much-improved position

22   to apply for new credit.  To the extent Defendants have sold the affected accounts, they will be

23   retrieved, thus protecting the class from the efforts of downstream debt collectors.  No claim

24   forms are required, and all class benefits are automatic.  Finally, BMW FS will pay for costs of

25   class administration, service awards, and the fees and costs of Class Counsel, separate and apart

26   from the other benefits to the class.

27         In short, the class has achieved what it could have obtained had it gone to trial and

28   prevailed on the merits.  Class Counsel have extensive experience in both consumer class action

9

litigation and in post-repossession notice litigation, and were very well qualified to represent the interests of class members (Docket No. 81).  Class Counsel were thus able to recognize the potential risks and strengths in the case, and the value of achieving a resolution by settlement, which provided excellent results for the class and is consistent with settlements reached against other lenders in similar litigation.  Settlement negotiations were also extensive and conducted at arm's length. Kemnitzer Decl. ¶6.  The response is overwhelmingly favorable, with no opt-outs or objections at all.. Bui Decl. ¶¶11, 12.

**B.**     **The Settlement Class Satisfies All Certification Requirements of Federal Rule 23**

      **1.**     **Introduction**

The certification of a class for settlement purposes is appropriate where the class meets each of the requirements of Fed.R.Civ.P. 23.  *Amchem Prods. Inc. v Windsor,* 521 U.S. 591, 620-21 (1997).  Under Rule 23(a) a class may be certified if "(1) the class is so numerous that joinder of all members is impractical, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class."  Rule 23(b)(3) supports certification when common questions "predominate over any questions affecting only individual members," and class resolution is "superior to other available methods for fairly and efficiently adjudicating the controversy."  The Settlement Class preliminarily approved here, and defined above, clearly meets each of these requirements.

      **2.**     **Numerosity**

The proposed class of 5,178 members is plainly "so numerous that joinder of all members is impracticable." Fed.R.Civ.P. 23(a)(1).  Although numerosity turns on many factors, "[a]s a general rule… classes of 40 or more are numerous enough." *Keegan v. American Honda Motor Co., Inc.* 284 F.R.D. 504, 522 (C.D.Cal. 2012).

      **3.**     **Commonality**

Rule 23(a)(2) requires "questions of law or fact common to the class."  The dual purposes of the Rule 23(a)(2) "commonality" requirement are to ensure that absentee class members are fairly and adequately represented, and to promote practical and efficient case management.

1   *Rodriguez v. Hayes,* 591 F.3d 1105, 1122 (9th Cir. 2010).  Plaintiffs need not show, however, that

2   every question in the case, or even a preponderance of questions, is capable of class wide

3   resolution.  "So long as there is 'even a single common question,' a would-be class can satisfy the

4   commonality requirement of Rule 23(a)(2)." *Parsons v. Ryan*, 754 F.3d 657, 674 -675 (9th Cir.

5   2014) citing *Wal–Mart Stores, Inc. v. Dukes,* —— U.S. ——, 131 S.Ct. 2541, 2556, 180 L.Ed.2d

6   374 (2011)).  Thus recent case law affirms the longstanding standard that "[a]ll questions of fact

7   and law need not be common to satisfy the rule." *Hanlon, supra,* at 1019.  *See also, Mazza v. Am.*

8   *Honda Motor Co., Inc.,* 666 F.3d 581, 589 (9th Cir. 2012) ("commonality only requires a single

9   significant question of law or fact").

10      "A plaintiff class need not prove that each element of a claim can be established by class-

11   wide proof:  'What the rule does require is that common questions predominate over any

12   questions affecting on individual [class] members.'" *In re Whirlpool Corp. Front-Loading*

13   *Washer Products Liability,* 722 F.3d 838 (2013), citing *Amgen Inc. v Connecticut Retirement*

14   *Plans & Trust Funds,* 133 S.Ct. 1184, 1196 (2013).  "The Rule 23(b)(3) predominance inquiry" is

15   meant to "tes[t] whether proposed classes are sufficiently cohesive to warrant adjudication by

16   representation.' *Amchem Products, Inc. v Windsor,* 521 U.S. 591, 623 cited in *Wal-Mart v Dukes,*

17   *supra* (concurring & dissenting opinion of Ginsberg, 131 S.Ct., at 2566.) "The main concern in

18   the predominance inquiry…[is] the balance between individual and common issues." (internal

19   quotations omitted). *Munoz v PHH Corp.* 2013 WL 2146925, *24 (E.D. Cal. 2013). The remedies

20   must be traceable to the case for liability and amenable to statewide proof. *Id.,* citing *Comcast*

21   *Corp. v Behrend*,  133 S.Ct. 1426 (2013).

22      The California Rees-Levering Act supplies that cohesive element to this litigation.  Civil

23   Code §2984.4(a) expressly contemplates that actions may be brought asserting "multiple claims."

24   Challenges to transactions involving standardized NOI are typically certified as class actions,

25   because they present common questions of both fact and law. *See, e.g., Fireside Bank v Superior*

26   *Court* (2007) 40 Cal.4th 1069; *Ramirez v Balboa Thrift and Loan* (2013) 215 Cal.App.4th 765;

27   *Juarez v Arcadia Financial, Ltd.* (2007) 152 Cal.App.4th 889; *Bank of America v Lallana* (1998)

28   19 Cal. 4th 203.

11

Notice of Motion, Motion, and Memorandum of Points & Authorities in Support of Motion for Final Approval of Class Action Settlement

In the instant case, it is undisputed that the NOI that BMW FS sent to each of the named Plaintiffs was a standard form document that was also sent to all other Settlement Class members. The predominant issue, common to all class members' claims, is whether the information provided in the NOI did or did not satisfy the strict requirements of the Rees-Levering Act.  If it did not, the nature of the harm and the measure of damages is identical for all members of the class.  The existence of this common core of operative facts is sufficient to satisfy Rule 23(a)(2) commonality.  For example, "In [debt collection] cases, 'where plaintiffs have received similar debt collection letters…courts have found common questions of law or fact sufficient to certify the class.'[citations omitted]" *Mann v Acclaim Financial Services,* 232 F.R.D. 278, 284 (S.D. Ohio 2003) (class certified where defendant had sent form collection letters threatening credit damage in violation of state and federal law); *Postow v Oriental Bldg, Ass'n,,* 390 F.Supp. 1130 (D.D.C. 1975) (class certified where form loan documents omitted statutory disclosures).  The existence of such a common question is sufficient to satisfy Rule 23(a)(2). *Wal–Mart Stores, Inc. v. Dukes,* 131 S.Ct. at 2556.

Where the core issue is whether the form NOI complied with the Rees-Levering Act, any factual differences as to the exact type or amount of recovery does not defeat commonality. *Leyva v Medline Industries, Inc.,* 716 F.3d 510, 513-514 (9th Cir. 2013) ("In this circuit…damage calculations alone cannot defeat class certification.")

### 4. Typicality

The named plaintiffs must be members of the class they seek to represent.  "The typicality requirement demands that a named plaintiff's claims be 'reasonably co-extensive with those of absent class members' although 'they need not be substantially identical.'" *Avilez v Pinkerton Gov't Servs.,*286 F.R.D. 450, 456 (C.D.Cal.2012) (quoting *Hanlon,* at p. 1020).  Here, the class representatives' claims arise from BMW FS's standard form NOI.  They were subject to the same conduct and suffered the same harm as the other class members.  They do not seek compensation for any unique or personalized claims.

### 5. Ascertainability

"The number of class members must also be presently ascertainable based on objective

1   criteria." *Torres v Air to Ground Services, Inc.* 300 F.R.D. 386 (C.D. Cal. 2014).  Here, the

2   database BMW FS has provided satisfies this criteria (¶2.03), supported by the Declaration of

3   Chris Chadwick (Docket 60-2, pp 11-14).

4         **6.**     **Adequacy of Representation**

5        Rule 23(a) requires that "the representative parties will fairly and adequately protect the

6   interests of the class."  The adequacy inquiry focuses on whether the named plaintiffs and their

7   attorneys will act diligently on behalf of the class. *Amchem, supra,* 521 U.S. at 626, fn 20.

8   Representation is adequate if (1) the named representative appears able to prosecute the action

9   vigorously through qualified counsel, and (ii) there is no antagonism or conflict of interest

10  between them and the other class members. *Hanlon,* at p. 1020.  In the context of a class action

11  settlement, the analysis of "vigorous" prosecution primarily involves an assessment of the

12  competency of counsel and the rationale for settling the claims. *Id.*

13       Here, the class representatives satisfy both prongs of the adequacy test.  They have no

14  individual claims that would create a conflict of interest between themselves and the class. The

15  accompanying declarations of class counsel collectively demonstrate the pertinent experience and

16  ability of the attorneys and law firms serving the class, as well as the rationale for settling the

17  claims. see also Chavez and Kemnitzer Declarations filed in support of Motion for Attorneys'

18  Fees to be heard at the time of the Final Approval hearing (Docket No. 81).  Moreover, the results

19  obtained required a high level of commitment and legal expertise in complex litigation and

20  enforcement of consumer protection statutes.  Declarations filed herewith by each Class

21  Representative in support of their incentive awards further attest to their time, energy and

22  commitment to represent the Plaintiff Settlement Class. Kemnitzer Decl., Exhibits 4-7.

23        **7.**     **Superiority**

24       A class action is the superior method of resolving large scale claims if it will "achieve

25  economies of time, effort, and expense, and promote…uniformity of decision as to the persons

26  similarly situated, without sacrificing procedural fairness or bringing about other undesirable

27  results." *Amchem, supra,* 521 U.S. at p. 615.

28       As discussed above, Plaintiffs' claims arise from Defendants' use of an improper, standard

13

Notice of Motion, Motion, and Memorandum of Points & Authorities in Support of Motion for Final Approval of Class Action Settlement

1  form NOI sent to all of the class members.  Given the relatively small amount of money at issue

2  for each class member and the difficulty of identifying and bringing an action to enforce the Rees-

3  Levering Act, a class action is the superior and, in fact, only feasible way of redress.  Few

4  consumers even know they have a claim, or a defense to a deficiency balance collection lawsuit.

5  Indeed, only a handful of attorneys and courts in California are well-versed in the legislation on

6  which these claims are based, and even if it were economically feasible to bring these cases

7  singly, there is a likelihood of inconsistent results if the class action device is not used as a

8  procedural mechanism for this litigation.

9  **C.**     **The Parties Litigated the Case To A Full Understanding of the Facts and Potential**

10           **Outcomes, and Mediated the Settlement At Arm's Length**

11           The procedural history of this action is set forth both in the Preliminary Approval Motion

12  (Docket No. 60) and the Motion for Attorneys' Fees (Docket No. 81) incorporated herein.  The

13  case had been extensively prosecuted and zealously defended before mediation, and the

14  settlement agreement did not come early in the litigation.  In fact, three mediations with the

15  assistance of experienced mediator, Hon. Ronald Sabraw, were required to resolve this case.

16  While not dispositive, the assistance of a mediator lends credibility to the process. *See, Carter v*

17  *Anderson Merchandisers, LP,* 2010 WL 1946784, *7 (C.D. Cal. 2010) ("The Court is…satisfied

18  the Settlement Agreement is the product of arms-length negotiation" because it was reached

19  through "formal mediation sessions presided over by an experienced mediator[.]") The parties

20  conducted sufficient discovery so that the experienced class action attorneys on both sides were

21  able to consider the full range of possible outcomes.  As such, the parties reached the proposed

22  settlement at a time when they were capable of a full and fair understanding of their cases and

23  their opponents' case, having gone through significant discovery and motion practice.  *See*

24  *Rodriguez v West Publishing Corp.,* 563 F.3d 948, 967 (9th Cir. 2009).  Furthermore, Class

25  Counsel have extensive experience, not only with class actions in general, but with cases

26  involving post-repossession notices pursuant to the Rees-Levering Act in particular. *See,* Barron

27  Decl. in Support of Preliminary Approval (Docket 60-1); Chavez Decl. in Support of Attorneys'

28  Fees, (Docket 81-2); Kemnitzer Decl. in Support of Attorneys' Fees (Docket 81-1) and Kemnitzer

14

1   Decl., filed herewith.

2   **D.      <u>All Requirements of Preliminary Approval Have Been Completed</u>**

3          On or about September 29, 2014, the Court granted Preliminary Approval of the

4   settlement pursuant to Fed.R.Civ.P. 23(b)(3) and (e) and conditionally certified the Settlement

5   Class.  At that time, the Court scheduled a hearing on Final Approval and for determination of the

6   reasonableness of the amount of attorneys' fees and costs (Docket No. 80, *see* pp. 7-8, schedule).

7   The parties have now met all other conditions, and the settlement is ready for final approval.

8          **1.      Class Notice**

9          "Notice is satisfactory if it 'generally describes the terms of the settlement in sufficient

10  detail to alert those with adverse viewpoints to investigate and to come forward and be heard.' "

11  *Churchill Vill., LLC v Gen. Elec.,* 361 F.3d 566, 575 (9th Cir. 2004) (internal citations omitted).

12  *Rodriguez v West Publishing Corp.,* 563 F.3d 948, 962.  The Class Notice in this case, which was

13  approved by the Court in its preliminary approval order, amply satisfies that standard.

14         Rule 23 requires that class notice be "the best notice practicable under the circumstances,

15  including individual notice to all members who can be identified through reasonable effort." Fed.

16  Rule of Civ. Proc. 23(c)(2)(B).  BMW FS has cooperated in providing a class list to the Class

17  Administrator, who in turn reports that it has duly sent the class notice to all class members by

18  first class mail, after first updating their addresses and making every effort to locate addressees of

19  returned mail and to update addresses (¶2.04).  The deadline for filing any objection or request for

20  exclusion has now passed. The Class Administrator, Michael Bui, has provided a declaration of

21  compliance, Exhibit 3 to the Kemnitzer Declaration, filed herewith.

22         **2.      Fee Motion Filed Prior to Objection and Opt-Out Deadline**

23         The schedule set forth in the preliminary approval order required Class Counsel to file

24  their motion for attorneys' fees and service awards prior to the time that objections were due, and

25  the Class Notice provided a procedure for such objections to be filed.  This opportunity to be

26  heard on the merits of the fee motion satisfies the concerns raised by the court in *In re Mercury*

27  *Interactive Corp. Sec. Litig.*, 618 F.3d 988, 990 (9th Cir. 2010).  Although the fees requested in

28  this case are in addition to and do not reduce the settlement fund payable to the class, are payable

15

1   pursuant to the fee-shifting provisions of the Rees-Levering Act, and amount to a miniscule

2   percent of the total case value, as measured by the amount of the deficiencies extinguished by the

3   settlement plus restitution – making any objections extremely remote – the requirement that class

4   members be entitled to be heard on the matter has amply been satisfied here.  The costs of

5   administering the settlement have been kept to a reasonable amount and will not reduce the

6   amounts available to class members who can be located, using customary updating methods.

7          **3.        Favorable Response**

8          While the final determination of fairness rests, of course, with this court, it is compelling

9   to note that the class response to this settlement has been overwhelmingly favorable.  The Class

10  Notice contained a clear explanation of the litigation and the benefits available to class members,

11  and it also disclosed the amount of attorneys' fees proposed to be awarded.  To date, the response

12  has been overwhelmingly positive.  Of 5,176 Class Notices mailed, the Class Administrator

13  reports no requests for exclusion and no objections. Bui Decl., ¶¶8, 11, 12.

14                                          **VI**

15                   **REQUEST FOR APPROVAL OF *CY PRES* NOMINEE**

16         The settlement carefully follows the guidelines enunciated by the Ninth Circuit for

17  approval of *cy pres* distribution.[3]  A *cy pres* award must be guided by (1) the objectives of the

18  underlying statute(s) and (2) the interests of the silent class members and must not benefit a group

19  too remote from the plaintiff class." *Dennis v. Kellogg Co.,* 697 F.3d 858, 865 (9th Cir.2012).

20  Thus, in order "[t]o ensure that the settlement retains some connection to the plaintiff class and

21  the underlying claims…a *cy pres* award must qualify as the 'next best distribution' to giving the

22  funds directly to the class members." *Dennis,* at p. 865, quoting *Six Mexican Workers v Ariz.*

23  *Citrus Growers,* 904 F.2d 1301, 1308 (9th Cir. 1990)).  Further, "[t]o avoid the many nascent

24  dangers to the fairness of the distribution process, we require that there be 'driving nexus between

25  the plaintiff class and the *cy pres* beneficiaries.'" *Id.,* quoting *Naschin v AOL, LLC,* 663 F.3d

26  _____

27  [3] *Cy pres* (properly *cy près comme possible,* an Anglo-French term meaning "as near as possible") is the name of the
    doctrine that permits a benefit to be given other than to the intended beneficiary or for the intended purpose because

28  changed circumstances make it impossible to carry out the benefactor's intent.

1    1034, 1038 (9th Cir. 2011).  That is, the *cy pres* award must bear "a direct and substantial nexus

2    to the interests of absent class members and thus properly provide[] for the 'next best distribution'

3    to the class." *Lane v. Facebook, Inc.* 696 F.3d 811, 821 (9th Cir.2012).  Thus, any *cy pres* award

4    must be "'guided by (1) the objectives of the underlying statute(s) and (2) the interests of the

5    silent class members;' and (3)…must not benefit a group 'too remote from the plaintiff class.'"

6    *Dennis, supra,* at p. 865, (quoting *Naschin,* 663 F.3d at 1036).  Where it otherwise appears that

7    the purposes of the litigation will be served, the presence of a representative of one of the parties

8    on the board of the proposed *cy pres* recipient does not defeat its nomination. *Lane, supra,* at p.

9    821.

10    Cognizant of the heightened scrutiny given such decisions in the context of a settlement,

11    the parties have taken pains to identify an organization that satisfies the requirement that a *cy pres*

12    award "account[s] for the nature of the plaintiffs' lawsuit, the objectives of the underlying

13    statutes, and the interests of the silent class members." *Lane, supra,* at pp. 819-820.  They have

14    agreed to propose that any such funds go to the nonprofit National Consumer Law Center who for

15    35 years "has used its expertise in consumer law and energy policy to work for consumer justice

16    and economic security for low-income and other disadvantaged people, including older adults, in

17    the U.S." Kemnitzer Decl., ¶16 and Exh. 8, filed herewith.  Vehicle repossessions, debt collection

18    and unfair credit practices associated with post-repossession deficiencies disproportionally target

19    low income individuals, who need transportation and decent credit to get and remained housed

20    and employed.  Although the parties intend to have the maximum amount of restitution actually

21    returned to Class Members, it is likely that there will be some remainder.

**VII**

**CONCLUSION**

24    Because the settlement was negotiated at arms-length by experienced class and defense

25    counsel in the best interests of their respective clients; because the settlement is fair and

26    reasonable and adequate; and to promote the policy of good faith settlement of disputes in

27    complex litigation, this class action settlement should now be finally approved.  This Court's

28    approval will allow distribution and other relief to be implemented, the dismissals to be entered,

17

1    and in all other aspects the matter to be resolved.

2    Dated:  December 30, 2014                    KEMNITZER, BARRON & KRIEG, LLP

3                                                 CHAVEZ & GERTLER LLP

4

5                                    By:     _____/s/_____
                                             NANCY BARRON
6                                            Attorneys for Plaintiffs and the Settlement Class

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28