KEMNITZER, BARRON & KRIEG, LLP
BRYAN KEMNITZER (SBN#066401)
NANCY BARRON (SBN# 099278)
445 Bush St., 6th Floor
San Francisco, CA 94108
Telephone: (415) 632-1900
bryan@kbklegal.com
nancy@kbklegal.com

CHAVEZ & GERTLER LLP
MARK A. CHAVEZ (SBN# 90858)
NANCE F. BECKER (SBN# 99292)
42 Miller Ave.
Mill Valley, CA 94941
Telephone: (415) 381-5599
mark@chavezgertler.com
nance@chavezgertler.com

Attorneys for Plaintiffs and the Class

# UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MOHAMMMAD SALIMI; AUGUST GALARGA, ALVIN LEUNG and VELIA SERRANO<br><br>        Plaintiffs,<br><br>    vs.<br><br>BMW FINANCIAL SERVICES NA, LLC; ASSET ACQUISITION GROUP, LLC; and DOES 1-50, inclusive,<br><br>        Defendants. | Case No. 3:12-cv-1754 JSW<br><br>**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR CONTEMPT AND TO COMPEL COMPLIANCE WITH FINAL APPROVAL ORDER AND JUDGMENT; MEMORANDUM IN SUPPORT THEREOF**<br><br>Date: November 4, 2016<br>Time: 9:00 a.m.<br>Dept: Ctrm. 5, 2nd fl. (Oakland)<br>Hon. Jeffrey S. White |

**NOTICE OF MOTION AND MOTION**

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on November 4, 2016 at 9:00 a.m., or as soon thereafter as the matter may be heard, in Courtroom 5 of the above-referenced Court located at 1301 Clay Street, Oakland, CA, Plaintiffs and class representatives Mohammad Salimi, August Galarga, Alvin Leung and Velia Serrano will, and they hereby do, move the Court for an order finding Defendant BMW Financial Services NA, LLC ("BMWFS") in civil contempt for its violation of the (Amended) Final Order and Judgment entered by this Court on February 20, 2015 ("Final Order"); order BMWFS to respond to limited discovery to determine the extent of the violations and the compensation due; directing BMWFS to comply with the Final Order; and awarding Plaintiffs their reasonable costs and attorneys' fees in connection with the motion.

Plaintiffs' motion will be based on this Notice, the accompanying Memorandum of Points and Authorities, the Declarations of Nance F. Becker and Elliott Conn and Exhibits thereto, the record of the past proceedings, and such further evidence and argument as may be presented in connection with the motion.

DATED:  September 30, 2016           KEMNITZER , BARRON & KRIEG LLP

CHAVEZ & GERTLER LLP

By:        _Nance F. Becker_ (signature)

Nance F. Becker
Attorneys for Plaintiff and the Class

**MEMORANDUM OF POINTS AND AUTHORITIES**

**TABLE OF CONTENTS**

I.   INTRODUCTION……………………………………………………………………1

II.  STATEMENT OF THE FACTS………………………………………………………2

   A.  The Allegation of the Complaint………………………………………….....2

   B.  The Settlement and Judgement …………………………………………….....2

   C.  Defendant's Violation Of The Final Order And Judgment……………………...........5

III.  ARGUMENT……………………………………………………………………6

   A.  The Court Has Jurisdiction To Issue A Contempt Order And Compel BMWFS To Comply With The Terms Of The Final Order And Judgment………………………...6

   B.  Plaintiffs Have Standing To Bring This Motion………………………………………8

   C.  BMWFS Should Be Sanctioned For Its Contempt Of The Court's Order……………..9

     1.  Contempt sanctions are the appropriate remedy for a deliberate violation of a court order………………………………………………………………..9

     2.  BMWFS is in contempt……………………………………………......…10

   D.  The Court Should Allow Targeted Discovery to Ascertain The Full Extent Of BMWFS' Violations And Ensure That Complete Relief Is Provided……………...…12

   E.  The Court Should Compel BMWFS To Provide The Full Relief Afforded By The Settlement To The Class Members Who It Improperly Excluded……………...…13

   F.  BMWFS Should Also Be Required to Reinstruct The Credit Reporting Agencies To Update Class Members' Trade Lines……………………………………….....14

   G.  Plaintiffs Should Be Awarded Their Attorneys' Fees And Costs Incurred In Connection With This Motion………………………………………………...…15

IV.  CONCLUSION…………………………………………………………...…15

# TABLE OF AUTHORITIES

**Cases**

*Alvarado v. Table Mountain Rancheria*
    509 F.3d 1008 (9th Cir. 2007) ................................................................. 6

*Arata v. Nu Skin Int'l, Inc.*
    96 F.3d 1265 (9th Cir. 1996) ................................................................... 7

*Cashner v. Freedom Stores Inc.*
    98 F.3d 572 (10th Cir. 1996) ................................................................. 12

*Chambers v. NASCO, Inc.*
    501 U.S. 32, __, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991) ................... 13

*Coremetrics, Inc. v. Atomic Park.com, LLC*
    No. C04-0222 EMC, 2007 WL 1033455, at *1 (N.D. Cal. Apr. 3, 2007) ............ 7

*Donovan v. Mazzola*
    716 F.2d 1226 (9th Cir. 1984) ............................................................... 10

*F.T.C. v. Affordable Media*
    179 F.3d 1228 (9th Cir. 1999) ............................................................... 10

*Fair Hous. Council of Cent. Cal.Inc. v. Tylar Prop. Mgmt. Co.*
    975 F.Supp.2d 1115 (E.D. Cal. 2012) ..................................................... 8

*Fed. Trade Comm'n v. Gill*
    183 F.Supp.2d 1171 (C.D. Cal. 2001.) .................................................... 9

*Federal Trade Comm'n v. Productive Mktg., Inc.*
    136 F.Supp.2d 1096 (C.D. Cal. 2001) ..................................................... 9

*Fraters Glass & Paint Co. v. Sw. Const. Co.*
    107 Cal.App. 1 (1930) ........................................................................... 11

*Gen. Signal Corp. v. Donallco, Inc.*
    787 F.2d 1376 (9th Cir.1986) .................................................................. 9

*Gulf Oil Co. v. Bernard*
    452 U.S. 89 (1981) ................................................................................ 13

*Hanlon v. Chrysler Corp.*
    150 F.3d 1011 (9th Cir. 1998) ................................................................. 8

*Hedging Concepts, Inc. v. First All. Mortgage Co.*
    41 Cal.App.4th 1410 (1996) ................................................................. 12

*Hermetic Order of the Golden Dawn, Inc. v. Griffin*
    No. C 05-00432 JSW, 2008 WL 2923403, at *2 n.3 (N.D. Cal. July 24, 2008) ............. 7

*Hoffmann-La Roche, Inc. v. Sperling*
    493 U.S. 165 (1989) .............................................................................. 13

iii

*In re Dual-Deck Video Cassette Recorder Antitrust Litig.*
   10 F.3d 693, 695 (9th Cir. 1993) .................................................................... 9

*In re Int'l Air Transp. Surcharge Antitrust Litig.*
   577 F.App'x. 711 (9th Cir. 2014) ................................................................... 7

*Kokkonen v. Guardian Life Ins. Co. of Am.*
   511 U.S. 375 (1994) ........................................................................................ 6

*McMahan & Co. v. Po Folks, Inc.*
   206 F.3d 627 (6th Cir. 2000) ........................................................................ 15

*Pac. States Sav., Loan & Bldg. Co. v. Green*
   123 F. 43 (9th Cir. 1903) .............................................................................. 11

*Perry v. O'Donnell*
   759 F.2d 702 (9th Cir. 1985) ........................................................................ 15

*Reno Air Racing Ass'n., Inc. v. McCord*
   452 F.3d 1126 (9th Cir.2006) ......................................................................... 9

*Sandpiper Vill. Condo. Ass'n, Inc. v. Louisiana-Pac. Corp.*
   428 F.3d 831 (9th Cir. 2005) ........................................................................... 7

*Sheet Metal Workers Int'l Ass'n v. EEOC,*
   472 U.S. 421 (1966) ...................................................................................... 15

*Spallone v. United States*
   493 U.S. 265 (1990) ........................................................................................ 9

*Stone v. City and County of San Francisco*
   968 F.2d 850 (9th Cir.1992) ......................................................................... 10

*TNT Mktg., Inc. v. Agresti*
   796 F.2d 276 (9th Cir. 1986) ........................................................................... 1

*Unigard Sec. Ins. Co. v. Lakewood Eng. & Mfg. Corp.*
   982 F.2d 363 (9th Cir. 1992) ........................................................................ 13

*United States v. Rylander*
   656 F.2d 1313 (9th Cir. 1981), rev'd on other grounds, 460 U.S. 752 ............. 10

*United States v. United Mine Workers of America,*
   330 U.S. 258 (1947) ...................................................................................... 13

*Wilkinson v. F.B.I.*
   922 F.2d 555 (9th Cir. 1991) ........................................................................ 12

**Rules**

Fed. R. Civ. Proc., rule 23(a)(4) ..................................................................... 8

Fed. Rule Civ. Proc., rule 70(a), (e) ............................................................... 9

1

**Codes**

2

18 U.S.C. § 401 ................................................................................................................. 9

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFF'S MPA IN OPPOSITION TO INTELLICORP'S MOTION TO TRANSFER ACTION

# I.      INTRODUCTION

In compliance with the Civil Minute Order entered by the Court on June 27, 2016, Plaintiffs and class representatives Mohammad Salimi, August Galarga, Alvin Leung and Velia Serrano ("Plaintiffs") bring this motion to call Defendant BMW Financial Services NA, LLC ("BMWFS" or "Defendant") to account for its material and deliberate breach of its contractual obligations to the Plaintiffs and members of the certified settlement class, and its clear violation of the terms of the (Amended) Final Order and Judgment entered by this Court on February 20, 2015 ("Final Order," Dkt. 92). In utter disregard for the terms of the Final Order, BMWFS unilaterally and covertly excluded from the list of class members it provided to the Settlement Administrator at least 185 individuals clearly encompassed by the negotiated class definition and identified in the Final Order as members of the certified Settlement Class. BMWFS *admits* that this exclusion was not inadvertent, but was a deliberate decision that was hidden from Plaintiffs and the Court. Through that subterfuge, BMWFS by its own accounting retained at least $124,482.75 that it wrongfully collected from the excluded class members, demanded they pay an additional $2,396,315.28 in deficiency balances to which BMWFS is not entitled, and continues unlawfully to report those amounts as overdue debts to credit reporting agencies.

BMWFS must be held to account for this deliberate misconduct. It is well-settled that a court may exercise its power to enforce a settlement either "in response to a motion to enforce the agreement, [or] in contempt proceedings for violation of a court order approving the settlement and commanding or enjoining particular conduct." (*TNT Mktg., Inc. v. Agresti,* 796 F.2d 276, 278 (9th Cir. 1986).) Here, Plaintiffs move the Court for an Order finding BMWFS in contempt and ordering BMWFS to (1) respond to appropriate discovery to determine how many class members were affected and the amount of compensation due; (2) provide those class members with all benefits of the Settlement to which they are entitled; (3) provide a detailed Compliance Declaration; and (4) reimburse Plaintiffs for their attorneys' fees and costs.

//

//

//

II.     **STATEMENT OF FACTS**

A.     **The Allegations Of The Complaint**

Plaintiffs filed this class action on February 27, 2012 to put an end to BMWFS' multiple

violations of California's Rees-Levering Automobile Sales Finance Act, Civil Code §2981 *et seq*.

("Rees-Levering"). Rees-Levering provides, among other things, that a seller or holder of a retail

sale installment contract may not collect any deficiency balance claimed owing after the

repossession and sale of a consumer's motor vehicle unless, among other things, it provides the

consumer with a Notice of Intent ("NOI") that contains "all" of the disclosures mandated by the

Act. (Civil Code §§ 2983.2(a), 2983.8.) The Complaint, which was filed in Alameda Superior

Court, removed to this Court on April 9, 2012 (Dkt. 1), and amended as part of the settlement

process on October 24, 2013 (First Amended Complaint ["FAC"], Dkt. 59), alleges that BMWFS

violated Rees-Levering in numerous respects, as set forth in Complaint ¶¶ 28-37 and FAC ¶¶ 44,

47-50. Plaintiffs sought injunctive and declaratory relief on behalf of themselves and all persons:

> (a) who purchased a motor vehicle and, as part of that transaction, entered into an agreement subject to [Rees-Levering];
> (b) whose motor vehicle was repossessed or voluntarily surrendered;
> (c) who were sent a Statutory Notice by BMW FINANCIAL, ALPHERA, MINI, or ROLLS-ROYCE on or after September 6, 2008; and
> (d) against whose account a deficiency was assessed.

(FAC ¶ 54.)[1]

B.     **The Settlement And Judgment**

After extensive settlement discussions and multiple mediation sessions before the Hon.

Ronald M. Sabraw (Ret.) of JAMS, the parties entered into a detailed Settlement Agreement

---

[1] The class definition in the FAC is substantially identical to the definition pled in the initial Complaint, which defined the class as all persons:
> (a) who purchased a motor vehicle and, as part of that transaction, entered into an agreement subject to [Rees-Levering];
> (b) whose contract was assigned to BMW FINANCIAL;
> (c) whose motor vehicle was repossessed or voluntarily surrendered;
> (d) who were sent a Statutory Notice by BMW FINANCIAL on or after October 1, 2008, and
> (e) against whose account a deficiency was assessed.

1    ("S.A.," Becker Exh. A[2]) effective June 18, 2013. As part of the negotiation process, the parties

2    agreed to modify the Settlement Class from that pled in the Complaint by capping the class period

3    and agreeing on a specific, limited set of exclusions. The agreed "Plaintiff Settlement Class" is:

> all Buyers: (1) who purchased a motor vehicle in California and entered into a
> conditional sales contract with any person or entity that was assigned to BMW FS;
> (2) whose motor vehicle was repossessed or voluntarily surrendered in California,
> and was not reinstated or redeemed; and (3) who were issued an NOI by BMW FS
> between September 6, 2008 to January 15, 2013. ***Excluded from the class*** are those
> persons who have filed bankruptcy proceedings prior to January 15, 2013, accounts of
> individuals who are deceased, those persons with a Conditional Sale Contract entered
> into outside of California, those persons whose vehicles were repossessed outside of
> California, those persons who signed releases with BMW FS from any liability for
> Deficiency Balance payments on their accounts prior to January 15, 2013, and those
> persons against whom BMW FS obtained judgments prior to January 15, 2013.

10    (S.A. ¶ 1.12 [emphasis added].) A "Buyer" is defined as, "any person who bought a vehicle in

11    California pursuant to a Conditional Sales Contract which was later assigned to BMW FS, and

12    any co-buyer on such contract." (*Id*. ¶ 1.02.)

13        The S.A. further provides that BMWFS would "identify all members of the Plaintiff

14    Settlement Class through diligent investigation and review of its records;" provide the Class

15    Administrator (Kurtzman Carson Consultants, "KCC"), with the required class member contact

16    and reimbursement information; and provide a compliance declaration. (S.A. ¶ 2.03.) Purportedly

17    in accordance with that agreement, on or about June 27, 2013 Defendant's counsel provided Class

18    Counsel with a declaration signed by BMWFS officer Chris Chadwick (Dkt. 60-2, Becker Exh.

19    B). BMWFS through Mr. Chadwick represented that its employees had drafted the appropriate

20    database queries "necessary to identify the [BMWFS] customers that fall within the following

21    class definition," quoting the definition set forth in the S.A., above. (Chadwick Decl. ¶ 4.)

22    BMWFS reported that "[t]here are 5178 individuals who meet the criteria definition [*sic*] of the

23    proposed class," and that 636 of those individuals had collectively paid $2,088,202.43 of the

24    $3,698,334.61 in deficiency balances demanded from them. (*Ibid*.)

---

[2] All Exhibits referenced herein are submitted with the Declarations of Nance F. Becker and Elliot
Conn.

1    On the basis of that information, Plaintiffs on October 31, 2013 moved for preliminary

2  approval of the Settlement (Dkt. 60). BMWFS filed a "Memorandum of Law in Support of

3  Preliminary Approval" ("BMWFS Memo," Dkt. 62) that represented that "class membership is

4  readily ascertainable through a search of BMWFS' databases" and that "[e]ach settlement class

5  member will receive back all sums paid to BMWFS, or its assignee, following the issuance of the

6  NOI." (BMWFS Memo.at 6:10-11, 6:14-15.)

7    The Court granted preliminary approval on September 29, 2014 (Dkt 80). The Preliminary

8  Approval Order adopted the exact class definition set forth in the jointly proposed order, to wit:

9    (A) The phrase "Settlement Class" is defined as all persons:
          (a) who purchased a motor vehicle and, as part of that transaction, entered into
10            an agreement subject to [Rees-Levering];
          (b) whose motor vehicle was repossessed or voluntarily surrendered;
11        (c) who were sent a Statutory Notice by BMW FINANCIAL SERVICES NA,
            LLC, ALPHERA FINANCIAL SERVICES, MINI FINANCIAL
12          SERVICES, or ROLLS-ROYCE MOTOR CARS FINANCIAL
            SERVICES, at any time between September 6, 2008 and January 15, 2013;
13          and
          (d) against whose account a deficiency balance was assessed.
14
    (B) The "Settlement Class" excludes persons:
15        (a) who filed for bankruptcy on or before January 15, 2013,
          (b) all deceased persons,
16        (c) persons against whom BMW FINANCIAL SERVICES had obtained a
            judgment on or before January 15, 2013,
17        (d) persons who have signed a release, and
          (e) out of state contracts or repossessions.
18

19    Plaintiffs moved for final approval on December 30, 2014 (Dkt 83-86). The motion was

20  supported in part by the Declaration of Michael Bui of KCC (Dkt. 84-3), who reported that on

21  October 11, 2014 BMWFS had provided KCC with the following class list:

22    a computerized list of 5,298 account records with names, addresses and account
       information, all persons (a) who purchased a motor vehicle in California and entered
23     into a Conditional Sale Contract with any person or entity that was assigned to MNW
       FS; (b) whose motor vehicle was repossessed or voluntarily surrendered in California,
24     and was not reinstated or redeemed; and (c) who were issued an NOI by BMW FS
       between September 6, 2008 and January 15, 3013.
25

26  (Bui Decl. ¶ 4.) BMWFS filed a brief in support of final approval (Dkt. 87) and did not comment

27  on or correct Bui's statement.

28
PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION FOR CONTEMPT AND COMPLIANCE

1     The Court entered its Final Order and Judgment, adopting the class definition set forth in

2     the Preliminary Approval Order and Class Notice, on February 9, 2015 (Dkt. 90) and entered an

3     Amended Order (affecting only the attorneys' fee award) on February 20, 2015 (Dkt. 92, Becker

4     Exh. C).

5         **C.     Defendant's Violation Of The Final Order And Judgment**

6     On November 10, 2015, BMWFS customer Memory Apostol filed *Apostol v. BMW*

7     *Financial Services, N.A.,* LLC, N.D. Cal. Case No. 4:15-CV5137, seeking to remedy ongoing

8     credit reporting violations by BMWFS. Class Counsel thereby discovered that BMWFS had

9     systematically excluded individuals plainly encompassed by the S.A. and Final Order from the

10    certified Settlement Class. BMWFS did not identify Ms. Apostol as a class member, did not

11    provide her with notice of the Settlement, and did not provide her the promised relief.

12    Indeed, BMWFS did not initially dispute that Ms. Apostol was a member of the *Salimi*

13    class. To the contrary, it sought to dispose of her lawsuit on that basis. In the parties' February 4,

14    2016 Joint Rule 26 Report (Becker Exh. D), BMWFS argued that, as "a member of the *Salimi*

15    class," Ms. Apostol was obligated to "contact her attorneys – Class Counsel" instead of the credit

16    reporting agencies and that "her relief, if any, must be brought to this Court in the *Salimi* action

17    either for relief from the Judgment or for an extension of time within which to opt out of the

18    settlement. She is not, however, entitled to bring a new lawsuit based on the alleged breach of the

19    *Salimi* settlement agreement." (Joint Report at 3:17-19, 4:21-22, 7:5-12.)

20    Upon discovery of BMWFS' actions, Class Counsel contacted opposing counsel and the

21    parties requested a status conference. In those proceedings, BMWFS changed its position from

22    what it told the Court in *Apostol* and argued that consumers like Ms. Apostol who were denied the

23    right of reinstatement but not sent a "Post Repossession Worksheet" ("PRW")[3] were excluded

24    from the class, and admitted that it had systematically excluded them. (*See* Status Conf. St. filed

25

26

27    ───────────────────────

28    [3] Plaintiffs alleged that one of the numerous ways in which BMWFS' NOI violated Rees-Levering was by failing to disclose BMWFS' requirement that consumers fill out a PRW as an undisclosed, and prohibited, condition precedent to reinstatement. FAC ¶ 44(a).

1  April 4, 2016 [Dkt. 99] at 4:27-5:2 [BMWFS admits it excluded those consumers "who were

2  provided solely the right of redemption [and] did not receive the post-repossession worksheet."].)

3      Plaintiffs promulgated Special Interrogatories designed to find out the full scope and

4  extent of BMWFS' violations (Becker Exh. E). In its response to Interrog. No. 21, which asked

5  BMWFS to "explain in detail" why it did not identify Ms. Apostol as a *Salimi* class member,

6  BMWFS responded:

7      The *Salimi* lawsuit centered around consumers who received a Post-Repossession
    Worksheet ("PRW") along with the Notice of Intent to Sell ("NOI"). This is

8      confirmed by documentation in that case, including but not limited to the *Salimi*
    complaint, the mediation brief filed in *Salimi*, and Plaintiffs' motions for preliminary

9      and final approval.

10  BMWFS represented that there are 185 of such individuals from whom it collected (and has

11  retained) $124,482.75 in claimed deficiency balances, and who collectively "owe" $2,396,315.28

12  in deficiencies. (Interrog. Responses 22, 25, 26.)

13  **III.   ARGUMENT**

14      In its Civil Minute Order entered June 24, 2016, the Court asked Plaintiffs to address in

15  this motion the basis for its jurisdiction to redress BMWFS' violations, BMWFS' alleged

16  rationale for its exclusion of the individuals who did not receive a PRW, and what remedies

17  should be ordered. Each of those issues is addressed below.

18      **A.   The Court Has Jurisdiction To Issue A Contempt Order And Compel
    BMWFS To Comply With The Terms Of The Final Order And Judgment**

19

20      This Court has jurisdiction to issue the relief requested herein pursuant to the terms of the

21  Settlement Agreement and the Final Order and Judgment. The fact that the action was dismissed

22  following the entry of judgment is of no moment to that determination.

23      Numerous cases, including decisions from the U.S. Supreme Court, Ninth Circuit, and

24  California District Courts, have held that "a federal court has jurisdiction to enforce a settlement

25  agreement in a dismissed case when the dismissal order incorporates the settlement terms, or the

26  court has retained jurisdiction over the settlement contract." (*Alvarado v. Table Mountain*

27  *Rancheria*, 509 F.3d 1008, 1017 (9th Cir. 2007); *accord Kokkonen v. Guardian Life Ins. Co. of*

28  *Am.*, 511 U.S. 375, 381 (1994) [noting that "if the parties' obligation to comply with the terms of

1    the settlement agreement had been made part of the order of dismissal – either by separate

2    provision (such as a provision "retaining jurisdiction" over the settlement agreement) or by

3    incorporating the terms of the settlement agreement in the order[,] ... a breach of the agreement

4    would be a violation of the order, and ancillary jurisdiction to enforce the agreement would

5    therefore exist"]; *In re Int'l Air Transp. Surcharge Antitrust Litig.*, 577 F.App'x. 711, 714 n.2 (9th

6    Cir. 2014) [district court has jurisdiction over efforts to enforce settlement whose terms were

7    incorporated into dismissal order and court "also retained jurisdiction over the enforcement of

8    those agreements"]; *Sandpiper Vill. Condo. Ass'n, Inc. v. Louisiana-Pac. Corp.*, 428 F.3d 831,

9    841 (9th Cir. 2005) [though "enforcement of a final settlement agreement and order 'requires its

10   own basis for jurisdiction,' [citation] ... [t]he requisite independent basis for jurisdiction may be

11   supplied by a provision in the settlement agreement and order that expressly retains jurisdiction in

12   the district court for the purpose of overseeing and enforcing the prior judgment."] *Arata v. Nu*

13   *Skin Int'l, Inc.*, 96 F.3d 1265, 1269 (9th Cir. 1996) [affirming jurisdiction of district court to

14   enforce settlement agreement where court "explicitly reserve[d] 'continuing and exclusive

15   jurisdiction' to enforce the settlement agreement"]; *Hermetic Order of the Golden Dawn, Inc. v.*

16   *Griffin*, No. C 05-00432 JSW, 2008 WL 2923403, at *2 n.3 (N.D. Cal. July 24, 2008) (White, J.)

17   ["The Court has jurisdiction to enforce the Settlement Agreement, because the parties have

18   expressly provided for this Court's continuing jurisdiction over its enforcement."]; *Coremetrics,*

19   *Inc. v. Atomic Park.com, LLC*, No. C04-0222 EMC, 2007 WL 1033455, at *1 (N.D. Cal. Apr. 3,

20   2007) ["By expressly providing for this Court's continuing jurisdiction in the settlement

21   agreement, the Court has jurisdiction over Coremetrics's motion to enforce the settlement

22   agreement."].).

23       The Settlement Agreement and Final Order at issue here meet those jurisdictional

24   requirements. In the S.A., the parties expressly agreed that: "The Court shall retain jurisdiction

25   over the interpretation, effectuation and implementation of this Agreement, and all orders entered

26   in connection therewith and the Parties and their attorneys submit to the jurisdiction of the Court."

27   (S.A. ¶ 7.13.) The Final Order also explicitly reserved the Court's jurisdiction "to assure

28

1   compliance with all terms of this Settlement, in accordance with the Settlement Agreement and

2   this Order." (Final Order at 6:8-9.)

3       Indeed, BMWFS itself previously argued that "this Court has continuing jurisdiction over

4   issues concerning compliance with its Order and Judgment approving the *Salimi* class action

5   settlement." (*Apostol* Joint Report, *supra*, at 7:3-5. BMWFS also noted in the Report that it had

6   made that same argument in its Motion to Dismiss *Apostol*.)

7       Accordingly, the Court has jurisdiction to enforce the Settlement Agreement and

8   effectuate the Final Order and Judgment.

9       **B.    Plaintiffs Have Standing To Bring This Motion**

10      There is no question that the class representatives have standing to bring this motion to

11  enforce the settlement they achieved. The Settlement Agreement that Plaintiffs negotiated was

12  that BMWFS would provide specified benefits to *all* "Buyers" who bought a vehicle in California

13  pursuant to a Conditional Sales Contract which was later assigned to BMWFS, had their car

14  repossessed, and were issued a defective NOI, except for those Buyers who fall within the

15  negotiated exclusions. Because BMWFS did not honor that obligation, Plaintiffs were deprived of

16  the benefit of their bargain. (*See Fair Hous. Council of Cent. Cal.Inc. v. Tylar Prop. Mgmt. Co.*,

17  975 F.Supp.2d 1115, 1117 (E.D. Cal. 2012) ["[A] motion to enforce [a] settlement agreement

18  essentially is an action to specifically enforce a contract" [internal citation omitted].)

19      Further, it is a prerequisite for class certification that representative parties be able to

20  "fairly and adequately protect the interests of the class" (Fed. R. Civ. Proc., rule 23(a)(4)), and

21  they have a duty to do so. Similarly, Class Counsel have a duty to "remain available to enforce

22  the contractual elements of the settlement agreement and represent any class members who

23  encounter difficulties." (*Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998).) The

24  Plaintiffs-class representatives and Class Counsel herein thus have not only the right, but the

25  obligation, to come forward to protect the interests of all the class members they promised to

26  represent.

27  //

28  //

1

### C.   BMWFS Should Be Sanctioned For Its Contempt Of The Court's Order

2

#### 1.   Contempt sanctions are the appropriate remedy for a deliberate violation of a court order

3

4    Courts have express ***statutory power*** to issue contempt sanctions for violations of their

5    orders. That authority includes 18 U.S.C. § 401 ("A court of the United States shall have power to

6    punish by fine or imprisonment, or both, at its discretion, such contempt of its authority, and none

7    other, as ... [d]isobedience or resistance to its lawful writ, process, order, rule, decree, or

8    command"), and Fed. Rule Civ. Proc., rule 70(a), (e) (if a judgment requires a party to perform

9    any other specific act and the party fails to comply within the time specified, "the court may ...

10   hold the disobedient party in contempt").

11   Courts also have "***inherent power*** to enforce compliance with their lawful orders through

12   civil contempt." (*Spallone v. United States,* 493 U.S. 265, 276 (1990) [emph. added]; *accord Gen.*

13   *Signal Corp. v. Donallco, Inc.,* 787 F.2d 1376, 1380 (9th Cir.1986) ["Sanctions for civil contempt

14   may be imposed to coerce obedience to a court order, or to compensate the party pursuing the

15   contempt action for injuries resulting from the contemptuous behavior, or both."]; *Federal Trade*

16   *Comm'n v. Productive Mktg., Inc.,* 136 F.Supp.2d 1096, 1107 (C.D. Cal. 2001) [quoting *Spallone*

17   and holding in contempt corporation that did not take reasonable steps to comply with the terms

18   of preliminary injunction].)

19   "Civil contempt in this context consists of a party's disobedience to a specific and definite

20   court order by failure to take all reasonable steps within the party's power to comply. The

21   contempt "need not be willful," and there is no good faith exception to the requirement of

22   obedience to a court order." (*In re Dual-Deck Video Cassette Recorder Antitrust Litig.*, 10 F.3d

23   693, 695 (9th Cir. 1993); *accord Reno Air Racing Ass'n., Inc. v. McCord,* 452 F.3d 1126, 1130

24   (9th Cir.2006).) "Sanctions for civil contempt may be imposed to coerce obedience to a court

25   order, or to compensate the party pursuing the contempt action for injuries resulting from the

26   contemptuous behavior, or both." (*Fed. Trade Comm'n v. Gill,* 183 F.Supp.2d 1171, 1180 (C.D.

27   Cal. 2001.)

28   //

1

### 2.  BMWFS is in contempt

2      "The standard for finding a party in civil contempt is well settled:

3      The moving party has the burden of showing by clear and convincing evidence
       that the contemnors violated a specific and definite order of the court. The burden
4      then shifts to the contemnors to demonstrate why they were unable to comply."

5   (*F.T.C. v. Affordable Media*, 179 F.3d 1228, 1239 (9th Cir. 1999), quoting *Stone v. City and*

6   *County of San Francisco,* 968 F.2d 850, 856 n. 9 (9th Cir.1992) (citations omitted).); *see also*

7   *Donovan v. Mazzola*, 716 F.2d 1226, 1240 (9th Cir. 1984) [where moving party establishes a

8   prima facie case that contemnor failed to comply with the court's order, contemnor is "required to

9   show 'categorically and in detail' why they were unable to comply," quoting *United States v.*

10  *Rylander,* 656 F.2d 1313, 1318 (9th Cir. 1981, rev'd on other grounds, 460 U.S. 752.)

11       Plaintiffs' burden to show that BMWFS violated the Final Order is easily met here. There

12  is no reasonable way to read the class definition and exclusions in the manner BMWFS suggests.

13  The class definition set forth in the S.A. and in the Final Order does not mention receipt of a PRW

14  as a prerequisite for class membership. Nor does any of the five negotiated exclusions relate to

15  this issue. Although BMWFS violated the Rees-Levering Act by requiring that customers return a

16  PRW in order to reinstate their loans, that was not the sole violation alleged by Plaintiffs or

17  covered by the Settlement Agreement.

18       The Court should reject BMWFS' very belated effort to offer an explanation of why it

19  purportedly understood to the contrary. First, as set forth above, "[w]illfulness is not an element

20  of contempt. ... [and] 'there is no good faith exception to the requirement of obedience to a court

21  order (internal cit. omitted])." (*Productive Marketing*, 136 F.Supp.2d at 1107; *Dual-Deck Video*,

22  10 F.3d at 695.) Second, the S.A. makes clear that the negotiated language of the agreement is

23  controlling. The S.A. states that it embodies "the complete and exclusive statement of the

24  agreement between the Parties ..., superseding all previous negotiations and understandings," and

25  that "no extrinsic evidence whatsoever may be introduced in any judicial proceeding ... involving

26  this Agreement." (S.A. ¶ 7.06.) Third, BMWFS' explanation is entirely self-serving and lacks

27  credibility. "In the absence of fraud, confidential relations, or circumstances indicating excusable

28  mistake," BMWFS must "be presumed to know the meaning of unambiguous language and will

1  be bound by the solemn execution of a written instrument." (*Fraters Glass & Paint Co. v. Sw.*

2  *Const. Co.*, 107 Cal.App. 1 (1930); *Pac. States Sav., Loan & Bldg. Co. v. Green*, 123 F. 43, 46

3  (9th Cir. 1903) ["The general rule is, we think, well settled that a court of equity is not authorized

4  to set aside and annul a contract made by parties with full knowledge of all the terms and

5  conditions of the same, without it is clearly and satisfactorily shown that there was fraud,

6  oppression, or undue advantage taken with reference to its execution."].).

7      Moreover, the evidence demonstrates that BMWFS understood throughout the settlement

8  process that the class was not limited to those individuals who received a PRW. As discussed

9  above, in its Memorandum of Law in support of preliminary approval (Dkt. 62), BMWFS

10  admitted that Plaintiffs' contentions were *not* limited to the improper use of the PRW, describing

11  Plaintiffs as "argu[ing] that the NOI they received from BMWFS violated Rees-Levering in two

12  ways," and stating that "*second, separate and apart from the post-repossession worksheet ...,*

13  Plaintiffs alleged that the NOI violates Rees-Levering in the following ways...." (Memo. at 2:5-7,

14  3:4-13 [emphasis added].) Indeed, the Court in the Final Order expressly found "as a matter of

15  state law, that the NOI issued to the Class did not strictly comply with California law" and that

16  BMWFS "is barred by state law from collecting deficiency balances from the Class." (Order at

17  6:2-4.) Those findings were *not* limited to BMWFS' use of the PRW.

18      Further demonstrating its awareness the settled issues went well beyond the PRW,

19  BMWFS went so far as to submit a revised NOI form and to request the Court, *as part of the*

20  *settlement approval process*, to "confirm" that the form "complies with Rees-Levering so that

21  BMWFS does not find itself fighting yet a third Rees-Levering class action." (Plaintiffs opposed

22  and the Court denied that request.) The revisions were not limited to the language re the PRW.

23      Finally, BMWFS sought to defeat Memory Apostol's claims by arguing that she (and,

24  presumably, others situated similarly to her) was a member of the Settlement Class and that her

25  remedy, if any, must be through this (*Salimi*) class action.

26  //

27  //

28  //

PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION FOR CONTEMPT AND COMPLIANCE

In the face of these repeated, contrary representations to this Court, BMWFS' belated claim of mistake[4] reveals itself to be nothing more than a self-serving, post-hoc rationalization of its flagrant violation of the S.A. and Final Order.

**D.      The Court Should Allow Targeted Discovery To Ascertain The Full Extent Of BMWFS' Violations And Ensure That Complete Relief Is Provided**

Plaintiffs ask the Court to order BMWFS to respond to targeted discovery to ascertain the true full extent of BMWFS' violations and ensure that no class members are left out in the cold. (*See Wilkinson v. F.B.I.*, 922 F.2d 555, 557 (9th Cir. 1991) [court had jurisdiction to grant motion to compel discovery as part of its enforcement of terms of settlement agreement under its "inherent supervisory power."].)

Discovery is required because the numbers provided by BMWFS (185 class members excluded) are not reliable. Throughout the discovery, mediation, and settlement process, BMWFS has provided ever-changing disclosures of the number of consumers in the class and the amount of restitution due. (*See* Decl. of Bryan Kemnitzer in Support of Prelim. Approval [Dkt. 60-2], ¶ 6.) Having lied to Plaintiffs and this Court once, BMWFS cannot be trusted to have accurately queried its database or reported the true number of class members and amount of deficiencies at issue. Plaintiffs should, therefore, be afforded an opportunity to:

(1) propound focused interrogatories and document requests, including the discovery served February 5, 2016;

(2) depose Mr. Chadwick to discover the methodology BMWFS used to identify the class members disclosed to KCC and the 185 additional members who were excluded; and

(3) depose BMWFS' person most knowledgeable about its database and develop appropriate queries to identify the class members and ascertain the dollar amounts to be restored.

---

[4] BMWFS's claim of mistake fails as a matter of law. A subjective misinterpretation of a contract is not a mistake of fact; at most it is a mistake of law. (*Hedging Concepts, Inc. v. First All. Mortgage Co.*, 41 Cal.App.4th 1410, 1421 (1996), *as modified on denial of reh'g* (Feb. 22, 1996).) And, "a unilateral misinterpretation of contractual terms, without knowledge by the other party at the time of contract, does not constitute a mistake under either [California] Civil Code section 1577 or 1578." (*Id.* at 1422.) Nor does a unilateral mistake in the negotiation of a contract or stipulation constitute grounds for relief under Federal Rule 60(b). (*Cashner v. Freedom Stores Inc.*, 98 F.3d 572, 578 (10th Cir. 1996).)

12

1

2

### E.    The Court Should Compel BMWFS To Provide The Full Relief Afforded By The Settlement To The Class Members Who It Improperly Excluded

3      "[J]udicial sanctions in civil contempt proceedings may ... be employed for either or *both*

4  of two purposes: to coerce the defendant into compliance with the court's order, and to

5  compensate the complainant for losses sustained." (*United States v. United Mine Workers of*

6  *America,* 330 U.S. 258, 303-4 (1947) [emph. in orig.].) Courts also have plenary authority, and

7  ongoing responsibility, to protect absent class members, police the conduct of lawyers, and

8  prevent abuses of the class action process. (*Gulf Oil Co. v. Bernard,* 452 U.S. 89, 99 (1981) ["a

9  district court has both the duty and the broad authority to exercise control over a class action and

10  to enter appropriate orders governing the conduct of counsel and parties."]; *Hoffmann-La Roche,*

11  *Inc. v. Sperling*, 493 U.S. 165, 171 (1989) [describing the court's authority to manage class

12  proceedings]; *Unigard Sec. Ins. Co. v. Lakewood Eng. & Mfg. Corp.*, 982 F.2d 363, 368 (9th Cir.

13  1992) ["Courts are invested with inherent powers that are 'governed not by rule or statute but by

14  the control necessarily vested in courts to manage their own affairs so as to achieve the orderly

15  and expeditious disposition of cases.' (citing *Chambers v. NASCO, Inc.,* 501 U.S. 32, __, 111

16  S.Ct. 2123, 2132, 115 L.Ed.2d 27 (1991).)"])

17      Here, the Court should exercise its power to enforce the S.A. and Final Order by

18  compelling BMWFS to provide the full relief afforded by the settlement to each of the class

19  members it improperly excluded. First and foremost, BMWFS should be ordered to identify and

20  pay all costs of sending notice to all individuals it wrongly excluded from the settlement class.

21  The notice should (1) inform the class members of the benefits provided by the S.A., (2) afford

22  them an opportunity to opt out, (3) afford them a right to object, and (4) explicitly advise them

23  that one person has filed a damages claim for BMWFS' continued wrongful credit reporting, and

24  notify them that other class members may have the ability to bring similar actions. Second,

25  BMWFS should be required to provide a detailed compliance certification stating under oath that

26  it has fully and completely fulfilled its obligations under the Final Order. Should it fail to do so by

27  the specified deadline, the Court should order that BMWFS pay the Court a daily fine for its

28  ongoing failure to comply.

13

**F.   BMWFS Should Also Be Required To Reinstruct The Credit Reporting Agencies To Update Class Members' Trade Lines**

The S.A. provides in ¶ 4.01 that:

> On the Distribution Date, the Class Administrator shall transmit requests to the three major credit reporting agencies, Experian, Trans Union and Equifax, asking them to update the trade line on the credit reports pertaining to members of the Plaintiff Settlement Class to reflect that their BMW FS accounts have a zero balance and have been settled. BMW FS shall not, in the future, change its credit reporting for a Plaintiff Settlement Class member to report something other than a zero balance and that the account was settled. In the event that Plaintiffs' Counsel notifies BMW FS in the manner set forth below that an account is being reported differently, BMW FS shall separately instruct the credit reporting agencies to report such accounts as having a zero balance and settled.

As evidenced by the correspondence submitted as Exhibits A, B, C and D to the Declaration of Elliot Conn, Class Counsel have notified BMWFS, on multiple occasions, that several class members' trade lines have not been deleted, and requested it to reinstruct the credit reporting agencies to do so. BMWFS has, however, refused to comply with its credit reporting obligations under the settlement to the detriment of the class members. As the correspondence shows, while BMWFS initially claimed that it submitted update requests, BMWFS has refused to provide any *confirmation* that the requests were submitted by refusing to provide Class Counsel with copies of the update requests. Furthermore, additional requests for trade line updates have been completely ignored by BMWFS. Due to BMWFS' failure to comply with its obligations, class members have been harmed and have been unable to provide proof to the credit reporting agencies in order to effectively dispute the inaccurate trade lines.

The Order directs BMWFS that "[t]he Settlement and Settlement Agreement should be implemented and consummated in accordance with the terms of the Settlement Agreement." BMWFS' failure to reinstruct the credit reporting agencies as requested is in further contempt of the Final Order. Plaintiffs, accordingly, request that the Court direct BMWFS to comply with those obligations and provide proof of its compliance in the form of the submitted trade line update requests, or else fine BMWFS for its failure to do so.

//

//

1    **G.     Plaintiffs Should Be Awarded Their Attorneys' Fees And Costs Incurred In Connection With This Motion**

2

3    In the Settlement Agreement, ¶ 7.13, the parties expressly agreed that, "In any proceeding

4    or action to enforce the terms of this Settlement Agreement or the Court's orders, the prevailing

5    party shall be entitled to recover their reasonable attorneys' fees, costs, and expenses."

6    The Court also has the authority to order BMWFS to pay Plaintiffs their fees and costs as

7    a compensatory remedy for its contempt. (*Sheet Metal Workers Int'l Ass'n v. EEOC*, 472 U.S.

8    421, 444 n.23 (1966) [award of attorneys' fees is a common remedy for contempt]; *McMahan &*

9    *Co. v. Po Folks, Inc.*, 206 F.3d 627, 634 (6th Cir. 2000) ["[A]n award of attorney's fees is

10   appropriate for civil contempt in situations where court orders have been violated."]; *accord*

11   *Perry v. O'Donnell*, 759 F.2d 702, 704–05 (9th Cir. 1985).) The "civil contempt need not be

12   willful to justify a discretionary award of fees and expenses as a remedial measure." (*Perry,* 759

13   F.2d at 706.)

14   The Court should enforce the parties' agreement, and exercise its authority to order

15   BMWFS to reimburse Plaintiffs for the significant attorneys' fees they have incurred and will

16   incur in connection with this motion.

17   **IV.     CONCLUSION**

18   There is no doubt that BMWFS' conduct in excluding class members from the Settlement

19   and denying them any relief was a willful violation not only of the Settlement Agreement, but

20   also of the Court's Final Order and Judgment. The Court should, accordingly, find BMWFS in

21   contempt and order it to provide the relief requested herein.

22

23   DATED:  September 30, 2016          KEMNITZER , BARRON & KRIEG LLP

24                                                           CHAVEZ & GERTLER LLP

25

26                                           By:  _____

27                                                 Nance F. Becker
                                                   Attorneys for Plaintiff and the Class

28

15

PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION FOR CONTEMPT AND COMPLIANCE