1

2

3

4                       UNITED STATES DISTRICT COURT

5                      NORTHERN DISTRICT OF CALIFORNIA

6

7   MOHAMMAD SALIMI, et al.,                Case No. 12-cv-01754-JSW

8              Plaintiffs,

9       v.                                  **ORDER GRANTING IN PART AND
                                            DENYING IN PART MOTION FOR
10  BMW FINANCIAL SERVICES NA, LLC,         CONTEMPT AND TO COMPEL
    et al.,                                 COMPLIANCE WITH FINAL
                                            APPROVAL ORDER AND JUDGMENT**
11             Defendants.
                                            Re: Dkt. No. 109

12      Now before the Court is Plaintiffs' Motion for Contempt and to Compel Compliance with

13  Final Approval Order and Judgment.  The Court has carefully considered the parties' papers,

14  relevant legal authority, and the record in this case.  For the reasons that follow, the Court hereby

15  GRANTS IN PART AND DENIES IN PART Plaintiffs' motion.[1]

16                                  **BACKGROUND**

17      Named Plaintiffs Mohammad Salimi, August Galaraga, Alvin Leung, and Velia Serrano

18  brought this class action lawsuit against Defendants BMW Financial Services NA, LLC ("BMW

19  FS"), Alphera Financial Services, Mini Financial Services, Rolls-Royce Motor Cars Financial

20  Servies, and Asset Acquisition Group, LLC, to challenge Defendants' practices following the

21  repossession of motor vehicles from California consumers.  Plaintiffs alleged that Defendants

22  failed to provide borrowers with statutorily mandated disclosures of their rights in statutory

23  Notices of Intent to Sell ("NOI") after repossession of their vehicles.  *See* Civil Code §2983.2(a).

24  Plaintiffs alleged claims under California's Unfair Competition Law ("UCL"), Cal. Bus. and Prof.

25  Code § 17200 *et seq*, and the Rees-Levering Automobiles Sales Finance Act ("Rees-Levering

26

27  ─────────────────
    [1] The Court also OVERRULES as moot the parties' evidentiary objections, contained in their
28  briefing, because the Court has not relied on the disputed statements in granting any relief to the
    party that submitted those statements.  (Opp. at 13, Reply at 9-10.)

United States District Court
Northern District of California

Act"), Cal. Civ. Code § 2981 *et seq*.  (First Amended Complaint ("FAC") ¶¶ 62-78.)

The Rees-Levering Act provides that, except under certain circumstances not applicable here, "at least 15 days' written notice of intent to dispose of a repossessed or surrendered motor vehicle shall be given to all persons liable on the contract."  Cal. Civ. Code § 2983.2.  The statute provides a list of requirements for the written NOI, one of which is that it "[s]tates either that there is a conditional right to reinstate the contract until the expiration of 15 days from the date of giving or mailing the notice and all the conditions precedent thereto or that there is no right of reinstatement and provides a statement of reasons therefor."  Cal. Civ. Code § 2983.2(a)(2). Regardless of whether there is a right to secure the vehicle's return and reinstate the financial obligation by paying the amounts set forth in the NOI, there is a right to secure the vehicle's return by paying all amounts due, "redeeming" the vehicle.  Cal. Civ. Code § 2983.2(a)(1).  Other requirements for the NOI include, but are not limited to, accurately setting forth the statutory period during which the consumer may reinstate the contract or redeem a vehicle.  Cal. Civ. Code §§ 2983.2(a)(1), 2983.2(a)(2), and 2983.2(a)(6).  (*See generally* FAC ¶¶ 36-50.)

BMW FS has recently explained to the Court that it used a different form NOI depending whether the recipient had a right to reinstate the payment contract.  (*E.g.*, Christopher Chadwick Decl. ISO Opp. to Mot. for Contempt and to Compel, ¶ 4, Dkt. No. 112.)  In this order, the Court refers to these different forms as BMW FS's Reinstatement NOI and a Redemption NOI. Notwithstanding this shorthand, it appears that it is BMW FS's choice, not a statutory requirement, to use different form for statutory notice depending on whether there is a right of reinstatement or a right to a statement of reasons why there is no right of reinstatement under California Civil Code section 2983.2(a)(2).

In the FAC, some of Plaintiffs' allegations focused on issues specific only to individuals who received a Reinstatement NOI.  For example, Plaintiffs alleged that Defendants' NOIs failed to list all the "conditions precedent" to reinstatement as required by Civil Code section 2983.2(a)(2).  (FAC ¶ 44(a).)  One of these conditions precedent was that Defendants allegedly required three of the four named Plaintiffs to fill out a "Post Repossession Worksheet" ("PRW") providing personal and financial information.  (*Id*. ¶¶ 13, 19, 25, 44(a), (d), 46.)  One named

United States District Court
Northern District of California

Plaintiff, Velia Serrano, was not alleged to have received a PRW, although she did allege that she was informed she had to provide tax returns as to be allowed to reinstate.  (*Id.* ¶¶ 28-35.)

Plaintiffs alleged other facts that were relevant to claims on behalf of individuals who received either a Redemption NOI or a Reinstatement NOI from Defendants.  For example, Plaintiffs allege that Defendants' statutory notices omitted information related to the length of the period to reinstate or redeem and to required payment of local government fees (FAC ¶  44(b), (c)).  The FAC made multiple references to rights in connection with the redemption of a vehicle, not only with the reinstatement of a contract.  (*Id.* ¶¶ 37, 44(b), (c), 64(c), 74.)  It also included numerous allegations that could relate to plaintiffs who received either a Redemption or a Reinstatement NOI.  (*E.g.*, *id.* ¶¶ 36-43, 47-50.)

Throughout the litigation, and in particular during discovery, the parties repeatedly disagreed about whether the litigation was limited to individuals who received BMW FS's Reinstatement NOI and a PRW or whether it also included individuals who had received a Redemption NOI and no PRW.  (*See, e.g.*, Reply Decl. of Bryan Kemnitzer, Dkt. No. 115; Sur-Reply Decl. of Michael J. Hassen, Dkt. No. 117-1.)  For example, on June 15, 2012, Plaintiffs counsel wrote to Defense counsel:

> It is our position that the class consists of all consumers who received an NOI during the class period.  You initially suggested that the class should be limited to only those consumers who received a reinstatement form similar to the form received by Salimi.  We do not believe that it is appropriate to limit the class to such a small size.

(Reply Kemnitzer Decl. ¶ 3 & Ex. A.)

Defendants, on the other hand, attempted to narrow the class to exclude individuals with no right to reinstate, repeatedly objecting to discovery requests that sought information about Redemption NOIs.  (Sur-Reply Hassen Decl. ¶¶  3-18 & Exs. A-E.)  It appears that the parties continued to dispute this issue during settlement negotiations.  Plaintiffs declare:

> The issue of the class and the appropriateness of including all NOI, whether allowing for reinstatement and/or redemption, was addressed . . . throughout the litigation, including during the settlement discussions and drafting of the Settlement Agreement. Throughout those discussions, we expressly rejected any limitation

on the class based on whether or not the NOI allowed for reinstatement. . . . [Defense counsel] was aware of this issue early on in the litigation and understood that it was not an acceptable exclusion from the standpoint of the Plaintiffs.

(Reply Kemnitzer Decl. ¶ 5-6.)

The parties reached a settlement of the lawsuit.  The Settlement Agreement provided, *inter alia*, that each class member would receive a refund of any amount of money he or she had paid Defendants on a deficiency balance; BMW FS would permanently terminate collection of the class members' accounts; and BMW FS would request that the three major credit reporting agencies update the trade lines on the class members' credit reports to reflect that their BMW FS accounts have a zero balance and have been settled.  (Dkt. No. 86-2, ¶¶ 3.01-4.02.)

The Court certified a class for settlement purposes and granted preliminary approval of the class settlement on September 29, 2014.  (Dkt. No. 80.)  After a final approval hearing, the Court entered a Final Order and Judgment approving the settlement.  (Dkt. No. 90.)  Following entry of judgment, Defendants filed a motion for reconsideration regarding the award of attorneys' fees and costs.  (Dkt. No. 91.)  The Court granted the motion, entering an Amended Final Order and Judgment on February 20, 2015.  (Dkt. No. 92.)

At no time during the settlement approval process did the parties brief any disagreement regarding whether the settlement class should include consumers who received a Redemption NOI and were not asked to complete a PRW.  Velia Serrano, the named Plaintiff who was not alleged to have been asked to complete a PRW, remained a class representative and, like the other class representatives, was awarded an incentive payment.  (*Id.* at 5.)

The class definition submitted to the Court and approved in the Amended Final Order and Judgment was:

The phrase "Settlement Class" is defined as all persons who:

(a) who purchased a motor vehicle and, as part of that transaction, entered into an agreement subject to California's Rees-Levering Automobile Sales Finance Act, Civil Code § 2981, et seq.;

(b) whose motor vehicle was repossessed or voluntarily surrendered;

(c) who were sent a Statutory Notice by BMW FINANCIAL

1    SERVICES NA, LLC, ALPHERA FINANCIAL
     SERVICES, MINI FINANCIAL SERVICES, or ROLLS-
2    ROYCE MOTOR CARS FINANCIAL SERVICES, at any
     time between September 6, 2008 and January 15, 2013; and

3         (d) against whose account a deficiency balance was assessed.

4    The "Settlement Class" excludes persons:

5         (a) who filed for bankruptcy on or before January 15, 2013,

6         (b) all deceased persons,

7         (c) persons against whom BMW FINANCIAL SERVICES had
              obtained a judgment on or before January 15, 2013,
8
9         (d) persons who have signed a release, and
10
          (e) out of state contacts or repossessions.

11   (*Id.* at 3.)  This class definition was identical to the definition in the proposed order submitted to

12   the Court.  It was also substantively similar to the definition in the Court's order certifying the

13   class for settlement purposes and granting preliminary approval of the class action settlement,

14   although the language was revised somewhat and the requirement that a deficiency balance have

15   been assessed was added in the final order.  (Dkt. No. 80; *see also* Mot. for Preliminary Approval,

16   at 10, Dkt. No. 60 (arguing that the settlement class is clearly defined).)

17        The language of the class definition in the Amended Final Order and Judgment also was

18   substantively similar to the definition in the settlement agreement signed by the parties, although

19   the settlement agreement explicitly includes buyers "whose motor vehicle was repossessed or

20   voluntarily surrendered in California, and was not reinstated or redeemed."  (Dkt. No. 86-2,

21   ¶ 1.12.)  The settlement agreement also used the term "NOI" instead of "Statutory Notice," and

22   provided a definition of that term to mean "a notice of intent to dispose of repossessed or

23   surrendered motor vehicle within the meaning of Civil Code § 2983.2."  (*Id.* ¶¶ 1.10, 1.12.)

24        Most important for present purposes, the language of the final, certified settlement class

25   definition was similar to the class definition alleged in the FAC, but contained five exclusions that

26   were not alleged in the class definition in the FAC.  In other words, the parties negotiated various

27   exclusions to narrow the proposed settlement class, but did not negotiate a limitation of to the

28   class to consumers who received BMW FS's form Reinstatement NOI and a PRW or exclude from

United States District Court
Northern District of California

5

1    the class those consumers who received a Redemption NOI and had no right to reinstate their

2    contracts.  No version of the class definition agreed to by the parties or ordered by the Court

3    contains such a limitation.

4         The parties' settlement agreement provided:

5              The terms and conditions set forth in this Agreement constitute the
               complete and exclusive statement of the agreement between the
6              Parties hereto relating to the subject matter of this Agreement,
               superseding all previous negotiations and understandings, and may
7              not be contradicted by any evidence of any prior or
               contemporaneous agreement.  The parties further intend that this
8              Agreement constitutes the complete and exclusive statement of its
               terms as between the Parties hereto and that no extrinsic evidence
9              whatsoever may be introduced in any judicial proceeding, if any,
               involving this Agreement.
10

11   (Settlement Agreement ¶ 7.06.)

12        In the settlement agreement, the parties also provided that within fifteen days after the

13   Court's preliminary approval, Defendant BMW FS would "identify all members of the Plaintiff

14   Settlement Class through diligent investigation and review of its records and provide the Class

15   Administrator" with pertinent information about each individual, including contact information

16   and information about the class members' deficiency balances.  (Settlement Agreement ¶ 2.03.)

17   BMW FS would then "provide Plaintiff's Counsel with a declaration under penalty of perjury

18   from an officer of BMW FS describing BMW FS's efforts to compile the above information

19   completely and accurately and confirming the above information, as well as what steps were taken

20   to gather the information necessary."  (Id.)  The class administrator was then to run a National

21   Change of Address Registry check of the addresses and mail the class notice to all class members

22   in the form approved by the Court.  (Id. ¶ 2.04.)

23        Consistent with the class definition agreed to by the parties, BMW FS's Manager,

24   Recovery Processing Chris Chadwick signed a declaration on June 27, 2013.  (Kemnitzer

25   Preliminary Approval Decl. Exh. A, Dkt. No. 60-2.)  Mr. Chadwick repeated the terms of the class

26   definition and declared under penalty of perjury that he had directed the drafting of appropriate

27   database search queries necessary to identify class members.  (Id. ¶ 4.)  He declared that the

28   "database was searched over the course of several months in accordance with the parameters of

United States District Court
Northern District of California

1   the class definition set forth above, and produced" information that he provided regarding "5178

2   individuals who meet the criteria definition [sic] of the proposed class." (*Id.*)

3          Plaintiffs' motion for final approval of the settlement was supported by the declaration of a

4   senior consultant employed by the class administrator. (Declaration of Michael Bui, Dkt. 84-3.)

5   The declaration reported that on October 11, 2014, Defendants had provided the class

6   administrator with:

7              a computerized list of 5,298 account records with names, addresses
               and account information, all persons (a) who purchased a motor

8              vehicle in California and entered into a Conditional Sale Contract
               with any person or entity that was assigned to BMW FS; (b) whose

9              motor vehicle was repossessed or voluntarily surrendered in
               California, and was not reinstated or redeemed; and (c) who were

10             issued an NOI by BMW FS between September 6, 2008 and January
               15, 3013.

11

12   (*Id.* ¶ 4.) Defendants did not correct the Chadwick and Bui declarations regarding the class list

13   that Defendants had generated or informed the Court of the omissions from that list. The Court,

14   accordingly, entered its Amended Final Order and Judgment on February 20, 2015, as discussed

15   above. (Dkt. No. 92.)

16          On November 9, 2015, a single individual, Memory Apostol, filed a new, but related, case

17   against BMW FS, No. 15-cv-05137-JSW (N.D. Cal.). Among her other allegations, Apostol

18   alleged that she met all the criteria of the class definition in this case, but Defendants did not

19   include her on the class list, and therefore she did not receive notice of the action or any of the

20   settlement benefits. (Apostol Complaint, ¶ 4.) At a February 12, 2016, case management

21   conference in the *Apostol* case, the parties attempted to raise issues that related to this case. The

22   Court declined to address those issues in the context of Apostol's individual action.[2] At the

23   parties' request, however, the Court scheduled a status conference in this case.

24          At the April 8, 2016, status conference, the Court granted Plaintiffs leave to conduct

25   certain limited discovery—specifically, eight interrogatories that were targeted to discover

26   whether some number of individuals who fell within the settlement class definition in this Court's

27   _____

28   [2] The *Apostol* case was dismissed with prejudice pursuant to stipulation on June 27, 2017. *See*
     Fed. R. Civ. P. 41(a)(1)(A)(ii).

7

1   Amended Final Order and Judgment did not receive class notice or the benefit of the settlement.

2   The Court denied Plaintiffs leave to conduct additional discovery, without prejudice.

3          The Court held a further case management conference on June 24, 2016.  Before the case

4   management conference, the parties submitted a joint case management statement on June 17,

5   2016.  The parties agreed that BMW FS's responses to Plaintiffs' interrogatories indicated that:

6          • BMW FS intentionally excluded 185 consumers from the *Salimi* class.

7          • BMW FS had collected $124,482.75 from the excluded class members.

8          • BMW FS assessed deficiencies against the 185 class members in the amount of

9             $2,396,315.28.

10  (Dkt. No. 103, at 2.)

11         In the June 17, 2016 case management statement, Defendants contended that this lawsuit

12  centered around consumers who received a Post-Repossession Worksheet along with the NOI, and

13  that the settlement was intended to be limited to consumers who received the PRW.  The 185

14  omitted individuals, Defendants explained, did not receive a PRW and were not properly part of

15  the class.  The 185 individuals omitted from the class list, Defendants said, received the

16  redemption-only NOI.  No PRW was sent to these individuals, because the PRW sought

17  information that Defendants wanted in connection with contract reinstatement only.  Defendants

18  contended that alleged defects with the PRW were the basis of this action.  Therefore, they

19  contended, individuals with no conditional right to reinstate, who were not sent the allegedly

20  defective PRW, were not properly included in the class.  Plaintiffs, on the other hand, contended

21  that the 185 omitted individuals were class members, and characterized BMW FS's unilateral

22  omission of 185 individuals included in the class definition from the class list as misconduct.

23         Plaintiffs sought leave to conduct further discovery.  Defendants contended that the Court

24  should require briefing on the issue of whether consumers who did not receive a Post-

25  Repossession Worksheet were mutually intended to be part of the class, whether the parties

26  intended that such consumers not be part of the class, or whether there was a failure of the meeting

27  of the minds.  Defendants further contended that the 185 individuals should be treated as excluded

28  from the class and required to bring their own action if they seek relief.  Alternatively, Defendants

United States District Court
Northern District of California

stated, if the Court were to rule that these consumers are within the scope of the class, then further discovery would be unwarranted and the proper remedy would be to provide the consumers with the benefits afforded to other members of the *Salimi* class.

At the June 24, 2016 case management conference, the Court again denied, without prejudice, Plaintiffs' request for leave to take additional discovery. Instead, the Court granted Defendants' request to brief the question of what should occur next. The Court provided the parties with a list of four issues to include among any other issues briefed, including the basis of the Court's jurisdiction to provide relief, the form of relief sought by Plaintiffs, the reason for BMW FS's failure to provide notice and relief for the 185 individuals, and the relief each party seeks. Following briefing, the Court, *sua sponte*, provided BMW FS with the opportunity to file a short sur-reply to address issues raised in reply. Briefing is now complete and the matter is submitted.

## ANALYSIS

### A.    The Court Has Jurisdiction to Enforce the Settlement Agreement.

#### 1.    Continuing Jurisdiction.

In the Amended Final Order and Judgment, the Court ordered: "Jurisdiction is hereby reserved by this Court to assure compliance with all terms of this Settlement, in accordance with the Settlement Agreement and Order." (Dkt. No. 92 at 6; *see also* Settlement Agreement ¶ 7.13.) Accordingly, the Court has jurisdiction to resolve the dispute as to whether BMW FS complied with the terms of the settlement. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 381-82 (1994). It is within that the Court's discretion to terminate its continuing jurisdiction. *See Arata v. Nu Skin Int'l, Inc.*, 96 F.3d 1265, 1269 (9th Cir. 1996). Under the circumstances of this case, however, Plaintiffs contend that BMW FS willfully violated the terms of the settlement when it compiled the class list. The dispute falls squarely within the purpose for which the Court retained jurisdiction.

#### 2.    Standing.

BMW FS contends that this Court lacks jurisdiction because Plaintiffs lack standing to bring their motion. *See Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 542 (1986)

United States District Court
Northern District of California

1   (analyzing Article III standing as part of subject-matter jurisdiction).  For Article III standing, the

2   "plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged

3   conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision."

4   *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016).  "To establish injury in fact, a plaintiff must

5   show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and

6   particularized' and 'actual or imminent, not conjectural or hypothetical.'"  *Id.* (quoting *Lujan v.*

7   *Defenders of Wildlife*, 504 U.S. 555, 560 (1992)).  "For an injury to be 'particularized,' it 'must

8   affect the plaintiff in a personal and individual way.'"  *Id.*  "That a suit may be a class action . . .

9   adds nothing to the question of standing, for even named plaintiffs who represent a class 'must

10  allege and show that they personally have been injured, not that injury has been suffered by other,

11  unidentified members of the class to which they belong.'"  *Simon v. E. Ky. Welfare Rights Org.*,

12  426 U.S. 26, 40, n.20 (1976) (quoting *Warth v. Seldin*, 422 U.S. 490, 502 (1975)).

13      There are multiple layers to BMW FS's standing argument.  First, it  implies that because

14  Plaintiffs have not filed a lawsuit for breach of contract, they lack standing to enforce the

15  settlement agreement.  This argument, in and of itself, is wholly lacking in merit.  If the 185

16  omitted individuals were members of the settlement class, they, like any other class members,

17  have standing to enforce the settlement agreement to obtain the benefit of their bargain, through

18  their designated class counsel.  *Cf. Hook v. State of Ariz., Dep't of Corr.*, 972 F.2d 1012, 1014 (9th

19  Cir. 1992) (holding that even intended third-party beneficiaries of a consent decree have standing

20  to enforce that decree because "[co]ntract principles are generally applicable in our analysis of

21  consent decrees, provided contract analysis does not undermine the judicial character of the

22  decree.").  The Court has retained jurisdiction over such a dispute, and may adjudicate it.

23      BMW FS's next argument is that because "Plaintiffs" (presumably the named Plaintiffs

24  and class counsel) "have received all the benefits afforded by the Settlement and Judgment,"

25  BMW FS's failure to give notice to 185 other unnamed class members has not caused Plaintiffs

26  "any injury in fact; they have not suffered any injury that affects them in a 'personal and

27  individual' way or that is 'concrete' as *Spokeo* requires."  (Opp. at 11.)  This argument, too, lacks

28  merit.  If this were the rule, once any defendant provided a representative plaintiff with any

agreed-to relief following a class settlement, that defendant would be able to renege, raise belated class certification arguments, and refuse to provide relief to any absent class members, and the representative plaintiffs and class counsel would be powerless to enforce the settlement.  This is not the law.  Rather, class counsel has the duty to "fairly and adequately represent the interests of the class," not only the interests of the representative plaintiffs.  Fed. R. Civ. P. 23(g)(4).  The representative Plaintiffs and class counsel have standing to enforce the settlement agreement on behalf of any and all class members.

Next, BMW FS contends that Plaintiffs lack standing because these 185 omitted individuals did not allege claims in this case and thus were not covered by the settlement agreement and have no right to enforce it.  As discussed above, the parties disputed throughout the litigation whether Plaintiffs had adequately pled claims on behalf of these individuals and whether they were within the scope of this action.  Plaintiffs ultimately prevailed on this question, however, because Defendants failed to negotiate the exclusion of these individuals at the settlement stage of this litigation.  As BMW FS does not dispute, these individuals are included in the plain language of the class definition. This is sufficient, at a minimum, to give them standing to move to enforce the settlement agreement and final order of this Court, through their class counsel.

Finally, BMW FS argues that even if the 185 individuals did fall within the certified class, as defined, they had no standing to participate in this action and thus their inclusion in the class definition was improper.  However, the 185 omitted individuals, although they were not alleged to suffer all of the same injuries as the named Plaintiffs, were alleged to suffer some of those injuries. *See Flores v. Lynch*, 828 F.3d 898, 907 (9th Cir. 2016) (holding that even where "litigation initially focused on the problems facing unaccompanied minors . . . the Complaint was not limited to unaccompanied minors" and the challenged conduct "applied to accompanied and unaccompanied minors alike," warranting enforcement of agreement as to both groups).  The Rees-Levering NOIs of all class members were alleged to be defective due to omission of information relating to the time in which redemption was possible and payment of required fees, facts equally applicable to the omitted individuals.  Their claims arose under the same subsections

United States District Court
Northern District of California

of the relevant statutes, were caused by the same core nucleus of facts due to BMW FS's alleged omission of required information from their statutory notices, and were redressable by the same relief.  The omitted class members had standing to pursue claims in this action.  Moreover, to the extent that BMW FS implies that the omitted individuals lack standing because a class including them was wrongly certified, Defendants "waived [their] ability to challenge the class certification when [they] settled the case and did not timely appeal the final judgment."  *Id.* at 908.

Accordingly, the Court concludes that 185 omitted individuals had standing to be members of the class and were included within the class definition.  Lead Plaintiffs and class counsel had, and still have, standing to represent them.  Therefore, they also have standing to move to enforce the settlement agreement.

**B.     The Settlement Agreement Is Not Subject to Rescission for Failure of Meeting of the Minds or Unilateral Mistake.**

BMW FS contends that the Court must find a failure of the meeting of the minds or a unilateral mistake warranting rescission of the settlement agreement.  A settlement agreement is a contract, and this Court interprets the settlement agreement under California law.  *See, e.g.*, *Flores*, 828 F.3d at 905 ("The Settlement is a consent decree, which, 'like a contract, must be discerned within its four corners, extrinsic evidence being relevant only to resolve ambiguity in the decree.'");  *Jeff D. v. Andrus*, 899 F.2d 753, 759 (9th Cir. 1989) ("Since consent decrees and orders have many of the attributes of ordinary contracts, they should be construed basically as contracts. . . .  Furthermore, enforceability of these compromise agreements is favored in the law.").

The cases that BMW FS cites regarding failure of "meeting of the minds" are largely inapplicable to enforcement of the formal written settlement agreement at issue here.  For example, *Callie v. Near* concerned a situation where one party had declined to execute a proposed stipulation and judgment, and the other party sought to enforce the settlement based upon material terms agreed to in correspondence.  829 F.2d 888, 890-91 (9th Cir. 1987) ("In addition to the intent of the parties to bind themselves, the formation of a settlement contract requires agreement on its material terms.");  *see also Joseph v. Donover Co.*, 261 F.2d 812, 824 n.11 (9th Cir. 1958)

1  ("there were no express words of agreement passing between Joseph and O'Donnell which would

2  amount in law to a contract"); *Banner Entm't, Inc. v. Superior Court (Alchemy Filmworks, Inc.)*,

3  62 Cal. App. 4th 348, 353 (1998) (one party "never signed any version of the preliminary draft

4  agreements" and parties disputed whether oral contract was formed).

5           Under California law, the grounds for rescission are set forth in Civil Code section 1689.

6  One such ground exists when consent to a contract is given by "mistake." Cal. Civ. Code

7  § 1689(b)(1). The term "mistake" is a legal term with a meaning defined in California Civil Code

8  sections 1577 (mistake of fact) and 1578 (mistake of law). *Hedging Concepts, Inc. v. First All.*

9  *Mortg. Co.*, 41 Cal. App. 4th 1410, 1421 (1996) (holding that unilateral misinterpretation of

10  contract term did not support rescission). The circumstances here are expressly contemplated by

11  California Civil Code section 1577, which provides that a mistake of fact must not have been

12  "caused by the neglect of a legal duty on the part of the person making the mistake." Cal. Civ.

13  Code § 1577. Additionally, enforcement of the settlement agreement would not be

14  unconscionable. *See Donovan v. RRL Corp.*, 26 Cal. 4th 261, 281 (2001) (holding that contract

15  for sale of automobile based on incorrectly advertised price may be rescinded "for unilateral

16  mistake of fact where enforcement would be unconscionable"). This is not a case where the

17  language of the contract is ambiguous and the parties reasonably ascribe different meanings to a

18  material term. *See BA Mortg. Co. v. Unisal Dev., Inc.*, 469 F. Supp. 1258, 1267-68 (D. Colo.

19  1979). The class definition in the settlement agreement plainly includes the recipients of BMW

20  FS's Redemption NOIs. *See Flores*, 828 F.3d at 906 ("the fact that the parties gave inadequate

21  attention to some potential problems of accompanied minors does not mean that the Settlement

22  does not apply to them"). BMW FS, a sophisticated party represented by legal counsel, should

23  have understood the meaning of that language. "In the absence of fraud, confidential relations or

24  circumstances indicating excusable mistake," BMW FS must "be presumed to know the meaning

25  of unambiguous language and will be bound by the solemn execution of a written instrument."

26  *Fraters Glass & Paint Co. v. Sw. Const. Co.*, 107 Cal.App. 1, 6 (1930). It should have been

27  especially diligent in reviewing it because the inclusion of the Redemption NOI recipients in the

28  class was not a surprise that it only learned of after entry of judgment; rather, it was a longstanding

United States District Court
Northern District of California

13

United States District Court
Northern District of California

dispute between the parties.

Without permitting Plaintiffs to take the discovery they seek, the Court cannot make a factual determination regarding whether BMW FS acted in good faith.  At a minimum, however, the Court can find that this was a known dispute between the parties, and BMW FS's failure to bargain for a settlement agreement that reflected their understanding of what the class definition should be does not warrant rescission of the settlement agreement under California law.

Additionally, the Court here is faced, not only with a settlement agreement, but with a class action settlement approved in a final order and judgment.  Plaintiffs argue that the Court lacks the power to vacate the judgment under California law.  *See, e.g.*, *City & Cty. of San Francisco v. Cartagena*, 35 Cal. App. 4th 1061, 1067 (1995) (holding that intrinsic fraud is "not a valid ground for setting aside a judgment when the party has been given notice of the action and has had an opportunity to present his case and to protect himself from any mistake or fraud of his adversary but has unreasonably neglected to do so").  The Court finds that BMW FS also has failed to provide any basis for vacating the judgment under federal law.  *See, e.g.*, Fed. R. Civ. P. 60(c) (providing that motion under Rule 60(b)(1), (2), and (3) must be made no more than a year after the judgment or order); *Harvest v. Castro*, 531 F.3d 737, 749 (9th Cir. 2008) (Rule 60(b)(6) requires showing of extraordinary circumstances beyond the party's control that kept it from taking timely action to prevent or correct an erroneous judgment); *Lyon v. Agusta S.P.A.*, 252 F.3d 1078, 1088-89 (9th Cir. 2001) (Rule 60(b)(6) and the preceding clauses of Rule 60(b) are mutually exclusive and Rule 60(b)(6) may not be used to avoid the time bar of the preceding clauses).

## C.     Contempt.

Courts have "inherent power to enforce compliance with their lawful orders through civil contempt."  *Spallone v. United States*, 493 U.S. 265, 276 (1990).  "Sanctions for civil contempt may be imposed to coerce obedience to a court order, or to compensate the party pursuing the contempt action for injuries resulting from the contemptuous behavior, or both."  *Gen. Signal Corp. v. Donallco, Inc.*, 787 F.2d 1376, 1380 (9th Cir.1986).  "[C]ivil contempt sanctions, or those penalties designed to compel future compliance with a court order, are considered to be coercive and avoidable through obedience, and thus may be imposed in an ordinary civil proceeding upon

notice and an opportunity to be heard." *Int'l Union, United Mine Workers of Am. v. Bagwell*, 512 U.S. 821, 827 (1994).  "The moving party has the burden of showing by clear and convincing evidence that the contemnors violated a specific and definite order of the court. The burden then shifts to the contemnors to demonstrate why they were unable to comply." *F.T.C. v. Affordable Media*, 179 F.3d 1228, 1239 (9th Cir. 1999), quoting *Stone v. City and County of San Francisco*, 968 F.2d 850, 856 n. 9 (9th Cir.1992)); *see also In re Dual–Deck Video Cassette Recorder Antitrust Litig.*, 10 F.3d 693, 695 (9th Cir. 1993) (summarizing factors).

A party's failure to comply need not be intentional or willful to support a finding of civil contempt.  *Gen. Signal Corp.*, 787 F.2d at 1379; *Dual-Deck*, 10 F.3d at 695.  The party's intent when it disobeys a court order does not matter and there is no good faith exception to the requirement of obedience to a court order.  *In re Crystal Palace Gambling Hall, Inc.*, 817 F.2d 1361, 1365 (9th Cir. 1987).  A party should not, however, be held in contempt if its action "appears to be based on a good faith and reasonable interpretation of" a vague or ambiguous court order.  *Vertex Distrib., Inc. v. Falcon Foam Plastics, Inc.*, 689 F.2d 885, 889 (9th Cir. 1982) (quotation omitted).  Substantial compliance with a court order "is a defense to civil contempt, and is not vitiated by 'a few technical violations' where every reasonable effort has been made to comply."  *Dual-Deck*, 10 F.3d at 695; *see also Gen. Signal Corp.*, 787 F.2d at 1379 ("If a violating party has taken 'all reasonable steps' to comply with the court order, technical or [inadvertent] violations of the order will not support a finding of civil contempt.").

In selecting the appropriate contempt sanction, the Court must use the least possible power adequate to achieve the goal.  *Spallone*, 493 U.S. at 276.  Compensatory awards must be based on evidence of "actual losses sustained as a result of the contumacy."  *Gen. Signal Corp.*, 787 F.2d at 1380 (quoting *Shuffler v. Heritage Bank*, 720 F.2d 1141, 1148 (9th Cir. 1983)).

### 1.    Civil Contempt Sanctions Are Appropriate for BMW FS's Failure to Make Reasonable Efforts to Provide a Complete Class List.

The Court finds that Plaintiffs have met their burden to show by clear and convincing evidence that the Court should issue a civil contempt sanction against Defendant BMW FS.  First, the Court finds that BMW FS violated the plain, unambiguous language of this Court's orders.

United States District Court
Northern District of California

*Dual-Deck*, 10 F.3d at 695.  The Court's September 29, 2014 order certifying the class for settlement purposes and granting preliminary approval of the class settlement incorporated the settlement agreement and directed the parties to carry out their obligations under the settlement agreement.  (Dkt. No. 80 ¶¶ 1, 19.)  It further provisionally certified a defined class for purposes of settlement and specified that notice should be sent to the class members in the manner provided by the settlement agreement.  (*Id.* ¶¶ 2-10.)  The Court's amended final order and judgment again set forth the class definition and certified the class for the purpose of settlement.  (Dkt. No. 92 at 2-4.) The Court approved the settlement and ordered that the terms of the agreement were binding on the parties.  (*Id.* at 4-5.)  These orders required BMW FS to compile a class list for the class administrator "through diligent investigation and review of its records."  (Settlement Agreement ¶ 2.03.)  BMW FS submitted an employee declaration enumerating the elements of the class definition and declaring that BMW FS had searched for class members who met that definition. Yet, without informing Plaintiffs or the Court, BMW FS had imposed a further limitation on its search, based not on the language of the class definition, but on its own contention of what the class definition should be.

BMW FS does not contest that the plain language of the settlement agreement, on its face, includes the 185 Redemption NOI recipients.  Indeed, it admits that "the wording of the Settlement Agreement did not include a reference to the PRW."  (Opp. at 12.)  Rather, it argues that the class *should not* have included them.  This does not change the fact of BMW FS's non-compliance, the first requirement for contempt.

Second, BMW FS argues that its failure to include the Redemption NOI recipients in the class notice was a reasonable mistake made in good faith.  BMW's intent or willfulness is, of course, irrelevant.  What matters is whether the order was so vague or ambiguous that BMW FS's interpretation of it was reasonable.  *See Vertex*, 689 F.2d at 889.  It was not.

As discussed above, the class definition in the settlement agreement, order granting preliminary approval, and final order uniformly referred to all California buyers who purchased motor vehicles and entered into contracts subject to the Rees Levering Act.  The definitions included all consumers whose motor vehicles were repossessed and who received a statutory

United States District Court
Northern District of California

United States District Court
Northern District of California

notice or NOI under the Rees-Levering Act. In the settlement agreement, the matter is made particularly clear because the class is defined to include consumers "who were issued an NOI by BMW FS" during the relevant time period. (Dkt. No. 86-2, ¶ 1.12.) "NOI," in turn, is defined as "a notice of intent to dispose of repossessed or surrendered motor vehicle within the meaning of Civil Code § 2983.2." (*Id.* ¶ 1.10.) As discussed, Civil Code section 2983.2 governs regardless of whether the consumer is eligible to reinstate his or her contract. Nothing about this definition reasonably supports a limitation to individuals who had a right to reinstate their contracts, much less to recipients of BMW's PRW, the form received by three of the four class representatives.

To be clear, the Court does not find that BMW FS's pre-settlement argument for what the class definition should be was unreasonable. During the discovery process, both sides reasonably advocated for their positions regarding the scope of this litigation. The point at which BMW FS became unreasonable was when, having failed to negotiate its desired limitation of the class definition in the settlement agreement, it engaged in self-help to narrow the class without disclosing its actions.

BMW FS was not substantially justified in disregarding the language of the class definition and proceeding based on its alternative, desired definition, to the detriment of the 185 omitted class members. That is particularly true because the longstanding dispute over the breadth of the class should have made Defendants attentive to the issue. If BMW FS believed that the Court's order regarding the class definition was incorrect, it should have sought reconsideration or clarification of that order, as Defendants did on the issue of attorney's fees. *Cf. Crystal Palace*, 817 F.2d at 1365 ("If the appellants believed that the district court incorrectly issued an order, their remedy was to appeal and request a stay pending the appeal.").

Any other conclusion, in light of the unambiguous language of the settlement agreement and orders of the Court, would be unworkable. If the Court and the parties (including any potential objectors and all those bound by the release) cannot rely on the language of the class definition in determining the ultimate scope of a class settlement, it would seriously impair the due process interests of the absent class members. Permitting a unilateral and unreasonable misconstruction of the class definition to excuse non-compliance also would undermine the

17

1    Court's ability to manage class action lawsuits fairly.

2         Third, the Court considers whether BMW FS took "all reasonable steps" to comply and

3    achieved "substantial" compliance, with only technical or inadvertent violations of the order.

4    BMW FS argues that it provided all settlement benefits to 97% of the class, and returned a total of

5    94% of the money covered by the Judgment.  The Court finds, however, that these numbers are

6    not dispositive under the circumstances.

7         Again, this is not a situation where BMW FS inadvertently failed to identify a small

8    number of individuals in the course of reasonable searches of its database.  Rather, having failed to

9    negotiate a limitation to the class definition, BMW FS made the wholly unreasonable choice to

10   apply its wished-for limitation to the class definition, contrary to the negotiated plain language of

11   the definition.  It did not disclose its decision to Plaintiffs or the Court, or seek clarification or

12   reconsideration of the class definition.  Rather, it unilaterally and secretly modified the class to

13   conform with its wishes.  Even when submitting a declaration under penalty of perjury stating the

14   elements of the class definition and attesting that they had crafted search terms to find those class

15   members, BMW FS failed correctly to describe the search it actually performed.  The consequence

16   of this was that 185 individuals who are readily capable of identification and notice did not receive

17   notice, yet appeared to be bound by the release as part of the settlement while the statute of

18   limitations continued to run on any separate claims they might wish to bring.  (*See* Christopher

19   Chadwick Decl. Opposing Contempt, Dkt. No. 112 ("it would be an extremely simple matter to

20   generate a list of those consumers who received only the standard form Redemption NOI used by

21   BMW FS at that time").)  BMW FS did not substantially comply or take all reasonable steps to

22   comply where it failed even to attempt to identify the omitted individuals, not due to minor

23   technical error or unavoidable limitations on its search capabilities, but because it chose to omit to

24   include these class members from its search.

25        Without allowing the discovery that Plaintiffs seek, the Court does not know the process

26   by which BMW's decision to omit the individuals at issue was made.  The Court does know,

27   however, that BMW FS is a corporate entity represented by qualified legal counsel.  The Court

28   also knows that the dispute over the scope of the class was a longstanding one, of which counsel

United States District Court
Northern District of California

was aware.  It was not reasonable for BMW FS, when performing the searches required under the settlement agreement and this Court's orders, to fail to read and comply with the plain language of the class definition that it had negotiated.

### 2.   Plaintiffs Have Not Met Their Burden to Support Civil Contempt for Defendants' Failure to Properly Instruct Credit Reporting Agencies.

The Court finds, however, that Plaintiffs have not met their burden to show by clear and convincing evidence that BMW FS also is in contempt on a second issue.  The settlement agreement, incorporated into the Court's judgment, required BMW FS to "transmit requests to the three major credit reporting agencies, Experian, Trans Union and Equifax, asking them to update the trade line on the credit reports pertaining to members of the Plaintiff Settlement class to reflect that their BMW FS accounts have a zero balance and have been settled."  (Dkt. No. 86-2, ¶ 4.01.) Additionally, BMW FS was required not to change its credit reporting for the class members in the future to reflect anything "other than a zero balance and that the account was settled."  (*Id.*)  If Plaintiffs' counsel notifies BMW FS that an account is being reported differently, BMW FS must re-instruct the credit reporting agencies, and "provide confirmation of the reinstruction to Plaintiffs' Counsel."  (*Id.*)  BMW FS does not, however, have any other liability for the failure of a credit reporting agency to carry out its instructions, beyond the obligation to reinstruct.  (*Id.*)

Plaintiffs submit evidence that following entry of judgment in this case, Plaintiffs have requested that BMW FS reinstruct the credit reporting agencies with regard to various class members.  (Elliot Conn Decl. ¶¶ 2-7, Dkt. No. 109-3.)  On multiple occasions, BMW FS responded, confirming that it has complied.  On January 7, 2016, Plaintiffs' counsel wrote to inform BMW FS that the credit reporting agencies were still showing negative information for one class member, and requested a copy of the trade line update request so that Plaintiffs could "take the issue up directly with the" credit reporting agencies.  (Conn Decl. Ex. C, Dkt. No. 109-4.)  The same day, BMW FS responded that it could not provide that information because it had sent out a "batch request" and did not have an individual update request to provide.  (*Id.*)  Plaintiffs' counsel wrote back on August 19, 2016 that the same class member continued to have credit reporting issues due to the BMW FS trade line for her account and requested that, in light of the failure to

update the trade line, BMW FS completely delete the trade line and provide Plaintiffs' counsel with a copy of the individual deletion request.  (*Id.* Ex. D.)  BMW FS had not responded to this request by the time Plaintiffs' motion was filed on September 30, 2016.

In light of the evidence of BMW FS's ongoing efforts to reinstruct the credit reporting agencies with regard to other class members, the fact that BMW FS had not responded to Plaintiffs' counsel's August 19, 2016 email by September 20, 2016 does not constitute sanctionable non-compliance.  Indeed, BMW FS's delay in responding was shorter than Plaintiffs' counsel's delay in writing back to BMW FS's prior email. In particular, the Court notes that Plaintiffs' counsel's last email did not merely request that BMW FS reinstruct the credit reporting agencies with regard to the remaining class member as required by the settlement agreement, but rather, negotiated with BMW FS for additional relief for that class member in light of the ongoing difficulty updating her credit reports.  BMW FS's failure promptly to respond to this additional request does not constitute clear and convincing evidence of non-compliance with the settlement agreement and Court's orders.  Accordingly, the Court will deny Plaintiffs' request for contempt sanctions on this issue without prejudice to renewal upon a clear and convincing showing of non-compliance.

### 3.     Remedy to Class

The Court turns next to the question of the appropriate relief, using the lowest available sanction that will compensate for BMW FS's contempt.  *Spallone*, 493 U.S. at 276.  Plaintiffs request that the Court order BMW FS to provide the full relief afforded by the settlement to each of the class members improperly excluded, including requiring BMW FS to identify and pay all costs of sending notice to the omitted class members.  Plaintiffs contend that the notice should "(1) inform the class members of the benefits provided by the [settlement agreement], (2) afford them an opportunity to opt out, (3) afford them a right to object, and (4) explicitly advise them that one person has filed a damages claim for BMWFS' continued wrongful credit reporting, and notify them that other class members may have the ability to bring similar actions."  (Mot. at 13.) Plaintiffs also request that BMW be required to provide a detailed compliance certification, under oath, stating that it has fully and completely fulfilled its obligations under the final order.  Finally,

20

1     Plaintiffs request that the Court order BM FS to pay the Court a daily fine should it fail to comply

2     by the specified deadline.

3          BMW FS responds that the proper remedy is to vacate the entire judgment, and start the

4     process over, including new class certification proceedings because Plaintiffs seek to require "that

5     a new group of consumers be added to the class." (Opp. at 12-13.) However, if the Court finds

6     that it should can and should extend benefits to the omitted class members, BMW FS states that it

7     will comply with the Court's order to provide them with the benefits afforded by the settlement.

8     (Opp. at 14.)

9          The Court has found that the recipients of BMW FS's form "Redemption NOI" were class

10    members covered by the settlement agreement and preliminary approval order. They are not

11    "new" to the class. When it agreed to the class definition and did not seek clarification or

12    reconsideration or file an appeal from the Court's order approving that definition, BMW FS

13    waived its right to dispute the class definition later. *See Flores*, 828 F.3d 908. It is bound by the

14    settlement agreement and the Court's judgment. Additionally, the Court finds that it would be

15    unfair and unworkable to vacate that portion of the Court's judgment relating to class members

16    who have already received the relief to which they are entitled.

17         The Court finds that the relief agreed to in the settlement agreement is of equal value to the

18    omitted class members as to the class members who previously received notice of this action, and

19    should be afforded to all class members. *Cf. Hanlon*, 150 F.3d at 1021 ("the proposed settlement

20    does not propose different terms for different class members; on the contrary, treatment of each

21    class member is identical"). However, the Court finds that it is appropriate to give the omitted

22    class members notice and an opportunity to opt out or object before they are bound by the

23    settlement and receive the bargained-for relief. Fed. R. Civ. P. 23(e). The Court "has both the

24    duty and the broad authority to exercise control over a class action and to enter appropriate orders

25    governing the conduct of counsel and parties" and, despite this unusual procedural situation, will

26    craft a procedure designed to protect the interests of all class members. *Gulf Oil Co. v. Bernard*,

27    452 U.S. 89, 100 (1981).

28         Accordingly, the parties shall meet and confer and, within 21 days after the filing of this

United States District Court
Northern District of California

1   order, shall present to the Court:

2       1.      A proposed plan of administration for the distribution of notice and relief to the

3   previously-omitted class members.  Costs of class administration shall be paid by BMW FS.

4       2.      A declaration by an appropriate employee of BMW FS detailing the efforts that it

5   has made to identify and provide the required information regarding all class members, including

6   those discussed in this order and any other class members who fall within the plain language of the

7   class definition but were previously omitted from the class list, whether inadvertently or

8   otherwise.  The Court warns BMW FS that it expects thorough efforts to make sure no further

9   class members are omitted.

10      3.      A proposed form of notice to be sent to the omitted class members pursuant to Rule

11  23(c)(2) of the Federal Rules of Civil Procedure, for the Court's review.  This notice shall clearly

12  inform the class members of the status of the proceedings, the terms of the settlement agreement,

13  their rights to object or opt out, and the date of a hearing at which they may appear and be heard.

14  It shall inform them that they have the right to opt out of this action and bring a separate action.  It

15  shall not, however, be used as a business development vehicle for Plaintiffs' counsel to offer their

16  services in bringing separate, individual actions on behalf of class members who elect to opt out.

17  In drafting the notice, counsel shall adhere as closely as reasonably possible to the language of the

18  notice previously sent to other class members, while providing an accurate statement of the current

19  status of the litigation.  Counsel also shall consider this Court's Procedural Guidance for Class

20  Action Settlements, available at http://cand.uscourts.gov/ClassActionSettlementGuidance.

21      4.      A proposed schedule for: (a) the distribution of notice to the previously-omitted

22  class members; (b) the newly-noticed class members to opt out; (c) the newly-noticed class

23  members to object to the final approval of the inclusion of this group of previously-omitted class

24  members in the previously-approved settlement; (d) Plaintiffs to submit proposed orders in

25  support of final approval of the settlement as to the newly-noticed class members; (e) if necessary,

26  a briefing schedule for any further motion in support of those proposed orders; and (f) a hearing on

27  final approval of the settlement as to the newly-noticed class members.  The parties may also

28  propose any other appropriate dates or procedures.

1    In the exercise of discretion, the Court denies without prejudice Plaintiffs' request to

2    impose a daily fine on Defendants pending compliance, but will reconsider if the Court is

3    presented with evidence of undue delay or non-compliance with this order.

4    **D.     Attorneys' Fees**

5    In the Settlement Agreement, the parties expressly agreed that, "In any proceeding or

6    action to enforce the terms of this Settlement Agreement or the Court's orders, the prevailing party

7    shall be entitled to recover their reasonable attorneys' fees, costs, and expenses."  (Dkt. No. 86-2,

8    ¶ 7.13.).  The Court also may order BMW FS to pay Plaintiffs their fees and costs as a

9    compensatory remedy for contempt.  *Local 28 of the Sheet Metal Workers' Int'l Ass'n v. EEOC*,

10   478 U.S. 421, 444 n.23 (1986) ("assessment of attorney fees and expenses compensated

11   respondents for costs occasioned by petitioners' contemptuous conduct"); *Perry v. O'Donnell*,

12   759 F.2d 702, 704 (9th Cir. 1985) ("civil contempt need not be willful to justify a discretionary

13   award of fees and expenses as a remedial measure").  BMW FS does not dispute Plaintiffs'

14   entitlement to fees if they prevail.

15   Having found that a civil contempt sanction against BMW FS is appropriate for its failure

16   to comply with the Court's orders and judgment regarding the class definition, the Court

17   concludes that Plaintiffs are prevailing parties entitled to an award of reasonable fees and costs.

18   Accordingly, in the proposed schedule that the parties are to submit, the parties shall include a

19   proposed schedule for the briefing and hearing of Plaintiffs' fee motion, which shall address the

20   question of the amount of the fee award.  The motion shall be limited to fees and expenses

21   incurred in remedying BMW FS's non-compliance with the Court's orders, shall be supported by

22   appropriate evidence as set forth in this Court's Procedural Guidance for Class Action

23   Settlements, and shall not include fees for time spent on the issue of reinstruction of the credit

24   reporting agencies, on which Plaintiffs did not prevail.

25   Additionally, the Court instructs the parties to meet and confer regarding the motion for

26   attorneys' fees and costs in an attempt to narrow the disputed issues regarding the amount of fees

27   and costs to which Plaintiffs are entitled before the motion is filed.

28

United States District Court
Northern District of California

**CONCLUSION**

For the foregoing reasons, the Court GRANTS IN PART AND DENIES IN PART Plaintiffs' Motion for Contempt and to Compel Compliance with Final Approval Order and Judgment, and orders as follows:

A.     The Court finds that it has jurisdiction over this motion, and Plaintiffs have standing.

B.     The settlement agreement is not subject to rescission and the judgment should not be vacated.

C.     Civil contempt sanctions are appropriate for BMW FS's failure to make reasonable efforts to provide a complete class list.

D.     The Court denies without prejudice Plaintiffs' request for civil contempt sanctions based on Defendants' alleged failure to properly instruct credit reporting agencies.

E.     The Court denies, in the exercise of discretion, Plaintiffs' request for additional discovery.

F.     The Court denies without prejudice Plaintiffs' request to impose a daily fine on Defendants pending compliance.

G.     The Court overrules as moot all evidentiary objections.

H.     The Court grants Plaintiffs' request for fees, costs, and expenses associated with remedying the omission of the class members from notice and relief.  This includes, but is not limited to, an order that BMW FS shall pay the costs of administering the notice and distribution of relief to these previously-omitted class members.

I.     The parties shall meet and confer and, within 21 days after the filing of this order, shall present to the Court:

1.     A proposed plan of administration for the distribution of notice and relief to the absent class members.

2.     A declaration by an appropriate employee of BMW FS detailing the efforts that it has taken to identify all class members, including those discussed in this motion and any other class members who fall within the plain language of the class definition but were

previously omitted from the class list, whether inadvertently or otherwise.

3.    A proposed form of notice to be sent to the omitted class members pursuant to Rule 23(c)(2) of the Federal Rules of Civil Procedure, for the Court's review, as described above.

4.    A proposed schedule for: (a) the distribution of notice to the previously-omitted class members; (b) the newly-noticed class members to opt out; (c) the newly-noticed class members to object to the final approval of the inclusion of this group of previously-omitted class members in the previously-approved settlement class; (d) Plaintiffs to submit proposed orders in support of final approval of the settlement as to the newly-noticed class members; (e) if necessary, a briefing schedule for any further motion in support of those proposed orders; (f) the briefing and hearing of Plaintiffs' fee motion; and (g) a hearing on final approval of the settlement as to the newly-noticed class members.  The parties may also propose any other appropriate dates or procedures.

**IT IS SO ORDERED.**

Dated: September 29, 2017

JEFFREY S. WHITE
United States District Judge